**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTRAL FALLS DETENTION | ) Case No. 26-_____ |
| FACILITY CORPORATION, | ) |
| d/b/a Donald W. Wyatt Detention Facility | ) |
| | ) |
| Debtor.[1] | ) |
| | ) |

**DEBTOR'S MOTION FOR EMERGENCY DETERMINATION FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR
TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND PROVIDE
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTY; (III)
MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING;
AND (V) GRANTING RELATED RELIEF**

The Central Falls Detention Facility Corporation (d/b/a Donald W. Wyatt Detention Facility), as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), hereby submits this motion (this "Motion"), pursuant to sections 105, 361, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-2 of the Local Bankruptcy Rules and Forms of the United States Bankruptcy Court for the District of Rhode Island (the "Local Rules"), for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders"): (i) authorizing the Debtor to (a) use "Cash Collateral," as defined in the section 363(a) of the Bankruptcy Code of UMB Bank, N.A., as successor indenture trustee for the Bonds (as defined

---

[1]      The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863

herein) (the "Bond Trustee"); (b) grant liens and provide superpriority administrative expense claims to the Bond Trustee; (ii) granting adequate protection to the Bond Trustee; (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Interim Order; (iv) scheduling a final hearing (the "Final Hearing") to consider approval of this Motion on a final basis; and (v) granting related relief.  In support of this Motion, the Debtor respectfully states as follows:

## Jurisdiction

1. The United States Bankruptcy Court for the District of Rhode Island (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b), Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1(b) and 4001-2.

## Background

3. On July 10, 2026, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in this Court. The Debtor continues to operate and maintain its non-profit detention facility and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

4. Additional information regarding the Debtor's business and financial structure, the circumstances leading to the commencement of this Chapter 11 Case, and the facts and

2

circumstances supporting this Motion is set forth in the *Declaration of Daniel S. Polsky in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

5.      As set forth more fully in the First Day Declaration, the Debtor operates the Donald W. Wyatt Detention Facility (the "Facility"), an adult maximum security detention facility in the City of Central Falls. In this Chapter 11 Case, the Debtor intends to, among other things, substantially restructure and reduce its existing bond debt. To fund this Chapter 11 Case, the Debtor requires the immediate use of Cash Collateral to continue to operate the Facility and preserve value for the benefit of its estate in accordance with the 13-week budget attached to the Interim Order as **Exhibit 1** (the "Budget").

### Relief Requested

6.      The Debtor respectfully requests entry of the Interim and Final Orders, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b) and Bankruptcy Rules 2002, 4001, 6004(h), and 9014, (a) authorizing the Debtor to (i) use Cash Collateral and (ii) grant liens and provide superpriority administrative expense claims to the Bond Trustee; (b) granting adequate protection to the Bond Trustee; (c) scheduling a Final Hearing on the Motion; and (d) granting related relief.

7.      Pursuant to Local Rule 9013-2(d)(2), Debtor respectfully requests that the Court grant the relief requested in this Motion on an emergency basis for the reasons set forth and given the urgent nature of the consideration of this Motion. To avoid substantial disruption to the Facility's operations and the irreparable harm resulting therefrom, the Debtor is seeking the relief requested herein on an emergency basis.

A. **Prepetition Capital Structure**

8. In 2005, the Debtor determined it was in its interests to expand the Facility to accommodate the increased demand from the federal government for detainee space. On or about June 30, 2005, the Debtor issued the $106,380,000 Central Falls Detention Facility Revenue Refunding Bonds (The Donald W. Wyatt Detention Facility) Series 2005A (the "Bonds") pursuant to an Indenture of Trust dated June 1, 2005 (the "Indenture") by and between US Bank, N.A., as predecessor to the Bond Trustee, and the Debtor.

9. Pursuant to the Indenture and as security for the repayment of the Debtor's obligations under the Bonds (the "Bond Obligations"), the Debtor granted the Bond Trustee, among other things, a first priority lien on and security interest in (a) all receipts, revenues, income and other money received or receivable by or on behalf of the Debtor derived from the operation or ownership of the Facility, and all rights to receive the same; and (b) the Debtor's other tangible and intangible personal property.

10. As further security for the Bond Obligations under the Bond Documents, the Debtor executed a certain Mortgage, Deed, Leasehold Mortgage and Security Agreement, dated as of June 30, 2005 (the "Mortgage," and collectively with the Indenture, and any and all documents relating to, or delivered as security for, the Bonds, the "Bond Documents"). Pursuant to the Mortgage, the Debtor granted the Bond Trustee a first priority security interest in, and a lien on, *inter alia*, (a) the real property titled in the name of the Debtor, (b) all revenues of the Debtor, (c) all personal property of the Debtor, and (d) all leases and rents associated with the Debtor.

B. **Debtor's Need for the Use of Cash Collateral**

11. The Facility houses United States Marshals Service detainees awaiting trial or sentencing in Federal Court, detainees from the Federal Bureau of Prisons, and Immigration and

4

Customs Enforcement detainees. The Debtor faced various operational and financial challenges that precipitated the filing of this Chapter 11 Case, including that the Facility has been often unable to sustain a population rate that would support its operations and substantial obligations under the Indenture.

12.     In this Chapter 11 Case, the Debtor intends to, among other things, refinance its existing bond debt pursuant to the Plan.  The Debtor has an immediate and critical need for the use of the Cash Collateral without which the Debtor would be unable to continue to operate the Facility and preserve value for the benefit of its estate. Access to Cash Collateral will enable the Debtor to pay critical expenses in accordance with the Budget.

13.     Without the relief requested herein, the Debtor would quickly be forced to cease operations, which would result in the Debtor being unable to continue to operate the Facility in the ordinary course.  Moreover, the Debtor needs access to the Cash Collateral to pay the expenses in this Chapter 11 Case.  The continued use of Cash Collateral on the terms set forth in the Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is in the best interest of the Debtor, its estate, and all stakeholders. Indeed, the Bond Trustee consents to the Debtor's use of the Cash Collateral, in accordance with the Interim Order and the Budget.

**Concise Statement of Relief Requested**
**Pursuant to Bankruptcy Rules 4001(b)(1)(B) and (d)(1)(B)**

14.     By this Motion, the Debtor seeks entry of the Interim Order. The provisions of the Interim Order were extensively negotiated with the Bond Trustee and are the most favorable terms that the Debtor was able to obtain under the circumstances. Approval of this Motion will ensure that the Debtor is able to maintain its operations, pursue and achieve a successful restructuring by implementing the Plan, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor requests that the Court enter the Interim Order approving the use of Cash

Collateral.

15.     The chart below contains a summary of the material terms of the Interim Order governing the proposed use of Cash Collateral,[2] together with references to the applicable sections of the relevant Bond Documents, as required by Bankruptcy Rules 4001(b)(1)(B) and (d)(1)(B) and Local Rule 4001-2(a).[3]

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| **Entity with Interests in the Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)* | The Bond Trustee is the only entity with an interest in the Cash Collateral. | ¶¶ F–J. |
| **Amount of Debt Asserted to Be Owed to Entity with Interest in Cash Collateral and**<br><br>**Debtor's Assessment of the Value of Collateral Securing the Entity's Interest**<br><br>*Local Rule 4001-2(a)* | As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds are as follows (collectively, the "Bond Claim"): (i) unpaid principal on the Bonds in the aggregate amount of $97,300,000; (ii) accrued but unpaid interest on the Bonds in the aggregate amount, as of July 9, 2026, of $71,795,528.37, with interest accruing on the outstanding principal amount at a rate of $19,595.14 per day, and (iii) unliquidated, accrued, and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. The Debtor's commercial property insurance policy with Affiliated FM Insurance Company assigns an estimated 100% replacement cost valuation for all real property and business personal property at 935 and 950 High Street, Central Falls, RI 02863 of $115,951,212.  The Debtor also has a separate limit of insurance in the amount of $7,054,248 for business interruption for debt service obligations during a twelve-month period. The Debtor reserves the right to introduce more current and comprehensive evidence as to the valuation of the Facility, whether in connection with hearings on the disclosure statement and plan or otherwise. | ¶¶ F–J. |

---

[2]     This summary and any other description of the Interim Order provided for in this Motion is qualified in its entirety by the actual terms of the Interim Order. The actual terms of the Interim Order will control in the event of any inconsistency between this Motion and the Interim Order.

[3]     Capitalized terms used but not otherwise defined in this chart have the meanings ascribed to them in the Interim Order.

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| **Use of Cash Collateral and Total Amount of Cash Collateral To Be Used**<br><br>*Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)* | The Debtor's use of Cash Collateral shall be solely as set forth in the Budget and as otherwise provided in the Interim Order for: (a) the necessary ordinary course operation and maintenance costs associated with the Facility in the amounts and categories and time set forth in the Budget; and (b) other costs and expenses of the administration of this Chapter 11 Case in the amounts, categories, and time set forth in the Budget. The total dollar amount of the Cash Collateral requested to be used in this Motion, as set forth in the Budget, is $15,689,420. | ¶¶ L,<br><br>2(i)–(ii) |
| **Cash Collateral Budget**<br><br><br>*Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)* | The Debtor shall be authorized to use Cash Collateral in accordance with the Budget approved by the Bond Trustee and subsequent budgets to be filed at later dates in this Chapter 11 Case with the prior written approval of the Trustee. The Debtor believes that the Budget will be adequate to pay all administrative expenses due and payable during the period covered by the proposed Budget.<br><br>The Debtor's use of Cash Collateral shall be conditioned upon the Debtor's compliance with the Budget (subject to the permitted variances), and the Debtor shall not make any payments, or incur any obligations or liabilities, that are not projected and provided for in the Budget. | ¶¶ 2(ii),<br>4(i)–(ii) and Exhibit 1 |
| **Adequate Protection for Pre-Petition Secured Interests**<br><br><br>*Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)* | As adequate protection of the Bond Trustee's interests in the Prepetition Collateral, including Cash Collateral, the Bond Trustee is granted the following under the Interim Order as adequate protection solely for any diminution in the value of the Pre-Petition Collateral resulting from the use, sale, or lease by the Debtor of the Pre-Petition Collateral:<br><br>• *Replacement Liens*. The Bond Trustee shall continue to have valid, binding, enforceable and perfected additional and replacement mortgages, pledges, liens and security interests in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature whatsoever, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, accounts, revenues, inventory, equipment, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, general intangibles, patents, copyrights, trademarks, deposit accounts, causes of action, tax refund claims, commercial tort claims, insurance proceeds and insurance premium refunds (all of the foregoing, the "Post-Petition Collateral"), to the same extent, priority and validity that existed as of the Petition Date (such liens, the "Replacement Liens"); *provided however*, that in connection with the Interim Order, Post-Petition Collateral shall exclude actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548 (exclusive of transferees under section 549, 550 and 553 of the Bankruptcy Code (collectively, the "Avoidance Actions"); | ¶ 3(i)–(iii) |

7

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| | *provided further*, that the Bond Trustee reserves the right to request that the Post-Petition Collateral include Avoidance Actions and proceeds thereof in any Final Order on the Motion; *provided further*, that the Replacement Liens shall be subject to the Carve Out and any valid and perfected liens existing on or arising after the Petition Date which, solely by operation of law, have priority over the Post-Petition Liens (the "Priority Liens"). <br>• *Supplemental Liens*. The Bond Trustee shall have a valid, perfected and enforceable continuing supplemental lien on, and security interest in, all of the assets of the Debtor of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising before or after the Petition Date, and the proceeds, rents, products and profits therefrom (the "Supplemental Collateral"), exclusive of Avoidance Actions and any proceeds therefrom (provided that the Bond Trustee reserves the right to request that the Supplemental Liens include Avoidance Actions and proceeds thereof in any Final Order on the Motion) (collectively, the "Supplemental Liens"); *provided however*, that the Supplemental Liens shall be subject to the Carve Out and the Priority Liens. <br>• *Superpriority Claim*. The Bond Trustee shall receive a superpriority expense claim allowed under section 507(b) of the Bankruptcy Code (the "Superpriority Claim") against all assets of the Debtor's estate. The Superpriority Claim shall have priority over any and all other unpaid administrative expenses now existing or hereafter arising, of any kind whatsoever, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment; *provided however*, that the Superpriority Claim shall be subject to the Carve Out and the Priority Liens. <br>• *Financial Reports*. As additional adequate protection, the Debtor shall provide the Bond Trustee with all reports, documents, and other materials, including financial reports as may be required in the Interim Order, and such other and further access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Bond Trustee from time to time. <br>• *Bond Trustee Fees*. The Debtor shall, and is directed in the Interim Order to, pay in full in cash and in immediately available funds, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Bond Trustee (the "Bond Trustee Fees") in the amounts and at the | |

8

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| | times set forth in the Budget and the Bond Trustee, to the extent necessary to satisfy the Bond Trustee Fees in full, is authorized to withdraw monies from funds held and maintained by it under and in accordance with the Bond Documents (the "Trustee-Held Funds") in accordance with the Bond Documents, in all instances pursuant to the procedures set forth in the Interim Order. | |
| **Carve Out**<br><br>*Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)* | The term "Carve-Out" means the sum of (i) an aggregate amount not to exceed the sum of: (a) the unpaid dollar amount of the fees and expenses of professionals retained by the Debtor or a Committee, if any, to the extent (1) incurred or accrued prior to the Termination Date and remaining unpaid and (2) provided for under the Budget, provided that the budgeted disbursements for subsequent Budget periods are permitted to be amended so that the Debtor may (i) carry forward any unspent budgeted line item disbursements for estate professionals from prior periods and (ii) carry back any unspent budgeted line item disbursements for estate professionals from future periods, plus (b) the dollar amount of the fees and expenses of the professionals retained by the Debtor or a Committee, if any, to the extent incurred or accrued after the Termination Date in an aggregate amount (solely for purposes of section 15(b) of the Interim Order) not to exceed $300,000, but in each of sections (a) and (b) only to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, plus (ii) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of the Court plus any interest at the statutory rate. | ¶ 15 |
| **Milestones**<br><br>*Bankruptcy Rule 4001(b)(1)(B)* | The Debtor agrees in the Interim Order that it will use its best efforts to comply with the following milestones (the "Bankruptcy Milestones"): (a) on Tuesday of each week (or such other day as may be agreed upon by the Debtor and Bond Trustee), the Debtor shall make available representatives with appropriate knowledge of the Debtor's cash flows and operations (which representative may be a financial advisor to the Debtor) for a telephone conference call with the Bond Trustee, the holders of the Bonds, and their respective agents, advisors and/or representatives to discuss the cash flows and operations of the Facility, including the Debtor's compliance with the Budget, the status of this Chapter 11 Case, and such other matters as are relevant or are reasonably requested by the Bond Trustee; (b) on the Petition Date, the Debtor shall have filed the Plan, Disclosure Statement and related Solicitation Materials and a motion seeking approval of the Disclosure Statement and Solicitation Materials; (c) the Interim Order shall be entered no later than three (3) business days after the Petition Date; (d) the Final Order shall be entered no later than thirty-five (35) calendar days after the Petition Date; (e) the Plan, Disclosure Statement, and Solicitation Materials shall be approved no later than thirty-five (35) calendar days after the Petition Date; (f) the Confirmation Order shall be entered no later than ninety (90) calendar days after the Petition Date; and (g) the Plan effective date shall occur no later than thirty (30) days calendar after entry of the | ¶ 4(iii) |

9

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| | Confirmation Order. | |
| **Events of Default**<br><br>*Local Rule 4001-2(a)* | Each of the following shall be considered an Event of Default ("Event of Default") under the Interim Order: (a) the failure of the Debtor to pay all of its administrative expenses in full in accordance with and subject to the terms as provided for in the Budget; (b) the Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Bond Trustee, except by the Final Order; (c) failure to meet any of the Bankruptcy Milestones or other covenants set forth in the Interim Order; (d) a material breach by the Debtor of the Restructuring Support Agreement; (e) the dismissal of this Chapter 11 Case, conversion of this Chapter 11 Case to a chapter 7 case, or suspension of this Chapter 11 Case under section 305 of the Bankruptcy Code; (f) the appointment of a chapter 11 trustee or an examiner with enlarged powers; (g) the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtor, by any entity other than the Bond Trustee on any Pre-Petition Collateral, Post-Petition Collateral, or Supplemental Collateral; (h) the entry of an order granting any superpriority claim which is senior or *pari passu* with the Pre-Petition Liens, Replacement Liens, Supplemental Liens, or the Superpriority Claim granted pursuant to the Interim Order; (i) the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtor other than as set forth in the Budget or as provided for in the Interim Order; (j) the cessation of Replacement Liens, Supplemental Liens, or Superpriority Claim granted pursuant to the Interim Order to be valid, perfected, and enforceable in all respects; (k) the filing of any Challenge to the Pre-Petition Liens or Pre-Petition Collateral by the Debtor (for the avoidance of doubt, the filing of a Challenge by any other party in interest shall not be an Event of Default hereunder); (l) the payment of estate professional fees by the Debtor other than to the extent set forth in the Budget; or (m) failure to pay the amounts due under the Interim Order when due. | ¶ 9 |
| **Rights Upon Default**<br><br>*Local Rule 4001-2(a)* | The Debtor shall not be authorized to use Cash Collateral for any purpose upon the occurrence of an Event of Default (such date, the "Termination Date"); *provided, however*, that the Bond Trustee shall provide five (5) business days (the "Default Notice Period") written notice via email to counsel to the Debtor, the United States Trustee, and counsel to any Committee of any Event of Default (the "Default Notice") and the Debtor may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtor or any Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Bond Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing; *provided further*, that during the Default Notice Period the Bond Trustee shall permit the Debtor to cure such Event of Default and once such Event of Default is cured the Debtor is authorized to continue to use Cash Collateral as provided pursuant to the Interim Order. Notwithstanding the occurrence of an Event | ¶¶ 10, 11 |

10

| Required Disclosure | Summary of Material Term | Reference in Interim Order |
|---|---|---|
| | of Default or anything in the Interim Order to the contrary, all of the rights, remedies, benefits, and protections provided to the Bond Trustee shall survive the Termination Date. Notwithstanding the occurrence of an Event of Default, the Bond Trustee may elect not to terminate the Debtor's authority to use Cash Collateral, to waive (but only in writing) defaults, to forbear from the exercise of rights and remedies and, subject to Bankruptcy Court approval, to modify (but only in writing) any Event of Default. | |

**Basis For Relief**

I.    **The Debtor's Request to Use Cash Collateral and The Proposed Adequate Protection Is Appropriate.**

16.    Bankruptcy Code section 363(c)(2) provides that a debtor may use cash collateral as long as (a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of that section. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

17.    Bankruptcy Code section 362(d)(1) provides for adequate protection in property due to the imposition of the automatic stay. 11 U.S.C. § 362(d)(1). Although Bankruptcy Code section 361 provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See, e.g.*, *In re Nat'l Promoters & Servs., Inc.*, No. 12-01076 ESL, 2013 WL 5567262, at *2 (Bankr. D.P.R. Oct. 9, 2013) ("[G]iven the nature of bankruptcy and the distinct characteristics of every debtor, the decision requires a case-by-case analysis of the facts and circumstances of each case prior to authorizing or denying the request to use cash collateral."); *In*

*re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code, and must be determined based upon equitable considerations arising from the particular facts of each proceeding.") (internal citation omitted); *In re Tellier*, 125 B.R. 348, 349 (Bankr. D.R.I. 1991) ("[A]dequate protection, when applicable, is a flexible concept to be tailored to the individual facts and circumstances of each case.").

18.     By requiring debtors to provide adequate protection, the Bankruptcy Code shields a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Dynaco Corp.*, 162 B.R. at 393–94 (granting cash collateral motion after finding adequate protection in form of viable business plan that would create sufficient value in replacement liens to protect creditor's interest); *In re Pawtuxet Valley Prescription & Surgical Ctr., Inc.,* No. BK 07-11767, 2008 WL 1990887, at *2 (Bankr. D.R.I. Mar. 10, 2008) ("In considering whether the secured creditor is adequately protected, the Court must determine the value of the Bank's interest in the collateral and whether the Debtor's proposed use of cash collateral will impair that interest."); *see also In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 2483427 (Bankr. S.D.N.Y. Mar. 13, 2023) ("The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when the debtor-in-possession is using the collateral."). Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens, and administrative claims.

19.     Here, the Bond Trustee has consented to the Debtor's use of Cash Collateral on the terms set forth in the Interim Order. The proposed adequate protection included in the Interim Order provides adequate protection in the form of, among other things, the Replacement Liens,

the Supplemental Liens, the Superpriority Claim, reporting requirements, and payment of the Bond

Trustee's fees and expenses.

20.     The Debtor submits that the proposed adequate protection for the Bond Trustee is

appropriate and sufficient to protect the Bond Trustee from any diminution in value of the

Prepetition Collateral (including Cash Collateral). The Cash Collateral will be used for funding

the Debtor's business operations during this Chapter 11 Case. Immediate access to this liquidity

will permit the Debtor to fund payroll, pay vendors, and otherwise continue business in the

ordinary course. If Cash Collateral is not available, the Debtor will dissipate value to the detriment

of all of its stakeholders. Thus, the use of Cash Collateral will protect the Bond Trustee's security

interests by preserving the value of the Prepetition Collateral. *See In re Salem Plaza Assocs.*, 135

B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating

expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate

protection to secured creditor).

21.     In light of the foregoing, the Debtor submits that the proposed adequate protection

to be provided is appropriate and necessary to protect the Bond Trustee against any diminution in

value and is also fair and appropriate on an interim basis under the circumstances of this case and

to ensure that the Debtor is able to continue using Cash Collateral in the near term, for the benefit

of its estate and all parties in interest. Accordingly, the adequate protection proposed herein and in

the Cash Collateral Orders is fair and reasonable and sufficient to satisfy the requirements of

sections 363(c)(2) and (e) of the Bankruptcy Code. Moreover, bankruptcy courts in this Circuit

have granted similar relief in other recent chapter 11 cases. *See*, *In re UTGR, Inc. d/b/a Twin River*,

Case No. 09-12418 (Bankr. D. R.I. Nov. 18, 2009); *see also In re Lake Spafford Cabins, Inc.*, Case

No. 25-10128 (Bankr. D.N.H. Mar. 26, 2025); *In re U.S. Credit, Inc.*, Case No. 24-10058 (Bankr.

13

D. Mass. Jan. 23, 2024); *In re The ROTM Lofts, LLC*, Case No. 24-10257 (Bankr. D. Me. Dec. 2, 2024); *In re Heywood Healthcare, Inc.*, Case No. 23-40817 (Bankr. D. Mass. Oct. 5, 2023).

**II.     The Debtor Asserts Its Inability to Use the Cash Collateral Within 21 Days of the Petition Date Would Cause Immediate and Irreparable Harm.**

22.     Interim relief may be granted on a motion to use cash collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001(b)(2), (c)(2)(A) (2024).

23.     The Debtor has an urgent and immediate need for cash to continue to operate. Without use of the Cash Collateral, the Debtor will have little or no cash to pay trade creditors and, therefore, the Debtor's trade creditors may cease to provide goods and services to the Debtor on credit. The Debtor also will not be able to pay its payroll and other direct operating expenses or obtain goods and services needed to operate the Facility in a manner that will avoid immediate and irreparable harm to the Debtor's estate. The Debtor's ability to finance its operations and the availability to the Debtor of sufficient working capital and liquidity through the use of cash collateral is vital to the confidence of the Debtor's employees, major suppliers, and to the preservation and maintenance of the going-concern values and other values of the Debtor's estate. The Debtor, therefore, seeks immediate authority to use the Cash Collateral pursuant to the Budget as set forth in this Motion and in the Cash Collateral Orders.

24.     Put simply, without the relief requested herein, the Debtor would ultimately be forced to cease operations, which would result in significant risk to public safety and potentially harm to the Facility's detainees, all of whom depend upon the Facility's ability to meet their respective nutritional, medical, and other needs at the Facility. The continued use of Cash Collateral on the terms set forth in the Interim Order are necessary to avoid immediate and

14

irreparable harm to the estate, and is in the best interest of the Debtor, its estate, and all stakeholders.

25.     Based on the foregoing, the Debtor respectfully submits that entry of the Interim Order authorizing the interim use of Cash Collateral and scheduling a Final Hearing to approve the use of Cash Collateral on a final basis is necessary and appropriate.

**III.     Modification of the Automatic Stay is Warranted.**

26.     The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis (to the extent applicable) as necessary to effectuate all terms and provisions of the Interim Order, including, without limitation to permit: (a) the Debtor to grant the Bond Trustee the adequate protection as provided in the Interim Order, including the Replacement Liens and Supplemental Liens, (b) the Bond Trustee to accept and receive disbursements and/or payments and to apply such moneys pursuant to the Bond Documents, and (c) the Bond Trustee to take any action specifically authorized or contemplated by the Interim Order and exercise possession, control, use and/or distribution of any funds now or hereafter held by it as permitted under the Bond Documents.

27.     Stay modifications of this kind are ordinary and standard terms of postpetition use by debtors in possession of prepetition collateral, and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Debtor respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

<u>**Request For Final Hearing**</u>

28.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the final hearing that is as soon as practicable, but in no event later than twenty-one (21) days following the entry of the Interim Order, and fix the time and date prior to

15

the final hearing for parties to file objections to the Motion.

**Debtor's Compliance with Bankruptcy Rule 6003 and Local Rule 9013-2**

29.     Pursuant to Local Rules 4001-2(a) and 9013-2(d)(2), the Debtor respectfully requests emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court must not grant an application or motion within the first 21 days after the Petition Date "[u]nless relief is needed to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003(a) (2024). For the reasons discussed above, entry of an interim order granting this Motion is integral to the Debtor's ability to successfully transition into chapter 11. As described above, the Debtor believes that all or substantially all of its available cash constitutes Cash Collateral and is therefore unable to proceed to continue its business operations without the ability to use Cash Collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. The Debtor's ability to finance its operations is vital to the preservation and maintenance of the value of the Debtor's Facility. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein. In accordance with Local Rule 9013-2(d)(2), the Debtor requests that the Court schedule an emergency hearing to consider the relief requested in this Motion. An emergency hearing is critical to enabling the Debtor to continue to maintain and operate its business without disruption and to prevent delay in the efficient administration of this Chapter 11 Case.

**Debtor's Compliance with
Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

30.     To implement the foregoing successfully, the Debtor requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule

16

6004(h). Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." FED. R. BANKR. P. 6004(h) (2024). As explained above, the relief requested herein is essential to avoid the immediate and irreparable harm that would be caused by the Debtor's inability to transition smoothly into chapter 11. The Debtor submits that ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Reservation of Rights**

31.     Nothing contained herein is intended to be or shall be deemed as (a) an implication or admission as to the validity of any claim against the Debtor, (b) a waiver or limitation of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (c) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (d) a waiver of the obligation of any party in interest to file a proof of claim, (e) an agreement or obligation to pay any claims, (f) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (g) an admission as to the validity of any liens satisfied pursuant to this Motion, or (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's or any other party in interest's rights to dispute such claim subsequently.

## Motion Practice

32.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to the Motion. Accordingly, the Debtor submits that the Motion satisfies Local Rule 9013-1(a).

## Limitation of Notice Requested

33.     The Debtor has provided notice of this Motion, and once established, will provide notice of the Emergency Hearing, either by electronic mail or facsimile and/or by overnight mail to: (a) the Office of the United States Trustee for the District of Rhode Island; (b) counsel to the Bond Trustee; (c) counsel to the City of Central Falls; (d) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (e) the Internal Revenue Service.

34.     Due to the urgency of the circumstances surrounding this Motion (as more fully described herein and in the First Day Declaration) and the nature of the relief requested herein, the Debtor respectfully requests that the Court approve such limited notice to the foregoing parties as both appropriate and sufficient under the circumstances pursuant to Local Rule 9013-2(d)(2)(B).

*[Remainder of page intentionally left blank]*

**WHEREFORE**, for the reasons set forth herein and in the First Day Declaration, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: July 10, 2026

PARTRIDGE SNOW & HAHN LLP

*/s/ Daniel E. Burgoyne*
Daniel E. Burgoyne (#7541)
Matthew A. Lopes, Jr. (#3877)
40 Westminster Street
Suite 1100
Providence, RI 02903
T: (401) 861-8254
F: (401) 861-8210
dburgoyne@psh.com
mlopes@psh.com

– and –

TROUTMAN PEPPER LOCKE LLP

Jonathan W. Young (*pro hac vice* forthcoming)
Hanna J. Redd (*pro hac vice* forthcoming)
111 Huntington Ave., 9th Floor
Boston, MA 02199
T: (617) 239-0100
F: (617) 227-4420
jonathan.young@troutman.com
hanna.redd@troutman.com

Aaron C. Smith (*pro hac vice* forthcoming)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
T: (312) 443-700
F: (312) 443-0336
aaron.smith@troutman.com

*Proposed Counsel to the Debtor and Debtor in Possession*

19

## EXHIBIT A

## Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTRAL FALLS DETENTION | ) | Case No. 26- _____ |
| FACILITY CORPORATION, | ) |  |
| d/b/a Donald W. Wyatt Detention Facility | ) |  |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR (A) TO USE
CASH COLLATERAL AND (B) GRANT LIENS AND PROVIDE SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED PARTY; (III) MODIFYING THE
AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING;
AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Central Falls Detention Facility Corporation (d/b/a

Donald W. Wyatt Detention Facility), as debtor and debtor in possession in the above-captioned

chapter 11 case (the "Debtor" or "CFDFC"), pursuant to sections 105, 361, 362, 363, 503 and 507

of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rules 2002-1 and

4001-2, seeking entry of an interim order (this "Interim Order"): (i) authorizing the use of Cash

Collateral on an interim basis pursuant to the Budget; (ii) granting adequate protection to the Bond

Trustee; (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the

extent necessary to implement and effectuate the terms and provisions of the Cash Collateral

Orders; and (iv) scheduling a final hearing (the "Final Hearing") to consider entry of a final order

concerning the foregoing (the "Final Order" and together with this Interim Order, the "Cash

Collateral Orders"), all as more fully set forth in the Motion; and this Court having jurisdiction to

---

[1]     The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

[2]     Capitalized terms used but otherwise not defined herein shall have the meaning ascribed in the Motion

1

consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having considered the Motion, stipulations, acknowledgements and agreements of the Debtor and the Bond Trustee, and the evidence submitted at the interim hearing on the Motion; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and that such relief is essential for the continued operation of the Debtor's business pending the Final Hearing; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     <u>Debtor-in-Possession Operation</u>. On July 10, 2026 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced its case thereunder (the "<u>Chapter 11 Case</u>"). Since the Petition Date, the Debtor has been operating its business and managing its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     <u>Committee</u>. As of the date of the Interim Hearing, no committee of unsecured

2

creditors (a "Committee") has been appointed in this Chapter 11 Case. No request has been made for the appointment of a trustee or examiner in this Chapter 11 Case.

C.      Jurisdiction and Venue. The Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Chapter 11 Case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Notice. Proper, timely, adequate and sufficient notice under the circumstances of the Motion and the Interim Hearing has been provided in accordance with sections 102, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003 and 6004, and Local Rules 2002-1 and 4001-2, which notice was sent to, among others (a) the Office of the United States Trustee for the District of Rhode Island (the "U.S. Trustee"); (b) the Bond Trustee; (c) counsel to the City of Central Falls; (d) the Internal Revenue Service; (e) the parties included on the Debtor's consolidated list of its 20 largest unsecured creditors; and (f) all parties entitled to notice pursuant to Bankruptcy Rule 2002, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, for purposes of Bankruptcy Rule 6003.

E.      The Debtor and the Facility. The Debtor operates a detention facility known as The Donald W. Wyatt Detention Facility and related training facility (the "Facility") located in the City of Central Falls, Rhode Island (the "City").

F.      Stipulation Regarding Prepetition Secured Bond Obligations. Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, stipulates, and agrees that it is obligated to the Bond Trustee for the benefit of the beneficial holders with respect to those certain $106,380,000 Detention Facility Revenue Refunding Bonds (The Donald W. Wyatt Detention

3

Facility) Series 2005A (the "Bonds"), issued pursuant to the terms of an Indenture of Trust dated as of June 1, 2005 (the "Indenture") between the Debtor and the Bond Trustee, as successor trustee thereunder.

G.      Stipulation Regarding Prepetition Secured Bond Claim. Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, stipulates, and agrees that as of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds are as follows (collectively, the "Bond Claim"):

(i)     Unpaid principal on the Bonds in the aggregate amount of $97,300,000;

(ii)    Accrued but unpaid interest on the Bonds in the aggregate amount, as of July 9, 2026, of $71,795,528.37;[3] and

(iii)   unliquidated, accrued, and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

H.      Stipulation Regarding Security for the Bond Obligations. Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, stipulates, and agrees that, as security for its obligations with respect to the Bonds, the Debtor granted to the Bond Trustee a first priority lien on and security interest in, without limitation, all receipts, revenues, income (including investment income) and other money received or receivable by or on behalf of the Debtor derived from all sources including, without limitation, the operation or ownership of the Facility, and including, without limitation, disposition of assets or borrowings, and any insurance proceeds and condemnation awards, and all rights to receive the same whether in the form of accounts, accounts receivable, general intangibles, contract rights, chattel paper, instruments or other rights and the proceeds thereof.

---

[3]     Interest accrues on the outstanding principal amount at a rate of $19,595.14 per day.

I.        Stipulation Regarding Prepetition Bond Documents and Prepetition Collateral.
Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, stipulates, and agrees that, as further security for the Bonds, the Debtor granted the Bond Trustee a first priority lien on and security interest in all or substantially all of the Debtor's real and personal property, including without limitation, the Mortgaged Property, all tenements, hereditaments, appurtenances and all the estates and rights of the Debtor in and to the Mortgaged Property, all the right, title and interest of the Debtor, in and to all streets, roads and public places, opened or proposed, adjoining the Mortgaged Property, all easements and rights of way, public or private used in connection with the Mortgaged Property, all right, title and interest of the Debtor in and to any land lying in the bed of any street, road or avenue, open or proposed, in front of or adjoining the Mortgaged Property to the extent of the interest of the Debtor therein, all right, title and interest of the Debtor in and to any and all sidewalks and alleys, and all strips and gores of land, adjacent to or used in connection with the Mortgaged Property, all right, title and interest of the Debtor in and to all buildings, structures and improvements of every kind and description erected or placed on the Mortgaged Property, all right, title and interest of the Debtor in and to all fittings, appliances, apparatus, equipment, machinery, building materials, supplies and fixtures affixed or attached to or placed upon, or used in any way in connection with the complete and comfortable use, enjoyment, operation, maintenance and occupancy of the Mortgaged Property, buildings, structures, and improvements, all right, title and interest of the Debtor in and to all building materials, supplies, equipment, machinery and other chattels delivered or being upon the Mortgaged Property and intended to be incorporated or installed in or on the Mortgaged Property, and all right, title and interest of the Debtor in and to the reversions, remainders, easements, rents, issues and profits arising or issuing from the Mortgaged Property, and/or the buildings, structures and improvements

thereon including, but not limited to, the rents, issues and profits arising or issuing from all insurance policies, sale agreements, licenses, options, leases and subleases covering any part of the Mortgaged Property and/or the buildings, structures and improvements thereon, and all receipts, revenues, income (including investment income) and other money received or receivable by or on behalf of the Debtor derived from all sources including, without limitation, the operation or ownership of the Facility, and including, without limitation, disposition of assets or borrowings, and any insurance proceeds and condemnation awards, and all rights to receive the same whether in the form of accounts, accounts receivable, general intangibles, contract rights, chattel paper, instruments or other rights and the proceeds thereof, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the Debtor, and all of the Debtor's right, title and interest in and to the Operator's Agreement (as defined in the Indenture), and all money held by the Bond Trustee in the funds created under the Indenture (such property, together with the collateral as described in the Indenture, the "Pre-Petition Collateral"), pursuant to that certain Open-End Mortgage Deed, Leasehold Mortgage and Security Agreement dated as of June 1, 2005 and recorded on June 30, 2005 with the Office of the City Clerk of Central Falls, Rhode Island (the "Mortgage"). The Indenture, the Mortgage, and any other document or agreement delivered as security for, or in respect to, the Bonds or the Debtor's obligations under any of such documents in favor of the Bond Trustee are collectively referred to herein as the "Bond Documents."

J.      Stipulation Regarding Prepetition Liens. Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, stipulates, and agrees that, pursuant to the Bond Documents, the Bond Trustee holds valid and enforceable first priority liens and security interests (the "Pre-Petition Liens") in all of the Pre-Petition Collateral (other than Permitted Encumbrances

6

as defined in the Indenture), including all of the Debtor's right, title, interest, and estate in the Pre-Petition Collateral, as security for the Bonds.  The Debtor has conducted a review of the documents evidencing the Pre-Petition Liens and this stipulation is informed by such review.

K.      Validity, Perfection and Priority of Prepetition Liens. Subject to the rights and claims set forth in paragraph 14 herein, the Debtor admits, acknowledges and agrees that the Bond Claim: (a) constitutes its legal, valid, binding, enforceable, and non-avoidable obligation; (b) is not subject to setoff, defense, valid claim, counterclaim, or subordination of any kind; and (c) is secured by first-priority Pre-Petition Liens in the Pre-Petition Collateral.

L.      Purpose and Need to Use Cash Collateral. The Debtor has requested the use of assets that serve as collateral for the Bonds including, without limitation, the Cash Collateral of the Bond Trustee in connection with this Chapter 11 Case. The Bond Trustee only consents to the use of its collateral, including Cash Collateral, upon the express terms of this Interim Order and any subsequent Interim or Final Orders, and solely to the extent provided in the Budget (as defined below). Without the use of this collateral, including Cash Collateral, the Debtor's continued operation as a going concern would be disrupted, and the Debtor, its estate, and creditors would be immediately and irreparably harmed. The Debtor would not have the funds necessary to maintain the Facility, pay employee compensation, payroll taxes, overhead, and other expenses. The Debtor requires use of Cash Collateral as provided herein.

M.      Good Faith. The Debtor and the Bond Trustee have negotiated at arm's length and in good faith in the negotiation and preparation of this Interim Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Interim Order, inclusive of the adequate protection provided to the Bond Trustee relating to the Pre-Petition Liens, reflect the Debtor's exercise of prudent business judgment under exigent

circumstances and are consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

N.      Adequate Protection. Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to provide adequate protection to the Bond Trustee in respect of the use of the Pre-Petition Collateral (including Cash Collateral). The Debtor wishes to provide adequate protection of the security interests in and liens on the Pre-Petition Collateral pursuant to the terms set forth in this Interim Order.

O.      Good Cause Shown; Best Interest. Good cause has been shown for the immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(1) and Local Rule 4001-2(a) and (d). The terms of this Interim Order, inclusive of the adequate protection provided to the Bond Trustee relating to the Pre-Petition Liens, are fair and commercially reasonable, reflect the Debtor's prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration. Entry of this Interim Order is in the best interest of the Debtor, its creditors, including the holders of the Bonds, and its estate.

P.      Final Hearing. The Debtor will seek approval of the relief requested in the Motion on a final basis pursuant to a Final Order at the Final Hearing.

Q.      To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so stated.

Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Motion Granted. The Motion is hereby **GRANTED** on an interim basis in accordance with the terms and conditions set forth in this Interim Order. Any objections to the

8

Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled with respect to this Interim Order.

2.       Authorization for Use of Prepetition Collateral; Budget.

i.       *Authorization*. The Debtor is hereby authorized to use the Pre-Petition Collateral, including cash collateral (as defined in section 363(a) of the Bankruptcy Code) constituting proceeds of accounts and revenues from operations of the Facility (collectively, the "Cash Collateral"), but not including any other funds received by the Debtor during this Chapter 11 Case.

ii.       *Approved Budget*. The Debtor's use of Cash Collateral shall be solely as set forth in the Budget attached as **Exhibit 1**, which Budget may be amended at the request of the Debtor and with the written consent of the Bond Trustee and incorporated herein by reference (as it may be amended, supplemented, replaced or otherwise modified from time to time solely with the consent of the Bond Trustee, in its sole discretion, the "Budget"), and as otherwise provided in this Interim Order; provided, however, that the Debtor shall provide all modifications to the Budget to the U.S. Trustee and counsel to any Committee, if one is appointed.  Except on the terms and conditions of this Interim Order, the Debtor is prohibited from using Cash Collateral at any time or for any other purpose absent consent of the Bond Trustee, or further order of the Court.

3.       Adequate Protection. The Bond Trustee is entitled to receive adequate protection on account of the Pre-Petition Liens and Pre-Petition Collateral securing the Bond Claim. As adequate protection of the Bond Trustee's interests in the Pre-Petition Collateral, including Cash

9

Collateral, pursuant to sections 361, 363 and 552(b) of the Bankruptcy Code, the Bond Trustee is hereby provided the following adequate protection:

i. *Replacement Liens*. As adequate protection solely for any diminution in the value of the Pre-Petition Collateral resulting from the use, sale, or lease by the Debtor of the Pre-Petition Collateral ("Diminution"), the Bond Trustee shall continue to have valid, binding, enforceable and perfected additional and replacement mortgages, pledges, liens and security interests in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature whatsoever, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, accounts, revenues, inventory, equipment, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, general intangibles, patents, copyrights, trademarks, deposit accounts, causes of action, tax refund claims, commercial tort claims, insurance proceeds and insurance premium refunds (all of the foregoing, the "Post-Petition Collateral"), to the same extent, priority and validity that existed as of the Petition Date (such liens, the "Replacement Liens"); *provided however*, that in connection with this Interim Order, Post-Petition Collateral shall exclude actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548 (exclusive of transferees under section 549), 550 and 553 of the Bankruptcy Code (collectively, the "Avoidance Actions"); *provided further*, that the Bond Trustee reserves the right to request that the Post-Petition Collateral include Avoidance Actions and proceeds thereof in any Final Order on the Motion; provided further, that the Replacement Liens shall be subject to the Carve Out (as defined

10

below) and any valid and perfected liens existing on or arising after the Petition Date which, solely by operation of law, have priority over the Post-Petition Liens (the "Priority Liens").

ii.        *Supplemental Liens*. As additional adequate protection solely for any Diminution, the Bond Trustee shall have a valid, perfected and enforceable continuing supplemental lien on, and security interest in, all of the assets of the Debtor of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising before or after the Petition Date, and the proceeds, rents, products and profits therefrom (the "Supplemental Collateral"), exclusive of Avoidance Actions and any proceeds therefrom (provided that the Bond Trustee reserves the right to request that the Supplemental Liens include Avoidance Actions and proceeds thereof in any Final Order on the Motion) (collectively, the "Supplemental Liens"); *provided however*, that the Supplemental Liens shall be subject to the Carve Out and the Priority Liens.

iii.        *Superpriority Claim*. As additional adequate protection solely for any Diminution, the Bond Trustee shall receive a superpriority expense claim allowed under section 507(b) of the Bankruptcy Code (the "Superpriority Claim") against all assets of the Debtor's estate. The Superpriority Claim shall have priority over any and all other unpaid administrative expenses now existing or hereafter arising, of any kind whatsoever, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment

lien or other nonconsensual lien, levy or attachment; *provided however*, that the Superpriority Claim shall be subject to the Carve Out and the Priority Liens.

iv.     *Financial Reports*. The Debtor shall provide the Bond Trustee with all reports, documents, and other materials, including financial reports as may be required in this Interim Order, and such other and further access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Bond Trustee from time to time.

v.     *Right to Seek Additional Adequate Protection*. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Bond Trustee to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.

vi.     *Bond Trustee Fees*. The Debtor shall, and is directed to, pay in full in cash and in immediately available funds, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Bond Trustee (the "Bond Trustee Fees") in the amounts and at the times set forth in the Budget and the Bond Trustee, to the extent necessary to satisfy the Bond Trustee Fees in full, is authorized to withdraw monies from any expense retainers funded by the Debtor prior to the Petition Date and/or the Trustee-Held Funds in accordance with the Bond Documents. None of the foregoing reasonable and documented fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases,* effective as of November 1, 2013, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such

12

payments; *provided, that* copies of the invoices for such professional fees, expenses and disbursements (the "Invoiced Fees") shall be served by email on the Debtor, the U.S. Trustee, and counsel to any Committee (collectively, the "Fee Notice Parties"), who shall have ten (10) business days (the "Review Period") to review and assert any objections thereto.  Invoiced fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of this Chapter 11 Case, together with time entries which may be modified to redact information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information (such information, collectively, "Confidential Information"), and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. The Fee Notice Parties reserve their respective right to request additional information to challenge an assertion of privilege with respect to such redactions.  The Debtor, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtor, any Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (the applicable parties shall work in good faith to promptly resolve any such objection or, if unable to do so, shall seek an order of the Court). For the avoidance of doubt, the Debtor shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

4.      Budget and Reporting Covenants.  The Debtor shall observe all covenants in this Interim Order at all times prior to the Termination Date (as defined below).  The Debtor agrees as

13

follows (and the Debtor acknowledges that failure to comply with such covenants shall constitute an Event of Default (as defined below)) under this Interim Order:

i.        *Budget Compliance*. The Debtor shall comply with the Budget (subject to the permitted variances provided in the next immediate sentence), and shall not make any payments, or incur any obligations or liabilities, that are not projected and provided for in the Budget.  For any Measuring Period (as defined below) the Debtor (i) shall not permit payments for such Measuring Period to exceed (x) one hundred ten percent (110%) of the respective amounts, measured as to each line item in the Budget and (y) one hundred ten percent (110%) of the respective amounts, measured on an aggregate basis, as set forth for such Measuring Period; provided that expenditures for estate professional fees shall not exceed one hundred percent (100%) of the amount allocated for such expenditures in the Budget for such Measuring Period, provided, that the budgeted disbursements for subsequent Budget periods are permitted to be amended so that the Debtor may (a) carry forward any unspent budgeted line item disbursements for estate professionals from prior periods and (b) carry back any unspent budgeted line item disbursements for estate professionals from future periods to pay unpaid estate professional fees that have been allowed pursuant to any order of the Bankruptcy Court or pursuant to an order approving procedures for interim compensation for estate professionals; and (ii) shall not permit receipts for such Measuring Period to be less than eighty-five percent (85%) of the amounts, on an aggregate basis, set forth for such Measuring Period in the Budget.  This variance (the "Variance") shall be measured on a rolling six-week period (the "Measuring Period"); *provided, however*, that for purposes of calculating such Variance, (i) the first Measuring Period shall be the first three weeks after the Petition Date and the first three weeks of the Budget, and (ii) the second Measuring Period shall be the first through sixth weeks after the Petition Date and the first through sixth

14

weeks of the Budget.  Any budgeted expenditures not paid in a particular budget period may be

paid during a subsequent period and, for the purpose of calculating rolling six-week variances set

forth above, the Budget will be revised to move such expenditures to the later period, it being

understood that such later period can be outside the six-week period.  Expenditures (except for

professional fees which are addressed as noted above) may be paid in an earlier period in the

reasonable discretion of the Debtor, in which event the Budget shall be deemed amended to move

the expenditure into the week of the actual expenditure for the purpose of calculating rolling six-

week variances set forth above.  To the extent the Debtor incurs an unexpected, out of Budget

expense, the Debtor shall only be permitted to pay such expense upon prior written consent from

the Bond Trustee.  Subject to paragraphs L and 2 above, the Debtor may reforecast the Budget up

to once every four weeks, and the Bond Trustee may approve or not approve such reforecasted

Budget in its reasonable discretion.

ii.   *Budget Reporting*. The Debtor shall provide the following reports to the Bond

Trustee and the U.S. Trustee:

a.  no later than 5:00 p.m. (prevailing Eastern time) on Thursday of every other week or if such Thursday is not a business day, then the immediate succeeding business day, the "Bi-Weekly Budget Report" which means a weekly report certified by an Authorized Officer for the Debtor, substantially in the same form as the Budget, indicating (i) a comparative reconciliation, on a line-by-line and aggregate basis, of actual cash receipts and disbursements against the cash receipts and disbursements forecast in the Budget, and the percentage variance thereof, for (A) the bi-weekly period ended on (and including) the immediately preceding Sunday, (B) a rolling eight-week period, and (C) the cumulative period to date; and (ii) a written explanation of such variances;

b.  at any time and from time to time that the Debtor receives any material written notice from any Governmental Unit, as such term is defined in section 101(27) of the Bankruptcy Code, the Debtor shall provide a copy of such notice to the Bond Trustee within one (1) business day of receipt, and the Debtor shall provide to the Bond Trustee copies of all material reports, certificates and notices that the Debtor may provide to any Governmental Unit within one (1) business day of transmission. For the purposes of this subsection, a material written notice shall be one impacting

15

or threatening to impact the Debtor's ability to continue to operate the Facility or comply with the terms of this Interim Order;

c. a monthly reporting package, no later than thirty (30) days after the end of each calendar month, including cash flow, income statement, and balance sheet for such month, utilization data as of the last day of such month, accounts payable and receivable reports with aging information, provided that the first monthly reporting package shall cover the post-petition period ending July 31, 2026; and

d. as promptly as reasonably practicable from time to time following the Bond Trustee's reasonable request therefor, such other information (including historical information) regarding the operations, business affairs and financial condition of the Debtor and the progress of this Chapter 11 Case.

iii.        *Bankruptcy Milestones.* The Debtor covenants and agrees that it will use its best efforts to comply with each of the following milestone covenants (the "Bankruptcy Milestones"); *provided that*, any Milestones may be extended by written agreement (email between counsel shall suffice) between the Debtor and the Bond Trustee without further entry of an order of the Court; *provided, further*, that the Debtor shall promptly file with this Court a notice of any such Milestone extension or waiver. The Debtor agrees that failure to materially comply with the following Bankruptcy Milestones shall constitute an Event of Default, unless any such conditions have been waived or modified by the Bond Trustee in its sole discretion:

a. On Tuesday of each week (or such other day as may be agreed upon by the Parties), the Debtor shall make available representatives with appropriate knowledge of the Debtor's cash flows and operations (which representative may be a financial advisor to the Debtor) for a telephone conference call with the Bond Trustee, the holders of the Bonds, and their respective agents, advisors and/or representatives to discuss the cash flows and operations of the Facility, including the Debtor's compliance with the Budget, the status of this Chapter 11 Case, and such other matters as are relevant or are reasonably requested by the Bond Trustee;

b. On the Petition Date, the Debtor shall have filed the chapter 11 plan of reorganization (the "Plan"), the disclosure statement with respect to the Plan (the "Disclosure Statement"), and related solicitation materials (the "Solicitation Materials"), a motion seeking the approval of the Disclosure Statement and Solicitation Materials, and the Motion, each in form and substance reasonably acceptable to the Bond Trustee;

16

c. No later than three (3) business days after the Petition Date, the Debtor shall have obtained entry of this Interim Order, in form and substance acceptable to the Bond Trustee;

d. No later than thirty-five (35) calendar days after the Petition Date, the Debtor shall have obtained entry of a Final Order on the Motion, in form and substance acceptable to the Bond Trustee;

e. No later than thirty-five (35) calendar days after the Petition Date, the Debtor shall have obtained entry of an order approving the Disclosure Statement and Solicitation Materials, including all exhibits and schedules thereto, in form and substance acceptable to the Bond Trustee;

f. No later than seventy-five (75) calendar days after the Petition Date, Debtor shall have obtained entry of an order confirming the Plan (the "Confirmation Order"), including all exhibits and schedules thereto, in form and substance acceptable to the Bond Trustee; and

g. No later than thirty (30) calendar days after entry of the Confirmation Order, the effective date of the Plan shall have occurred.

5. <u>Restriction on Disposition of Collateral; No Liens or Encumbrances</u>. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Pre-Petition Collateral, Post-Petition Collateral, or Supplemental Collateral without the prior written consent of the Bond Trustee (and no such consent shall be implied from any other action, inaction or acquiescence by the Bond Trustee or an order of this Court), except as provided in this Interim Order or otherwise approved by the Court to the extent required under applicable non-bankruptcy law. Further, there shall be no other claim or expense having priority or being *pari passu* to the priority granted to the Bond Trustee in this Interim Order, except with respect to the Carve Out and the Priority Liens, if any. Nothing herein shall prevent the Debtor from operating in the ordinary course of its business to the extent consistent with the Budget.

6. <u>No Modification</u>. Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Bond Documents (or any other agreement to which the Bond Trustee is party).

17

7.      No Waiver.  No consent by the Bond Trustee to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Bond Trustee, as applicable, in the Pre-Petition Collateral, the Post-Petition Collateral, or the Supplemental Collateral pursuant to the provisions of sections 506(c) and/or 552(b) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, shall be implied from any action, inaction or acquiescence.

8.      No Challenge.  Notwithstanding anything else herein, subject to the provision at the last sentence of this paragraph, no amounts under the Carve Out, the proceeds of Pre-Petition Collateral (including Cash Collateral), Post-Petition Collateral, or Supplemental Collateral shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of: (i) the Bond Claim or the Pre-Petition Liens or (ii) any other rights or interests of the Bond Trustee; (b) asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Bond Trustee or the holders of the Bonds or invoking the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Pre-Petition Collateral, Post-Petition Collateral, Supplemental Collateral or otherwise; (c) preventing, hindering, or delaying the enforcement or realization by the Bond Trustee upon any of the Pre-Petition Collateral, Post-Petition Collateral, or Supplemental Collateral; (d) incurring indebtedness except as permitted by this Interim Order; (e) funding acquisitions, capital expenditures, capital leases or other transactions not in the ordinary course of the Debtor's business other than as set forth in the Budget; (f) modifying any adequate protection granted to the Bond Trustee; or (g) commencing or prosecuting any motion, proceeding or cause of action against the Bond Trustee or its agents, attorneys, advisors or representatives. Notwithstanding the foregoing, not more than $25,000 of

18

the Cash Collateral may be made available to reimburse the Committee, if appointed, upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Bond Claim and/or the Bond Trustee's liens in the Pre-Petition Collateral.

9.      Events of Default. Each of the following shall be considered an Event of Default ("Event of Default") under this Interim Order:

   a. the failure of the Debtor to pay all of its administrative expenses in full in accordance with and subject to the terms as provided for in the Budget;

   b. this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Bond Trustee, except by the Final Order;

   c. failure to meet any of the Bankruptcy Milestones or other covenants set forth in this Interim Order;

   d. a material breach by the Debtor of the Restructuring Support Agreement;

   e. the dismissal of this Chapter 11 Case, conversion of this Chapter 11 Case to a chapter 7 case, or suspension of this Chapter 11 Case under section 305 of the Bankruptcy Code;

   f. the appointment of a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code);

   g. the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtor, by any entity other than the Bond Trustee on any Pre-Petition Collateral, Post-Petition Collateral, or Supplemental Collateral;

   h. the entry of an order granting any superpriority claim which is senior or *pari passu* with the Pre-Petition Liens, Replacement Liens, Supplemental Liens, or the Superpriority Claim granted pursuant to this Interim Order;

   i. the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtor other than as set forth in the Budget or as provided for in this Interim Order;

   j. the cessation of Replacement Liens, Supplemental Liens, or Superpriority Claim granted pursuant to this Interim Order to be valid, perfected, and enforceable in all

respects;

k. the filing of any Challenge (as defined below) to the Pre-Petition Liens or Pre-Petition Collateral by the Debtor (for the avoidance of doubt, the filing of a Challenge by any other party in interest shall not be an Event of Default hereunder);

l. the payment of estate professional fees by the Debtor other than to the extent set forth in the Budget; or

m. failure to pay the amounts due under this Interim Order when due.

10. <u>Rights Upon Event of Default</u>. Notwithstanding anything herein, the Debtor shall no longer, pursuant to the Interim Order or otherwise, be authorized to use Cash Collateral for any purpose hereunder upon the occurrence of an Event of Default (such date, the "<u>Termination Date</u>"); *provided, however*, that the Bond Trustee shall provide five (5) business days (the "<u>Default Notice Period</u>") written notice via email to counsel to the Debtor, the U.S. Trustee, and counsel to any Committee of any Event of Default (the "<u>Default Notice</u>") and the Debtor may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtor or any Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Bond Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing (collectively, the "<u>Debtor Default Period Rights</u>"); *provided further*, that during the Default Notice Period the Bond Trustee shall permit the Debtor to cure such Event of Default and once such Event of Default is cured the Debtor is authorized to continue to use Cash Collateral as provided pursuant to this Interim Order. Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the Bond Trustee shall survive the Termination Date.

11. <u>Waiver of Default</u>. Notwithstanding the occurrence of an Event of Default, the Bond Trustee may elect not to terminate the Debtor's authority to use Cash Collateral hereunder, to waive (but only in writing) defaults hereunder, to forbear from the exercise of rights and

20

remedies hereunder and, subject to Bankruptcy Court approval, to modify (but only in writing) any Event of Default.

12.      Application of Cash Collateral. The Bond Trustee shall be entitled to apply the payments or proceeds of the Post-Petition Collateral, Supplemental Collateral, or the Pre-Petition Collateral as it deems appropriate, subject to the Carve Out and the Priority Liens, if any, and in no event shall the Bond Trustee be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Post-Petition Collateral, Supplemental Collateral, or otherwise. In the event that it is determined by final order of the Court that the Bond Trustee is not entitled under Bankruptcy Code section 506(b) to any postpetition adequate protection payment, interest, fees, and expenses relating to the Bond Claim, then any payments or proceeds remitted to the Bond Trustee shall reduce the Bond Claim held by the Bond Trustee.

13.      Release. Subject to paragraph 14 herein, the Debtor hereby releases the Bond Trustee, all holders of the Bonds, and their respective affiliates, agents, attorneys, officers, directors and employees of all claims and/or causes of action by, and liabilities owing to, the Debtor arising out of or based upon or related to, in whole or in part, the Bonds, and any aspect of the prepetition relationship between the Bond Trustee or the holders of the Bonds and the Debtor and any other acts or omissions by the Bond Trustee in connection with either the Bond Documents or its prepetition relationship with the Debtor. Further, subject to paragraph 14 herein, the Debtor and its estate waive any and all right to object to or contest the amount of the Bond Claim or the Pre-Petition Liens in the Pre-Petition Collateral and agree that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens, subject and subordinate only to (a) Post-Petition Liens to the extent set forth herein, (b) the Carve Out and (c) the Priority Liens, if any. For the avoidance of doubt, the waiver and

21

stipulation set forth in this paragraph shall not affect any Committee's rights under paragraph 14 herein.

14.     Investigation Period. Any party in interest (including any Committee, but excluding the Debtor) as to claims against the Bond Trustee may file an adversary proceeding or contested matter (a) challenging the amount, validity, extent, enforceability, perfection or priority of the Bond Claim or the Pre-Petition Liens in respect thereof, or (b) otherwise asserting any claims or causes of action against the Bond Trustee and/or holders of the Bonds on behalf of the Debtor's estate (a "Challenge") so long as any Challenge is filed with the Court on or before the date that is sixty (60) days after the Petition Date (such period of time, the "Investigation Period"). Any such Challenge brought after the conclusion of the Investigation Period shall be barred. If no Challenge is commenced by a party during the Investigation Period against the Bond Trustee, and/or the holders of the Bonds, then as to such party: (w) the Bond Claim shall constitute an allowed claim, not subject to subordination or recharacterization and otherwise unavoidable, for all purposes in this Chapter 11 Case and any subsequent chapter 7 case; (x) the Pre-Petition Liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; (y) the Bond Trustee, the Bond Claim, and the Pre-Petition Liens of the Bond Trustee on the Pre-Petition Collateral shall not be subject to any other or further claims, causes of action or challenges by any party in interest including, without limitation, any successor thereto; and (z) the Bond Trustee, all holders of the Bonds and their respective affiliates, agents, attorneys, officers, directors and employees, shall be deemed released of all claims and/or causes of action by the Debtor, any Committee, the Debtor's estate, all parties in interest, and any subsequently appointed trustee arising out of or based on any facts or circumstances occurring prior to the date hereof; *provided, further*, that if one or more

22

claims are timely and properly filed under this paragraph, then except for such claims, all other potential claims and causes of action are hereby deemed forever waived and barred. Nothing in this Interim Order shall be deemed to confer standing on any Committee or any other non-Debtor party-in-interest to commence a Challenge, and such Committee or other non-Debtor party in interest shall be required to move for standing within the Investigation Period, with a draft complaint attached to such motion or other pleading, and satisfy the applicable standard for obtaining standing to pursue estate causes of action; provided, that the filing of a standing motion (with draft complaint) shall toll the Investigation Period but only (xx) as to the party that timely filed the standing motion (with draft complaint), (yy) until such motion is resolved or ruled upon by the Court, and (zz) with respect to the claims asserted in the draft complaint.

15.     Carve-Out. In partial consideration of the Debtor's acknowledgement of the Bond Claim and the Debtor's waiver of any claims under sections 506(c) and 552(b) of the Bankruptcy Code (upon entry of the Final Order), the Bond Trustee, subject to the entry of the Final Order, consents to the payment of certain expenses and professional fees incurred during the pendency of this Chapter 11 Case that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "Carve Out"). For purposes hereof, the "Carve Out" means the sum of (a) an aggregate amount not to exceed the sum of: (i) the unpaid dollar amount of the fees and expenses of professionals retained by the Debtor or a Committee, if any, to the extent (A) incurred or accrued prior to the Termination Date and remaining unpaid and (B) provided for under the Budget, provided that the budgeted disbursements for subsequent Budget periods are permitted to be amended so that the Debtor may (1) carry forward any unspent budgeted line item disbursements for estate professionals from prior periods and (2) carry back any unspent budgeted line item disbursements for estate professionals from future periods, plus (ii) the dollar amount of

23

the fees and expenses of the professionals retained by the Debtor or a Committee, if any, to the extent incurred or accrued after the Termination Date in an aggregate amount (solely for purposes of this section (ii)) not to exceed $300,000, but in each of sections (i) and (ii) only to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, plus (b) the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court plus any interest at the statutory rate; *provided, however*, that the Carve Out shall be subject to entry of the Final Order. Prior to the payment of such fees and expenses from the amount available under the Carve Out, such professionals shall first apply any retainers held by such professional to their allowed fees and expenses. Nothing herein shall constitute a waiver of any right of the Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid (or the Debtor's right to respond thereto). Except to the extent of and in consideration of the Carve Out, subject to entry of the Final Order, (y) no expenses of administration of this Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Bond Trustee, the Pre-Petition Collateral, or the Post-Petition Collateral or Supplemental Collateral pursuant to section 506(c) of the Bankruptcy Code or a similar principle of law; and (z) the "equities of the case" exception under section 552(b) of the Bankruptcy Code is waived as to the Bond Trustee, the Pre-Petition Collateral, the Post-Petition Collateral, and the Supplemental Collateral. Any payment or reimbursement made in respect of the Carve Out incurred by any professional on or after an Event of Default shall permanently reduce the Carve Out on a dollar-for-dollar basis.

16.     Section 506(c); Section 552(b). Except to the extent of the Carve Out and upon entry of the Final Order, no expenses of administration of this Chapter 11 Case or any future

24

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Pre-Petition Collateral or collateral subject to Replacement Liens and Supplemental Liens, pursuant to section 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Bond Trustee and no such consent shall be implied from any other action, inaction, or acquiescence by the Bond Trustee. For the avoidance of doubt, and notwithstanding anything else in this Interim Order, nothing in this Interim Order shall be construed as a waiver of sections 506(c) or 552(b) of the Bankruptcy Code, with such waiver to be addressed at the time of the Final Hearing on the Motion.

17.     Right to Credit Bid. The Debtor admits, acknowledges, and agrees that the Bond Trustee has an absolute right to credit bid up to the full amount of the Bond Claim in connection with any sale or other disposition of its collateral under the Bankruptcy Code.

18.     Additional Perfection Measures. The Debtor shall execute and deliver to the Bond Trustee any and all such agreements, financing statements, instruments and other documents as the Bond Trustee may reasonably request to evidence, confirm, validate, or perfect the liens granted pursuant hereto. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents; *provided, however*, that this Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Liens and Supplemental Liens to the Bond Trustee without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect the Replacement Liens and Supplemental Liens or to entitle those liens to the priorities granted herein.

25

19. <u>Subsequent Reversal or Modification.</u> Based on the findings set forth in this Interim Order, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted to the Bond Trustee hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim Order and the Bond Trustee shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

20. <u>Deemed Request for Stay Relief</u>. This Interim Order shall be deemed to constitute a request by the Bond Trustee for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection as of the Petition Date and shall suffice for all purposes of section 507(b) of the Bankruptcy Code.

21. <u>No Control</u>. None of the Bond Trustee or the holders of the Bonds shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding any consent to this Interim Order and extending financial accommodations of any type, kind or nature under this Interim Order.

22. <u>No Third-Party Beneficiaries</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of the holders of the Bonds, the Bond Trustee, the Debtor, and their

26

respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor). No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

23.     Modification of Stay. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit: (a) the Debtor to grant the Replacement Liens and the Supplemental Liens to the Bond Trustee; (b) the Bond Trustee to accept and receive disbursements and/or payments and to apply moneys pursuant to the Bond Documents; and (c) all acts, actions, and transfers contemplated herein, including without limitation, transfers or application of cash collateral and other funds to the Bond Trustee as provided herein.

24.     Binding Effect. The liens and claims granted to the Bond Trustee under this Interim Order, and the priority thereof, and any payments made pursuant to this Interim Order, shall be binding (subject to the terms of this Interim Order) on the Debtor, any successor trustee or examiner, and all creditors of the Debtor, as provided in section 364(e) of the Bankruptcy Code. To the extent any terms of this Interim Order are modified, amended, or vacated, any claim or right granted to the Bond Trustee hereunder arising prior to the effective date of such modification, amendment or vacation shall continue to be governed in all respects by the original provisions of this Interim Order unless the Interim Order was stayed.

25.     Effectiveness. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect immediately upon entry of this Interim Order. Notwithstanding Bankruptcy Rules 4001(a)(3) or 6004(h), or any other Bankruptcy

Rule, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

26. Notice. Any notice required hereunder shall be served on the following parties (the "Notice Parties"):

a. counsel to the Debtor, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th floor, Boston, MA 02199, Attn.: Jonathan W. Young (jonathan.young@troutman.com) and Hanna Redd (hanna.redd@troutman.com), and Troutman Pepper Locke LLP, 111 S. Wacker Drive, Suite 4200, Chicago IL 60606, Attn: Aaron C. Smith (aaron.smith@troutman.com);

b. counsel to the Debtor, Partridge Snow & Hahn LLP, 40 Westminster Street, Suite 1100, Providence, RI 02903, Attn.: Daniel E. Burgoyne (dburgoyne@psh.com);

c. counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Ian A. Hammel (iahammel@mintz.com) and 919 Third Avenue, New York, NY 10022, Attn: Megan M. Preusker (mpreusker@mintz.com) and Kaitlin R. Walsh (krwalsh@mintz.com);

d. local counsel to the Bond Trustee, Duffy & Sweeney, a Division of Stevens and Lee, 321 S. Main St., Suite 400, Providence, RI 02903, Attn: Robert M. Duffy (Robert.duffy@stevenslee.com;

e. the Office of the United States Trustee for Region 1, One Exchange Terrace, Suite 431 Providence, RI 02903, Attn: Sandra Nicholls (Sandra.Nicholls@usdoj.gov); and

f. counsel to any appointed Official Committee of Unsecured Creditors.

27. Final Hearing. A final hearing with respect to this Interim Order is hereby scheduled for **[_____], 2026, at [__:00 a/p.m.] (prevailing Eastern Time)** (the "Final Hearing").

28. Objections. Any objections by creditors or other parties in interest to the relief sought at the Final Hearing must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) provide the basis for objection and specific grounds thereof; and (d) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are actually received by the Notice Parties on or prior to **[_____], 2026, at [__:00 p.m.] (prevailing Eastern**

28

**Time)**. Any objections by creditors or other parties in interest to any of the provisions of a Final

Order incorporating the terms of this Interim Order, or including any other or different provisions,

may be deemed waived unless filed and served in accordance with this paragraph.

29.     Notice of Final Hearing. The Debtor shall, within twenty-four (24) hours of the date

of entry of this Interim Order, promptly serve a copy of this Interim Order and a notice of the Final

Hearing by regular mail upon the Notice Parties. Such notice shall state that objections to the entry

of a Final Order shall be in writing and shall be filed with the United States Bankruptcy Clerk for

the District of Rhode Island in accordance with paragraph 28 herein.

30.     Retention of Jurisdiction. This Court shall retain exclusive jurisdiction over all

matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

31.     Priority of Terms; Inconsistencies. To the extent of any conflict or inconsistencies

between or among (a) the express terms or provisions of any of the Bond Documents, the relief

requested in the Motion, any other order of this Court or any other agreements, on the one hand,

and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions

of this Interim Order shall govern and control.

Dated: _____, 2026
       Providence, Rhode Island

_____
Honorable John A. Dorsey, Jr.
United States Bankruptcy Judge

29

## Exhibit 1

**Budget**

| Wyatt Detention Facility<br>Cash Flow Projection Model<br>*as of 07/09/2026* | 1<br>Projection<br>7/18/2026 | 2<br>Projection<br>7/25/2026 | 3<br>Projection<br>8/1/2026 | 4<br>Projection<br>8/8/2026 | 5<br>Projection<br>8/15/2026 | 6<br>Projection<br>8/22/2026 | 7<br>Projection<br>8/29/2026 | 8<br>Projection<br>9/5/2026 | 9<br>Projection<br>9/12/2026 | 10<br>Projection<br>9/19/2026 | 11<br>Projection<br>9/26/2026 | 12<br>Projection<br>10/3/2026 | 13<br>Projection<br>10/10/2026 | 14<br>Projection<br>10/17/2026 | 15<br>Projection<br>10/24/2026 | 16<br>Projection<br>10/31/2026 | 7/18/2026<br>10/31/2026<br>BK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CONFIDENTIAL - FOR PROFESSIONAL EYES ONLY** | | | | | | | | | | | | | | | | | |
| **BEGINNING CASH BALANCE** | 12,187,692 | 11,390,187 | 10,486,002 | 12,832,752 | 11,210,490 | 10,449,446 | 9,500,631 | 11,882,753 | 11,741,045 | 11,008,900 | 10,003,645 | 8,463,309 | 11,386,321 | 10,654,064 | 9,717,749 | 8,626,383 | 12,187,692 |
| **CASH COLLECTIONS** | 335 | 87,876 | 3,079,614 | 603,354 | - | 52,783 | 3,114,519 | 603,960 | - | 52,783 | 74,970 | 3,668,577 | - | 47,314 | 5,469 | 3,722,759 | **15,114,311** |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | | | |
| Payroll Disbursements | 562,677 | 569,346 | 562,677 | 575,958 | 562,677 | 569,346 | 562,677 | 575,958 | 562,677 | 643,746 | 562,677 | 575,958 | 562,677 | 569,346 | 637,685 | 575,958 | 9,232,037 |
| Operating Disbursements | 160,163 | 395,715 | 170,187 | 1,649,659 | 168,867 | 395,252 | 169,721 | 169,709 | 169,469 | 395,292 | 169,629 | 169,607 | 169,581 | 395,282 | 169,607 | 169,601 | 5,087,340 |
| Total Operational Disbursements | 722,840 | 965,061 | 732,864 | 2,225,617 | 731,543 | 964,598 | 732,397 | 745,667 | 732,145 | 1,039,038 | 732,306 | 745,564 | 732,258 | 964,628 | 807,292 | 745,559 | 14,319,376 |
| **Operational Change in Cash** | (722,505) | (877,185) | 2,346,750 | (1,622,263) | (731,543) | (911,815) | 2,382,121 | (141,707) | (732,145) | (986,255) | (657,336) | 2,923,012 | (732,258) | (917,315) | (801,822) | 2,977,200 | 794,935 |
| *Ch 11. Related Disbursements* | | | | | | | | | | | | | | | | | |
| Ch 11. Professionals | - | 12,000 | - | - | 17,500 | - | - | - | - | 7,000 | 792,000 | - | - | 7,000 | 113,000 | - | 948,500 |
| Account Trustee (UMB / Indenture) | - | - | - | - | 12,000 | - | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 |
| Ordinary Course Professionals | - | 15,000 | - | - | - | 37,000 | - | - | - | - | 91,000 | - | - | - | 63,000 | - | 206,000 |
| United States Trustee Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 113,544 | - | 113,544 |
| Other | 75,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 75,000 |
| Total Ch 11. Disbursements | 75,000 | 27,000 | - | - | 29,500 | 37,000 | - | - | - | 19,000 | 883,000 | - | - | 19,000 | 289,544 | - | 1,379,044 |
| **CHANGE IN CASH** | (797,505) | (904,185) | 2,346,750 | (1,622,263) | (761,043) | (948,815) | 2,382,121 | (141,707) | (732,145) | (1,005,255) | (1,540,336) | 2,923,012 | (732,258) | (936,315) | (1,091,366) | 2,977,200 | (584,109) |
| **ENDING OPERATIONAL CASH BALANCE** | 11,390,187 | 10,486,002 | 12,832,752 | 11,210,490 | 10,449,446 | 9,500,631 | 11,882,753 | 11,741,045 | 11,008,900 | 10,003,645 | 8,463,309 | 11,386,321 | 10,654,064 | 9,717,749 | 8,626,383 | 11,603,583 | $ 11,603,583 |