**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTRAL FALLS DETENTION | ) | Case No. 26 -_____ |
| FACILITY CORPORATION, | ) | |
| d/b/a Donald W. Wyatt Detention Facility | ) | |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**DEBTOR'S APPLICATION FOR EMERGENCY DETERMINATION FOR ENTRY
OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT,
EFFECTIVE AS OF THE PETITION DATE**

The Central Falls Detention Facility Corporation (d/b/a Donald W. Wyatt Detention Facility), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), hereby submits this application (this "Section 156(c) Application"), pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002(f), 2014, 2016, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 2014-1 of the Local Bankruptcy Rules and Forms of the United States Bankruptcy Court for the District of Rhode Island (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor's employment and retention of Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent in this chapter 11 case, effective as of the Petition Date (as defined below). In support of this 156(c) Application, the Debtor submits the *Declaration of Kate Mailloux in Support of the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Epiq Corporate*

---

[1]     The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

1

*Restructuring, LLC as Claims and Noticing Agent, Effective as of the Petition Date* (the "Mailloux

Declaration"), attached hereto as **Exhibit B**, which is incorporated herein by reference. In further

support of this 156(c) Application, the Debtor respectfully states as follows:

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Rhode Island (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are 28 U.S.C. §

156(c), sections 105(a) and 503(b) of the Bankruptcy Code, Bankruptcy Rules 2002(f), 2014,

2016, and 6004, and Local Rules 2002-1 and 2014-1.

### Background

3.      On July 10, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in this Court. The Debtor

continues to operate and maintain its non-profit detention facility and manage its property as a

debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request

for the appointment of a trustee or examiner has been made in this Chapter 11 Case, and no

committees have been appointed or designated.

4.      Additional information regarding the Debtor's business and financial structure, the

circumstances leading to the commencement of this Chapter 11 Case, and the facts and

circumstances supporting this Motion are set forth in the *Declaration of Daniel S. Polsky in

Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"),

which has been filed with the Court contemporaneously herewith and is incorporated by reference

herein.

**Relief Requested**

5.      By this Section 156(c) Application, the Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to employ and retain Epiq as claims and noticing agent (in such capacity, the "Claims and Noticing Agent"), effective as of the Petition Date. The terms of Epiq's employment are set forth in that certain of the Standard Services Agreement dated July 9, 2025 (the "Engagement Agreement"), between the Debtor and Epiq, a copy of which is attached hereto as **Exhibit C** and is incorporated by reference herein. Notwithstanding the terms of the Engagement Agreement, the Debtor is seeking to retain Epiq solely on the terms set forth in this Section 156(c) Application and the Proposed Order.

6.      By separate application, the Debtor will seek authorization pursuant to section 327(a) of the Bankruptcy Code to retain and employ Epiq as administrative advisor in this Chapter 11 Case to, among other things, assist with the solicitation, balloting and tabulation of votes and other services relating to the Debtor's solicitation of votes for the Plan, as further described in that application.

**Epiq's Qualifications**

7.      Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience in matters of this size and complexity and has acted as the official claims, noticing, solicitation and administrative agent in many large bankruptcy cases in numerous districts nationwide.[2]

---

[2]      *See, e.g.*, *In re Pioneer Energy Services Corp.*, Case No. 20-31425 (DRJ) (Bankr. S.D. Tex. Mar 1, 2020); *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRH) (Bankr. E.D. Va. Feb. 27, 2020); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex. Nov. 18, 2019); *In re Fred's, Inc.*, Case No. 19-11984 (CSS) (Bankr. D. Del. Sept. 9, 2019); *In re THG Holdings LLC*, Case No. 19-11689 (JTD) (Bankr. D. Del. July 30, 2019); *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr. D. Del. July 7, 2019); *In re Kona Grill, Inc.*, Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); and *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019).

3

8. As described in the First Day Declaration, the Debtor anticipates that there will be thousands of persons and entities to be noticed in this Chapter 11 Case, the overwhelming majority of which are former and current detainees, employees, and vendors whose information may have been compromised and released onto the dark web as a result of a November 2023 data security incident. The Debtor also anticipates that many creditors may file claims against the Debtor.

9. In view of the number of anticipated notice parties, the Debtor submits that the appointment of a Claims and Noticing Agent will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this Chapter 11 Case, and the office of the Clerk of the Bankruptcy Court for the District of Rhode Island (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of notices and claims. The Debtor believes that the appointment of Epiq to act as the Claims and Noticing Agent will thus serve to maximize the value of the Debtor's estate for all stakeholders.

## Scope of Services Provided

10. This Section 156(c) Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c). Any work to be performed by Epiq outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof. Subject to Court approval of this Section 156(c) Application and consistent with the terms of the Engagement Agreement, Epiq will perform the following tasks in its role as Claims and Noticing Agent as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"):

    (a) preparing and serving required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of objections to claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of

4

reorganization, and (v) all other notices, orders, pleadings, publications, and other documents as the Debtor and/or Court may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

(b) maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

(c) maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest; (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and (iii) update and make said lists available upon request by a party-in-interest or the Clerk;

(d) furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim;

(e) maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service, consistent with Local Rule 9013-3, within one (1) business day of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g) process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h) maintain an electronic platform for the purposes of filing proofs of claim;

(i) maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.,* secured, unsecured, priority, *etc.*), and (vi) any disposition of the claim;

(j) provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(k) implement necessary security to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(l)   record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)  relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less often than weekly;

(n)   upon completion of the docketing process for all claims received to date for this Chapter 11 Case, turn over to the Clerk a copy of the Claims Register for the Clerk's review (upon the Clerk's request);

(o)   monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)   identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)   assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(r)   assist the Debtor in complying with any orders entered by the Court with respect to the confidentiality of information;

(s)   monitor the Court's docket in this Chapter 11 Case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(t)   if this Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of the notice to Epiq of entry of the order converting the case;

(u)   thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

(v)   within fourteen (14) days of notice to Epiq of entry of an order dismissing or converting this Chapter 11 Case, or within twenty-eight (28) days of entry of a final decree closing this Chapter 11 Case: Epiq shall (i) forward to the Clerk an electronic version of all imaged claims, (ii) upload the creditor mailing list into CM/ECF and (iii) docket a Final Claims Register;

(w) at the close of this Chapter 11 Case, comply with all applicable laws and procedures for disposing of and/or archiving of claims and related documents; and

(x) assist with the preparation and delivery of all notices, including publications, website, and mailings, related to the proposed settlement of the putative class action captioned *Jacob Hellested, individually and on behalf of all others similarly situated v. Central Falls Detention Facility Corporation d/b/a Donald W. Wyatt Detention Facility, Case No. 24-00284* currently pending before the United States District Court for the District of Rhode Island.

### Professional Compensation

11.     The Debtor proposes to compensate Epiq on substantially the terms and conditions set forth in the Engagement Agreement, upon receipt of reasonably detailed invoices setting forth the services provided by Epiq during the prior month and the rates charged for such services performed.

12.     The Debtor requests that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(l)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Courts, including courts in this district and the First Circuit, routinely enter orders permitting claims and noticing agents to be paid their administrative expense claim in the ordinary course, without application to the Court. *See In re UTGR, Inc. d/b/a Twin River, et al.*, Case No. 09-12418-ANV (Bankr. D. R.I. June 25, 2009) (authorizing debtors, without further court order, to compensate claims and noticing agent upon agent's submission to debtors of invoices summarizing in reasonable detail services rendered and expenses incurred in connection therewith); *In re Telexfree*, LLC, Case No. 14-40987 (Bankr. D. Mass. May 30, 2014) (granting application to retain claims agent and to pay agent on monthly basis without further application);

7

*In re Akorn, Inc.*, Case No. 10-11177-KBO (Bankr. D. Del. May 20, 2020) (allowing claims agent to be paid without further court order).

13.     Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Rhode Island (the "U.S. Trustee"), counsel for the Debtor, counsel for any official committee(s), and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.     Before the Petition Date, the Debtor provided Epiq a prepaid retainer (the "Retainer") in the amount of $25,000. Epiq seeks to hold the Retainer as security for payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Engagement Agreement.

**Indemnification**

15.     The Engagement Agreement also contains standard indemnification language with respect to Epiq's services including, without limitation, an agreement by the Debtor to indemnify Epiq, its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants and employees against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses, and disbursements arising out of or in connection with the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.

16.     The Debtor and Epiq believe the indemnification provisions reflected in the Engagement Agreement are customary and reasonable terms of consideration for administrative services firms such as Epiq. The terms and conditions of the indemnification provisions were fully

negotiated between the Debtor and Epiq at arm's-length and in good faith. Moreover, Epiq has agreed to certain modifications to the indemnification provisions to be implemented through the Order. Specifically, Epiq has agreed, and the Order provides, that Epiq shall not be indemnified for any claim that (a) is judicially determined to have arisen from Epiq's bad faith, breach of fiduciary duty (if any), willful misconduct, or gross negligence, or (b) is settled prior to a judicial determination as to these exclusions.

17.     The Debtor respectfully submits that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of Epiq's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor requires Epiq's services to successfully reorganize. Accordingly, as part of this Section 156(c) Application, the Debtor request that this Court approve the indemnification provisions set forth in the Engagement Agreement.

### Epiq's Disinterestedness

18.     Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention shall be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

19.     In connection with its retention as Claims and Noticing Agent, Epiq represents in the Mailloux Declaration, among other things, that:

(a) Epiq is not a creditor of the Debtor;

9

(b) Epiq will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(c) by accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with the Debtor's Chapter 11 Case;

(d) in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e) Epiq will not employ any past or present employees of the Debtor in connection with its work as Claims and Noticing Agent in this Chapter 11 Case;

(f) Epiq is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14) with respect to the matters upon which it is to be engaged;

(g) in its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

(h) Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i) Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) none of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk.

20. In view of the foregoing, the Debtor believes that Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

21. Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **Basis for Relief**

22. Bankruptcy Rule 2002(f) generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the clerk give notice of the various matters provided

10

therein. *See* Fed. R. Bankr. P. 2002(f) (1)(A)–(L) (2024). Furthermore, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of the bankruptcy case. Specifically, the statute provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23. Accordingly, Bankruptcy Rule 2002(f) and section 156(c) of the Judicial Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided the Debtor's estate pay the cost of such services.

24. Before the selection of Epiq, the Debtor reviewed and compared engagement proposals from other court-approved claims and noticing agents to ensure selection through a competitive process. The Debtor submits, based on the engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given its quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Agreement; provided, however, that by this Section 156(c) Application, the Debtor is seeking approval solely of the terms and provisions set forth in this Section 156(c) Application and the Proposed Order.

25. As noted above, there will be thousands of persons and entities entitled to be noticed in this case. In view of the number of anticipated claimants and notice parties, the appointment of a claims and noticing agent is both necessary and in the best interests of the Debtor's estate and its creditors because the Debtor will be relieved of the burdens associated with

11

the Claims and Notice Services. Accordingly, the Debtor will be able to devote its attention and resources to its restructuring efforts.

26.     Courts routinely approve relief similar to that requested herein in other complex chapter 11 bankruptcy cases. *See e.g., In re UTGR, Inc. d/b/a Twin River, et al.*, Case No. 09-12418-ANV (Bankr. D. R.I. June 25, 2009); *In re LRGHealthcare*, Case No. 20-10892-MAF **(**Bankr. D. N.H. Oct. 20, 2020); *In re Educ. Res. Inst., Inc*., Case No. 08-12540 (Bankr. D. Mass. Apr. 15, 2008); *In re Syratech Corp*., Case No. 05-11062 (Bankr. D. Mass. Feb. 18, 2005).

**<u>Relief as of the Petition Date is Appropriate</u>**

27.     In accordance with the Debtor's request, Epiq has agreed to serve as the Debtor's Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c) Application. The Debtor believes that no party in interest will be prejudiced by the granting of relief as of the Petition Date as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtor's estate during the interim period.

28.     For all of the foregoing reasons, the Debtor believes that the retention of Epiq as Claims and Noticing Agent in this Chapter 11 Case, as of the Petition Date, is in the best interests of the Debtor, its estate, and its creditors. Furthermore, the Debtor respectfully submits that the fees and expenses that will be incurred by Epiq under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

**<u>Debtor's Compliance with Bankruptcy Rule 6003 and Local Rule 9013-2</u>**

29.     Pursuant to Local Rule 9013-2(d)(2), the Debtor respectfully requests emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court must not

grant an application or motion within the first 21 days after the Petition Date "[u]nless relief is needed to avoid immediate and irreparable harm[.]" Fed. R. Bankr. P. 6003(a) (2024). For the reasons discussed above, entry of an order granting this Section 156(c) Application is integral to the Debtor's ability to smoothly transition into chapter 11 and immediately begin providing effective notice of pleadings and orders to interested parties. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein. In accordance with Local Rule 9013-2(d)(2), the Debtor requests that the Court schedule an emergency hearing to consider the relief requested in this Motion. An emergency hearing is critical to enabling the Debtor to continue to maintain and operate its business without disruption and to prevent delay in the efficient administration of this Chapter 11 Case.

**Reservation of Rights**

30.     Nothing contained herein is intended to be or shall be deemed as (a) an implication or admission as to the validity of any claim against the Debtor, (b) a waiver or limitation of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (c) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (d) a waiver of the obligation of any party in interest to file a proof of claim, (e) an agreement or obligation to pay any claims, (f) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (g) an admission as to the validity of any liens satisfied pursuant to this Application, or (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as

13

an admission to the validity of any claim or a waiver of the Debtor's or any other party in interest's rights to dispute such claim subsequently.

## **Motion Practice**

31.     This Section 156(c) Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated. Accordingly, the Debtor submits that the Section 156(c) Application satisfies Local Rule 9013-1(a).

## **Limitation of Notice Requested**

32.     The Debtor has provided notice of this Section 156(c) Application, and once established, will provide notice of the Emergency Hearing, either by electronic mail or facsimile and/or by overnight mail to: (a) the Office of the United States Trustee for the District of Rhode Island; (b) counsel to the Bond Trustee; (c) counsel to the City of Central Falls; (d) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (e) the Internal Revenue Service.

33.     Due to the urgency of the circumstances surrounding this Section 156(c) Application and the nature of the relief requested herein, the Debtor respectfully requests that the Court approve such limited notice to the foregoing parties as both appropriate and sufficient under the circumstances pursuant to Local Rule 9013-2(d)(2)(B).

*[Remainder of page intentionally left blank]*

**WHEREFORE**, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtor to employ and retain Epiq as its claims and noticing agent, effective as of the Petition Date, (b) approving the terms of the Engagement Agreement, and (c) granting such other and further relief as is appropriate.

Dated: July 10, 2026

CENTRAL FALLS DETENTION FACILITY CORPORATION,

*/s/ Michael Nessinger*

_____

Michael Nessinger
Warden, Central Falls Detention Facility Corporation

15

## NOTICE REGARDING EMERGENCY RELIEF

The foregoing Section 156(c) Application requests relief on an emergency basis. Pursuant to Local Rule 9013-2, written responses are required within the time established by the Court. If no response time is established by the Court, responses may be filed up to the time that the hearing is convened.

# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTRAL FALLS DETENTION | ) | Case No. 26 -_____ |
| FACILITY CORPORATION, | ) | |
| d/b/a Donald W. Wyatt Detention Facility | ) | |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT,
EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtor and debtor-in-possession (the "Debtor" or "CFDFC"), for entry of an order (this "Order"), pursuant to 28 U.S.C. § 156(c), sections 105(a) and 503(b) of the Bankruptcy Code, Bankruptcy Rules 2002(f), 2014, 2016, and 6004 and Local Rules 2002-1 and 2014-1, authorizing the Debtor's employment and retention of Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent in this chapter 11 case (the "Claims and Noticing Agent"), effective as of the Petition Date, as more fully set forth in the 156(c) Application; and upon consideration of the Mailloux Declaration and the First Day Declaration; and this Court being satisfied that Epiq has the capability and experience to provide the services described in the 156(c) Application and that Epiq does not hold or represent an interest adverse to the Debtor or the estate related to any matter for which Epiq will be employed; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the 156(c) Application being a core proceeding pursuant to 28 U.S.C.

---

[1]   The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

[2]   All capitalized terms used but otherwise not defined herein shall have the meaning ascribed to them in the 156(c) Application.

§ 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that notice of the 156(c) Application and of the hearing on the 156(c) Application (the "Hearing") was appropriate under the particular circumstances; and it appearing that no other or further notice need be provided; and upon the record of the Hearing and all of the proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The 156(c) Application is GRANTED as set forth herein.

2.      Pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rules 2002-1 and 2014-1, the Debtor is authorized to employ and retain Epiq as Claims and Noticing Agent, effective as of the Petition Date, in accordance with the terms and conditions set forth in the 156(c) Application and the Engagement Agreement, a copy of which is attached to the 156(c) Application as **Exhibit C**.

3.      Epiq shall serve as the custodian of Court records and is designated as the authorized repository for all proofs of claims filed in this Chapter 11 Case, and is authorized and directed to maintain an official claims register for the Debtor and to provide the Clerk with a certified duplicate thereof upon request by the Clerk. To the extent that any proof of claims are submitted to the Clerk's Office then, upon notification by the Court, Epiq shall take the steps necessary and incur any necessary expense to cause any such proof of claims to be redirected and remitted to Epiq.

4.      Epiq is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

6.      The Debtor is authorized to compensate Epiq in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Epiq shall maintain records of all services showing dates of any services rendered pursuant to the Engagement Agreement, categories of services, fees charged, and expenses incurred, and shall serve electronically monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arising relating to monthly invoices; provided, that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtor's estate.

10.     Epiq may hold its Retainer under the Engagement Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     If this Chapter 11 Case converts to a case under chapter 7 of the Bankruptcy Code,

Epiq will continue to be paid for its services until the claims filed in this Chapter 11 Case have been completely processed, and that if claims agent representation is necessary in the converted chapter 7 case, Epiq will continue to be paid in accordance with section 156(c) of the Judicial Code on the terms set forth in this Order. Nothing herein obligates a successor Chapter 7 trustee or Chapter 11 trustee to employ Epiq.

12.     Notwithstanding anything to the contrary in this Order, any payment made or action taken by the Debtor pursuant to the authority granted in this Order must be in compliance with, and shall be subject to any orders: (a) approving the Debtor's use of cash collateral and related relief then in effect, and solely to the extent in compliance with any budget(s) in connection therewith and (b) approving the Debtor's continued use of its cash management system.

13.     The Debtor is authorized to indemnify Epiq under the terms of the Engagement Agreement, subject during the pendency of this Chapter 11 Case to the following modifications:

(a) Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement unless the indemnification, contribution, or reimbursement is approved by the Court.

(b) Notwithstanding any provisions of the 156(c) Application, Mailloux Declaration, or any provision in the Engagement Agreement to the contrary, the Debtor shall have no obligation to indemnify Epiq or provide contribution or reimbursement to Epiq for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, bad faith, self-dealing, or actual fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Epiq's obligations under the Engagement Agreement, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtor's consent prior to a judicial determination as to the exclusions set forth in clauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this Order; and

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal),

4

and (ii) the entry of an order closing this Chapter 11 Case, Epiq believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including without limitation the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtor may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Epiq for indemnification, contribution, or reimbursement and is not a provision limiting the duration of the Debtor's obligation to provided indemnification, contribution, or reimbursement to Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

14.      Notwithstanding anything to the contrary contained in the Application, the Mailloux Declaration, or the Engagement Agreement, during the pendency of this Chapter 11 Case, Epiq shall provide at least thirty (30) days' notice of any increases in its billing rates, subject to the right of parties-in-interest to object to any such increases.

15.      Notwithstanding anything to the contrary contained in the Application, the Mailloux Declaration, or the Engagement Agreement, during the pendency of this Chapter 11 Case, the limitation of liability provision contained in Section 9 of the Engagement Agreement shall be of no force or effect.

16.      Except as provided in a future Order of this Court, Epiq is not authorized to establish financial accounts with financial institutions on behalf of the Debtor during the pendency of this Chapter 11 Case.

17.      Epiq shall continue to serve as noticing and claims agent in this Chapter 11 Case, and shall continue to be paid for its services in this capacity under the terms set forth herein and in the Application, until relieved of such duties by order of the Court.

18.      In the event Epiq is unable to provide the services set out in this Order and/or the Engagement Agreement, Epiq will immediately notify the Clerk and the Debtor's attorneys and

5

cause all original proofs of claim and data turned over to such persons as directed by the Court.

19.     After entry of an order terminating Epiq's services as the Claims and Noticing Agent, upon the closing of this Chapter 11 Case, or for any other reason, Epiq shall be responsible for (a) forwarding to the Clerk an electronic version of all imaged claims, and (b) docketing a Final Claims Register.

20.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

21.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

22.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

23.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

24.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:_____, 2026
Providence, Rhode Island

_____
The Honorable John A. Dorsey, Jr.
United States Bankruptcy Judge

6

**EXHIBIT B**

**Mailloux Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTRAL FALLS DETENTION | ) Case No. 26 -_____ |
| FACILITY CORPORATION, | ) |
| d/b/a Donald W. Wyatt Detention Facility | ) |
| | ) |
| Debtor.[1] | ) |

**DECLARATION OF KATE MAILLOUX IN SUPPORT OF THE DEBTOR'S
APPLICATION FOR EMERGENCY DETERMINATION FOR ENTRY OF AN
ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT,
EFFECTIVE AS OF THE PETITION DATE**

I, Kate Mailloux, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.     I am a Senior Director of Epiq Corporate Restructuring, LLC ("Epiq"), a chapter 11 administrative services firm, with an office located at 777 3rd Avenue, 12th Floor, New York, New York 10017. Except as otherwise noted in this declaration, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I would testify competently as follows.

2.     I am duly authorized to make this declaration (this "Declaration") on behalf of Epiq, in support of the *Debtor's Application for Emergency Determination for Entry of an Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent, Effective as of the Petition Date* (the "Section 156(c) Application") filed

---

[1]     The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

1

contemporaneously herewith.[2]

## Epiq's Qualifications

3.      Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience in matters of this size and complexity and has acted as the official claims, noticing, solicitation and administrative agent in many large bankruptcy cases in numerous districts nationwide.[3]

## Epiq's Disinterestedness

4.      Prior to the Petition Date, the Debtor provided Epiq a prepaid retainer (the "Retainer") in the amount of $25,000. Epiq seeks to hold the Retainer as security for payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Engagement Agreement.

5.      In connection with its retention as Claims and Noticing Agent, Epiq represents, among other things, the following:

     (a)  Epiq is not a creditor of the Debtor;

     (b)  Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

     (c)  by accepting employment in this Chapter 11 Case, Epiq waives any right to receive compensation from the United States government in connection with this Chapter 11 Case;

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Section 156(c) Application.

[3]      *See, e.g.*, *In re Pioneer Energy Services Corp.*, Case No. 20-31425 (DRJ) (Bankr. S.D. Tex. Mar 1, 2020); *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRH) (Bankr. E.D. Va. Feb. 27, 2020); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex. Nov. 18, 2019); *In re Fred's, Inc.*, Case No. 19-11984 (CSS) (Bankr. D. Del. Sep. 09, 2019); *In re THG Holdings LLC*, Case No. 19-11689 (JTD) (Bankr. D. Del. July 30, 2019); *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr. D. Del. July 7, 2019); *In re Kona Grill, Inc.*, Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); and *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019).

2

(d) in its capacity as Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e) Epiq will not employ any past or present employees of the Debtor in connection with its work as Claims and Noticing Agent;

(f) Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g) in its capacity as Claims and Noticing Agent, Epiq will not intentionally misrepresent any fact to any person;

(h) Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i) Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) none of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk.

6. Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Searched Parties List") in this Chapter 11 Case. The Searched Parties List that Epiq reviewed is annexed hereto as **Schedule 1.** The Searched Parties List included, among others, the Debtor, significant creditors of the Debtor, banks, litigation counterparties, and various professionals related to this Chapter 11 Case. The results of the conflicts check were compiled and reviewed by employees of Epiq, under my supervision. At this time, Epiq is not aware of any connection that would present a disqualifying conflict of interest.

7. Epiq currently serves, or in the past may have served, in a neutral capacity as claims, noticing, balloting and/or solicitation agent for certain of these parties or related parties. However, given Epiq's neutral position as claims and noticing agent or administrative agent in the listed parties' cases, or any other cases, Epiq does not view such relationships as real or potential

3

conflicts. Further, to the best of my knowledge, such relationships are completely unrelated to this Chapter 11 Case.

8.     Accordingly, to the best of my knowledge, information, and belief, insofar as I have been able to ascertain after a reasonable inquiry, Epiq is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, in that Epiq and its professional personnel: (a) are not creditors, equity security holders or insiders of the Debtor; (b) are not and were not, within two years before the date of the filing of this Chapter 11 Case, directors, officers or employees of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

9.     As may be necessary, Epiq will supplement this Declaration if it becomes aware of a relationship that may adversely affect Epiq's retention in this Chapter 11 Case or would otherwise require additional disclosure.

*[signature page follows]*

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 10, 2026

By: Kate Mailloux
Title: Senior Director
Epiq Corporate Restructuring, LLC

**Schedule 1**
**Searched Parties**

**Debtor's Trade Names**
Donald W. Wyatt Detention Facility
DWWDF
Wyatt Detention Facility
Central Falls Detention Facility Corporation

**Agent to Bondholders**
UMB Bank, NA
UMB Bank, NA

**Lenders**
Bank of America (credit card provider)
Bank Rhode Island
Beacon Financial Corporation
Beacon Bank & Trust
UMB Bank, NA
Wex, Inc. (credit card provider)

**Benefit Providers**
United HealthCare
DeltaVision
Delta Dental of Rhode Island
Angell Pension Group
Beacon Mutual Insurance Company
New York Life Insurance Company

**Current and Former Officers/Directors**
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]

[REDACTED]
[REDACTED]

**Insurer/Insurance Programs**
Affiliated FM Insurance Company
AIG Claims, Inc., Lexington Insurance Co.
AIG-Lexington
American Bankers Insurance Company of Florida
AmTrust North America
Beacon Mutual Company
CFC Underwriting Limited
Chubb
Federal Insurance Company
FM Affiliated Insurance Company
General Star Indemnity Company
General Star Management Company
Hudson Insurance Company
Lexington Insurance Company
MMJUA of Rhode Island
Wesco Insurance Company

**Unsecured Creditors (30 Largest)**
CODAC, Inc.
bp Energy Retail Company LLC
W.B. Mason Company, Inc.
Aero Mechanical, Inc.
Charm-Tex
Correct RX Pharmacy Services, Inc.
MassCor
Equiparts
Certified Languages International LLC
Aqueduct Technologies, Inc.
MAS Medical Staffing, LLC
Angell Pension Group, Inc.
Biovision Diagnostics LLC
Cook's
Galls, LLC
Atlantic Elevator South Co., Inc.
Lexis-Nexis
Metro Group, Inc.
Spirit Recognition, Inc.
Shur-Az Inc.

**Litigation Counterparties**
Accelerate Tax, LLC
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
Maeva Payroll Consulting, LLC
[REDACTED]
[REDACTED]
UMB Bank, NA, Trustee
City of Central Falls
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]

**Professionals**
Troutman Pepper Locke LLP
Pannone Lopes Devereaux & O'Gara LLC
Partridge Snow & Hahn LLP
CBIZ Advisors, LLC
Regan Communications
Hilb Group New England
PFM Financial Advisors LLC
[REDACTED]
[REDACTED]
[REDACTED]
Verdantas
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
ProCFO Partners
[REDACTED]
ldt Consulting

**Regulatory/Governmental Agency**
United States Marshals Service (USMS)
Immigration and Customs Enforcement (ICE)
United States Navy

Mashantucket Pequot Tribe
Federal Bureau of Prisons
City of Central Falls
American Correctional Association (ACA)
Office of Detention Oversight (ODO)
U.S. Department of Justice

**Utility Providers/Brokers**
Rhode Island Energy
NRG Direct Energy
BP British Petroleum
Pawtucket Water Supply Board
Narragansett Bay Commission
Waste Management
Environ Energy

**Significant Suppliers/Vendors**
Aqueduct Technologies
Atlantic Elevator South Co., Inc.
Atomic Salon, L.L.C.
Bardon's H20 Technology
BioReference Health, LLC
Caron & Bletzer, PLLC
Certified Languages International
Cox Rhode Island Telecom L.L.C. d/b/a COX
Business
Diocese of Providence
Ecolab Inc.
[REDACTED]
Epiq eDiscovery Solutions, Inc.
e-Psychiatry, LLC
ESIS, Inc.
FOP Lodge 50
Immigration and Customs Enforcement
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
CBIZ/Marcum LLP
[REDACTED]
Marquis Software Development, Inc.
Metro Group
[REDACTED]
NAVSUP FLC NORFOLK CONTRACTING
New England State Police Information Network
Northeast Data Destruction

NRG Business Marketing LLC
Rhode Island Council 94 AFSCME
[REDACTED]
[REDACTED]
Shea's Towing
TridentCare
Waste Management of Rhode Island, Inc.
WastExpress
Xerox Financial Services LLC
CODAC, Inc.
DSI-ITI, Inc.
The Hilb Group of New England, LLC
Keefe Commissary Network, LLC
Trinity Services Group, Inc.
United States Marshals Service
Tasca Toyota Boston

**Unions**
FOP Lodge 50
Rhode Island Council 94 AFSCME

**Secured Parties**
Xerox Financial Services
Crestmark Vendor Finance
Wells Fargo Financial Leasing, Inc.
WEBBANK
U.S. Bank NA
Bank of New York Mellon Trust Co., NA
U.S. Bank NA
UMB Bank, NA

**Miscellaneous**
National Railroad Passenger Corporation
(Amtrak)
[REDACTED]
HD Supply Facilities Maintenance

**EXHIBIT C**

**Engagement Agreement**

# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) in the event of a breach of this Agreement by the Client, by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq within ten (10) business days.

**3.  Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 1, 2026.  If such

annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3     Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable and documented out of pocket travel  expenses.

3.4     Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5     Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6     In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7     To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.  Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client Data will be utilized by Epiq solely for the purposes of performing Services for the Client. Epiq shall use and hold all Client Data in accordance with all applicable laws, rules, and regulations and shall keep Client Data in the strictest confidence. Epiq shall not use the Client Data for its own use or in any way, directly or indirectly, harmful or competitive with the Client or for any purpose except as necessary to perform the required Services under the Agreement. Client Data includes written information as well as that transferred orally, visually, electronically, or by any other means. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use

2

of any Client Data or other Client materials provided to Epiq in the performance of this Agreement. Notwithstanding the foregoing, Epiq shall continue to hold and keep confidential all Client Data that Client has provided to it in connection with the Client's November, 2023 data security incident.

## 5.   Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.  Bank Accounts

At the request of the Client or Client Parties, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client to facilitate distributions pursuant to a Chapter 11 plan or other transactions.  To the extent such accounts or other financial products are provided to the company, pursuant to Epiq's agreement(s) with financial institutions, Epiq may receive fees and other compensation from such institutions.

## 7.   Disposition of Data.

7.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

7.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client

Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media. Notwithstanding anything herein to the contrary, Client shall retain all rights in and title to the Client Materials and expressly reserves all rights with respect thereto.

## 8. **Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 9. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR

4

OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

**10.    Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**11. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the written consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**12. General**

12.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

12.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

12.3  This Agreement shall be governed by the laws of the State of Rhode Island, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in Rhode Island and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to

5

protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

12.4   The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

12.5   Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

12.6   In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

12.7   Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, pandemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

12.8   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

12.9   All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

12.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

       <u>If to Epiq</u>:

          Epiq Corporate Restructuring, LLC
          777 Third Avenue, 12th Floor
          New York, New York 10017
          Attn:  Brad Tuttle

       <u>If to Client</u>:

          Central Falls Detention Facility Corporation

c/o Donald W. Wyatt Detention Facility
Attn: Michael Nessinger, Warden
950 High Street
Central Falls, RI 02863
Telephone: (401) 721-0323
e-mail: MNessinger@wyattdetention.com

With a copy to:

Aaron C. Smith
Troutman Pepper Locke
111 South Wacker Drive, Suite 4100
Chicago, IL  60606
aaron.smith@troutman.com

Brian J. Lamoureux
Pannone Lopes Devereaux & O'Gara LLC
1301 Atwood Avenue, Suite 215N
Johnston, RI  02919
bjl@pldolaw.com

12.11 Invoices sent to Client should be delivered to the following address:

Central Falls Detention Facility Corporation
c/o Donald W. Wyatt Detention Facility
Attn: Michael Nessinger, Warden
950 High Street
Central Falls, RI 02863
Telephone: (401) 721-0323
e-mail: MNessinger@wyattdetention.com

7

12.12   The "Effective Date" of this Agreement is July 9, 2025.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Brad Tuttle
Title:   General Manager

**CENTRAL FALLS DETENTION FACILITY CORPORATION**

By:_____

Name: Michael Nessinger

Title:   Warden

8

# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

9

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


**NOTICING**

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditors having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

- Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

11

## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

12

# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | Waived |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $175.00 |
| Project Managers/Consultants/ Directors | $175.00 – $190.00 |
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |
| Overtime | Waived |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | Waived |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Creditor/Data Records, Maintenance & Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| Jump Drive (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

13

On-Line Claim Filing                                    NO CHARGE

## CALL CENTER RATES

    Standard Call Center Setup                     NO CHARGE

    Call Center Operator                           $65 per hour

    Voice Recorded Message                         $0.34 per minute

## OTHER SERVICES RATES

    Custom Software, Workflow
    and Review Resources                           Quoted at time of request

    Strategic Communication Services               Quoted at time of request

    Escrow Services                                Quoted at time of request /competitive rates

    Securities Exchange / ATOP Event               Quoted at time of request

    eDiscovery                                     Quoted at time of request, bundled pricing available

    Virtual Data Room --
    Confidential On-Line Workspace                 Quoted at time of request

    Disbursements -- Check and/or Form 1099         Quoted at time of request

    Disbursements -- Record to Transfer Agent      Quoted at time of request

14