**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| Debtor.[1] | ) | |

**ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) ESTABLISHING VOTING RECORD DATE, VOTING DEADLINE, AND OTHER DATES; (III) APPROVING PROCEDURES FOR SOLICITING, RECEIVING, AND TABULATING VOTES ON CHAPTER 11 PLAN AND FOR FILING OBJECTIONS TO CHAPTER 11 PLAN; (IV) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) APPROVING FORM, MANNER, AND SUFFICIENCY OF NOTICE AND OTHER RELATED DOCUMENTS; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Central Falls Detention Facility Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), for entry of an order (this "Disclosure Statement Order"), pursuant to sections 105(a), 1123(a), 1124, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, and 3020, of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3017-1, 3018-1, 3018-2, and 3020-1 of the Local Bankruptcy Rules and Forms of the United States Bankruptcy Court for the District of Rhode Island (the "Local Rules"): (a) approving the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation* [Docket No. 12] (as may be amended, modified,

[1] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, Plan, or Disclosure Statement, as applicable.

or supplemented from time to time, the "Disclosure Statement") and the manner and form of notice of the hearing to consider the proposed Disclosure Statement; (b) establishing the voting record date, voting deadline, and other related dates for the *Chapter 11 Plan of Central Falls Detention Facility Corporation* [Docket No. 11] (as may be amended, modified, or supplemented from time to time, the "Plan"); (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (d) approving notice and objection procedures for the assumption or rejection of executory contracts and unexpired leases; (e) approving the manner and forms of notice and other related documents as they relate to the Debtor; and (f) granting related relief as set forth herein; and upon the record of the hearing on the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and appearing that no other or further notice of the Motion is required; and the Court having found that the relief requested is in the best interests of the Debtor's estate; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. Notice of the Motion and the Disclosure Statement Hearing was good and sufficient notice to all interested parties.

B. The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

C. The following forms of notices attached hereto as **Exhibits 4, 5, 6 and 7** contain sufficient information and are appropriate under the circumstances:

a. Non-Voting Status Notice, **Exhibit 4**;

b. Confirmation Hearing Notice, **Exhibit 5**;

c. Plan Supplement Notice, **Exhibit 6**; and

d. Publication Notice, **Exhibit 7**.

D. The forms of the Ballots attached hereto as **Exhibit 3-A, Exhibit 3-B, and Exhibit 3-C** (i) are sufficiently consistent with Official Form No. B314, (ii) adequately address the particular needs of this Chapter 11 Case, and (iii) are appropriate for each Class of Claims entitled to vote to accept or reject the Plan.

E. The time period set forth below during which the Debtor may solicit votes on the Plan is a reasonable period of time for Claim holders to make an informed decision as to whether to accept or reject the Plan.

F. The procedures set forth below for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

G. The procedures set forth below regarding the Confirmation Hearing Notice and the contents of the Solicitation Package comply with Bankruptcy Rules 2002 and 3017 and Local Rule 3017-1 and constitute sufficient notice to all interested parties.

Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the Disclosure Statement Hearing, and good and sufficient cause appearing therefor,

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

## I. Approval of the Disclosure Statement

2. Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a) of the Bankruptcy Code. No further or additional information is necessary or required. The Debtor is authorized to distribute the Disclosure Statement and the Solicitation Packages in order to solicit votes on, and pursue confirmation of, the Plan.

3. The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims and other parties in interest with sufficient notice of the release, exculpation, and injunction provisions contained in Article XI of the Plan, in satisfaction of requirements of Bankruptcy Rule 3016(c).

4. The procedures described in the Motion pursuant to which the Debtor provided notice to the parties entitled to notice, pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1, of the time, date, and place of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline, provided due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1. No further or additional notice is necessary or required.

5. All objections, if any, to the Disclosure Statement, the Motion, or any of the procedures, exhibits, or schedules referenced therein that have not been withdrawn or resolved as provided for in the record of the Disclosure Statement Hearing are overruled.

## II. Approval of Key Dates and Deadlines

6. The following dates are hereby established (subject to modification by the Debtor as necessary in consultation with the Bond Trustee or further order of the Court) with respect to

the solicitation of votes to accept or reject the Plan, voting on the Plan, objecting to the Plan, and confirming the Plan (all times prevailing Eastern Time).

| **Proposed Solicitation and Confirmation Timetable** | |
|---|---|
| **Event** | **Date and Time (All Prevailing Eastern Time)** |
| Disclosure Statement Objection Deadline | August 14, 2026 at 4:00 p.m. |
| Voting Record Date | September 18, 2026 |
| Disclosure Statement Hearing | August 20, 2026 |
| Solicitation Commencement Deadline | September 28, 2026 |
| Deadline to Publish Confirmation Hearing Notice | September 28, 2026 |
| Deadline to Object to Claims for Voting Purposes Only | October 1, 2026 at 4:00 p.m. |
| Deadline to File Motions for Temporary Claim Allowance | October 14, 2026 at 4:00 p.m. |
| Deadline to File Plan Supplement | October 14, 2026 at 4:00 p.m. |
| Deadline to Object to Motions for Temporary Claim Allowance | October 19, 2026 at 4:00 p.m. |
| Voting Deadline | October 21, 2026 at 4:00 p.m. |
| Confirmation Objection Deadline | October 26, 2026 at 4:00 p.m. |
| Deadline to File and Serve Proposed Order of Distribution | October 26, 2026 at 4:00 p.m. |
| Deadline to File Voting Report and Certification of Ballots | November 2, 2026 at 4:00 p.m. |
| Deadline to File Confirmation Worksheet and Certification | November 2, 2026 at 4:00 p.m. |
| Deadline to File Proposed Confirmation Order and Findings of Fact | November 2, 2026 at 4:00 p.m. |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | November 2, 2026 at 4:00 p.m. |
| Confirmation Hearing Date | November 10, 2026 at 10:00 a.m. |

7. Notwithstanding anything to the contrary contained in this Court's Order and Notice of Deadlines dated July 27, 2026 [Docket No. 93] or any applicable Local Rule, the Debtor shall not be required to file objections to claims prior to the approval of the Disclosure Statement

or the confirmation of the Plan, and shall retain the right from and after confirmation of the Plan to pursue claims reconciliation and to file pleadings and take positions as to the amount in which unresolved claims should be allowed, all in accordance with the procedures set forth therein.

## III. Confirmation Hearing Notice, Confirmation Hearing and Objections

8. Pursuant to Bankruptcy Rule 3020(b)(3), the Confirmation Hearing shall be held on **November 10, 2026, at 10:00 a.m. (prevailing Eastern Time)**. The Debtor may adjourn or continue the Confirmation Hearing from time to time.

9. In accordance with Local Bankruptcy Rule 3018-1, at least seven (7) days prior to the Confirmation Hearing, the Debtor will file a Certification of Ballots, either in the form provided as R.I. Local Form 3018-1, or in a similar form containing all of the information required in R.I. Local Form 3018-1 and serve a copy on all creditors holding secured claims.

10. In accordance with Local Bankruptcy Rule 3020-1, no later than seven (7) days prior to the Confirmation Hearing, the Debtor shall file and serve copies of the following documents on: (a) the U.S. Trustee, (b) counsel any Committee (if any), and (c) any other party specified by the Court:

i. a proposed order of distribution in substantially the same form as R.I. Local Form 3020-1.1 (the "Proposed Order of Distribution"); either serve a copy of the Proposed Order of Distribution, or a "Notice of Filing of Proposed Order of Distribution" in substantially the same form as R.I. Local Form 3020-1.2 on all creditors, at least fourteen (14) days before the hearing on confirmation; and shall file a certificate of service evidencing compliance with Local Bankruptcy Rule 3020-1(a)(1);

ii. a chapter 11 confirmation worksheet and certification in substantially the same form as R.I. Local Form 3020-1.3;

iii. a certification that the approved disclosure statement, the plan, the order approving disclosure statement, and ballots for acceptances or rejections were mailed to all creditors at least twenty-eight (28) days prior to the Confirmation Hearing;

iv. a proposed order including proposed findings of fact regarding confirmation of the Plan in substantially the same form as R.I. Local Form 3020-1.4;

v. a certification of compliance with the requirements of 11 U.S.C. § 1129, or in the alternative, evidence of such compliance at the Confirmation Hearing; and

vi. any other documents necessary for confirmation of the Plan.

11. The Debtor shall be excused from depositing funds pursuant to Bankruptcy Rule 3020(a) and the proof of deposit requirement contained in Local Bankruptcy Rule 3020-1(c).

12. Pursuant to Bankruptcy Rule 3020(b)(1), the deadline to file and serve Confirmation Objections shall be **October 26, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Plan Objection Deadline"). All objections to confirmation of the Plan, if any, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Court; (c) state the name and address of the objecting party and the amount and nature of the claim asserted by the objector against the Debtor; (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are **actually received** by the following parties (the "Notice Parties") on or before the Plan Objection Deadline:

i. counsel to the Debtor, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th floor, Boston, MA 02199, Attn.: Jonathan W. Young (jonathan.young@troutman.com) and Hanna J. Redd (hanna.redd@troutman.com) and Troutman Pepper Locke LLP, 225 W. Randolph St., Suite 2600, Chicago IL 60606, Attn: Aaron C. Smith (aaron.smith@troutman.com);

ii. co-counsel for the Debtor, Partridge Snow & Hahn LLP, 40 Westminster Street, Suite 1100, Providence, RI 02903, Attn.: Daniel E. Burgoyne (dburgoyne@psh.com) and Matthew A. Lopes, Jr. (mlopes@psh.com);

iii. counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Ian A. Hammel (iahammel@mintz.com) and 919 Third Avenue, New York, NY 10022, Attn: Megan M. Preusker (mpreusker@mintz.com) and Kaitlin R. Walsh (KRWalsh@mintz.com) and Duffy & Sweeney, a Division of Stevens and Lee, 321 S. Main St., Suite 400 Providence, RI 02903 Attn: Robert M. Duffy (Robert.duffy@stevenslee.com);

iv. the Office of the United States Trustee for Region 1, 5 Post Office Square, Suite 1000 Boston, Massachusetts 02109, Attn: Sandra Nicholls (Sandra.Nicholls@usdoj.gov); and

v. counsel to any appointed Official Committee of Unsecured Creditors.

13. Any Confirmation Objection not timely filed and served in the manner set forth in this Disclosure Statement Order shall not be considered and shall be deemed overruled. Pursuant to Bankruptcy Rule 3020(b), if no Confirmation Objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

14. The deadline for the Debtor and/or other parties supporting confirmation of the Plan to file and serve a confirmation brief and Replies to Confirmation Objections shall be **November 2, 2026 at 4:00 p.m.** (prevailing Eastern Time) (or, in the event the Confirmation Hearing is adjourned, the date that is three (3) business days prior to the adjourned hearing date).

15. Service of the Confirmation Hearing Notice as proposed in the Motion and the form of notice attached hereto as **Exhibit 5** constitutes adequate and sufficient notice, in satisfaction of the requirements of applicable provisions under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of: (a) the Confirmation Hearing to consider approval of the Plan; (b) the manner in which a copy of the Plan may be obtained; and (c) the Plan Objection Deadline. Any provision of Bankruptcy Rule 3017(d) requiring the Debtor to distribute the Disclosure Statement and the Plan to parties not entitled to vote, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties in interest other than as prescribed in this Disclosure Statement Order, shall be waived.

16. The Debtor shall publish the Publication Notice as proposed in the Motion and the form of notice attached hereto as **Exhibit 7,** as soon as reasonably practicable after entry of this

Disclosure Statement Order, and no later than at least twenty-eight (28) days' notice of the Confirmation Hearing, in the national edition of *USA Today* (or another national newspaper of like circulation) and in the *Providence Journal*. In addition to the foregoing, the Debtor shall work with the Bond Trustee to post a copy of the Confirmation Hearing Notice on EMMA. The Publication Notice as described herein shall constitute sufficient notice of the Confirmation Hearing to persons who do not otherwise receive notice by mail as provided for in this Disclosure Statement Order.

## IV. Establishment of Voting Record Date, Disallowance of Claims for Voting Purposes, and Procedures for Temporary Allowance of Claims that are Subject to an Objection Filed by the Debtor

17. Pursuant to Bankruptcy Rule 3017(d), **September 18, 2026** shall be the Voting Record Date. The Debtor shall use the Voting Record Date for determining which Holders of Claims are: (a) in a Voting Class and, thus, entitled to receive the Solicitation Package; and (b) in a Non-Voting Class and, thus, entitled to receive only the Confirmation Hearing Notice and a Non-Voting Status Notice.

18. With respect to any transferred claim, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred claim only if: (a) all actions necessary to effect the transfer of the claim or equity interest pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date including passage of the twenty-one (21) day objection period set forth therein; or (b) the transferee files, no later than the Voting Record Date, the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer. Regardless of the number of Claims obtained, each transferee shall be treated as a single creditor for purposes of the numerosity requirements of Bankruptcy Code section 1126(c) and the other procedures set forth in this Disclosure Statement Order.

19. In the event the Debtor objects to a Claim or seeks to estimate a Claim, the Holder of such Claim shall not be entitled to vote on the Plan and such Claim shall not be counted in determining whether the requirements of Bankruptcy Code section 1126(c) have been met with respect to the Plan (except to the extent and in the manner as may be set forth in the objection or motion to estimate) unless (a) the Claim has been temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a) and in accordance with this Disclosure Statement Order or (b) on or before the Voting Deadline, the objection to such Claim has been withdrawn or resolved in favor of the creditor asserting the Claim.

20. A Motion for Temporary Claim Allowance must be filed with this Court and served on counsel to the Debtor and the other Notice Parties so as to be **actually received** not later than **October 14, 2026 at 4:00 p.m. (prevailing Eastern Time**) (the "Motion for Temporary Claim Allowance Deadline").

21. Any party having a Claim subject to a timely filed and served a Motion for Temporary Claim Allowance shall be permitted to cast a provisional Ballot to accept or reject the Plan. If, and to the extent that, the Debtor and such party are unable to resolve the issues raised by a Motion for Temporary Claim Allowance prior to the Voting Deadline, then, at the Confirmation Hearing, the Court shall determine whether and in what amount the provisional Ballot should be counted as a vote on the Plan.

22. The Debtor and a Holder of a Claim may agree and stipulate to treatment of a specific Claim for voting purposes pursuant to a notice filed with the Court.

23. Nothing in this Disclosure Statement Order shall affect or limit the Debtor's (or any other party in interest's) rights to object to any Proof of Claim or Motion for Temporary Claim Allowance.

## V. <u>Approval of Solicitation Procedures</u>

24. The Debtor is authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety; *provided, however*, that the Debtor may amend or supplement the Solicitation Procedures (in consultation with the Bond Trustee and the Committee, if any, or further order of the Court) where, in the Debtor's best judgment, doing so would facilitate solicitation.

### A. <u>Duties of Voting Agent</u>

25. Epiq Corporate Restructuring, LLC ("<u>Epiq</u>" or the "<u>Voting Agent</u>") shall assist the Debtor in, among other things, (a) mailing the Confirmation Hearing Notice; (b) mailing Solicitation Packages; (c) soliciting votes on the Plan; (d) receiving, tabulating, and reporting on Ballots cast for or against the Plan by Holders of Claims against the Debtor; (e) responding to inquiries from Claim Holders relating to the Plan, the Disclosure Statement, the Ballots and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and objecting to the Plan; and (f) if necessary, contacting Holders of Claims regarding the Plan and their Ballots.

### B. <u>Ballots and Non-Voting Status Notice</u>

26. The Ballots to be used in connection with the solicitation of votes on, and confirmation of, the Plan, substantially in the forms attached hereto as **Exhibit 3-A**, **Exhibit 3-B**, and **Exhibit 3-C** are hereby approved.

27. Ballots shall be distributed to Voting Classes in accordance with the Solicitation Procedures. With respect to Holders of Existing Bond Secured Claims, the Voting Agent shall transmit Solicitation Packages for the Beneficial Holders of the Existing Bonds to all Nominees

identified by the Voting Agent as an entity through which the Beneficial Holders held their Existing Bonds as of the Voting Record Date. Each Nominee will be instructed to distribute the Solicitation Packages to the Holders of Existing Bonds for whom the Nominee held Existing Bonds.[3] In addition to the Solicitation Package, the Voting Agent shall transmit to Nominees both: (a) beneficial holder ballots, as appropriate, substantially in the form attached as **Exhibit 3-A** (the "Beneficial Holder Ballots") to the Motion, and (b) a master ballot, as appropriate, substantially in the form attached as **Exhibit 3-B** to the Motion (the "Master Ballots" and the Master Ballots collectively with the Beneficial Holder Ballots, the "Bondholder Ballots").

28. Except to the extent that the Debtor determines otherwise, the Debtor is not required to provide Solicitation Packages to Holders of Claims in Non-Voting Classes, as such Holders are not entitled to vote to accept or reject the Plan. In lieu of a Solicitation Package, on or before the Solicitation Commencement Deadline, the Voting Agent shall distribute a Non-Voting Status Notice and a Confirmation Hearing Notice, substantially in the forms attached hereto as **Exhibit 4** and **Exhibit 5,** respectively. The Non-Voting Status Notice is hereby approved, and the proposed manner and form of service of the Non-Voting Status Notice and Confirmation Hearing Notice to Holders of Claims in Non-Voting Classes provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules. No further notice is required or necessary.

29. Further, as set forth more fully in this Disclosure Statement Order, the Debtor is not required to distribute Solicitation Packages to: (a) Holders of Claims that (i) have already been

---

3 Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Nominee. Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices. If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

paid in full during this Chapter 11 Case or (ii) are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom the notice of the Disclosure Statement Hearing was sent and was subsequently returned as undeliverable.

## C. Approval of the Form of, and Distribution of, Solicitation Packages

30. The Debtor is authorized to transmit, or cause to be transmitted, Solicitation Packages to Holders of Claims in Voting Classes (Classes 3 and 4) on or before **September 25, 2026** (the "Solicitation Commencement Deadline"). Solicitation Packages shall include the following:

(a) the Disclosure Statement with all exhibits thereto, including the Plan, and the Disclosure Statement Order excluding exhibits;

(b) the Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 5**;

(c) the Solicitation Procedures;

(d) the applicable Ballot customized for such holder and conforming to the Bankruptcy Rules and Form B314; and

(e) any supplemental documents filed with the Court and any documents that the Court orders to be included in the Solicitation Package, including any letters in support of the Plan.

31. The Solicitation Packages provide Holders of Claims that are entitled to vote to accept or reject the Plan with adequate information necessary to make an informed decision with respect to voting to accept or reject the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), and all other applicable provisions under the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Accordingly, service of Solicitation Packages prior to the Solicitation Commencement Deadline to those Holders of Claims that are entitled to vote to accept or reject

the Plan, as set forth above, shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

32. The Debtor will distribute the materials included in the Solicitation Packages, excluding Ballots and the Confirmation Hearing Notice, in electronic format by posting the materials to the case website and including a link in the Confirmation Hearing Notice or on a USB Flash Drive, instead of printed hard copies. The Ballots and Confirmation Hearing Notice shall be distributed in hard copy format. Any recipient of a Solicitation Package in electronic format who wishes to receive hard copies may request such hard copies from the Voting Agent.

33. The Debtor shall also provide copies of materials included in the Solicitation Packages, with the exception of Ballots, unless any such party is otherwise entitled to receive a Ballot pursuant to the terms of this Disclosure Statement Order, to: (a) the Office of the United States Trustee; (b) counsel for any Committee; (c) counsel for the Bond Trustee; and (d) all parties that have filed requests for notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.

34. Holders of Claims that have filed duplicate Claims in any given Class shall be entitled to receive only one Solicitation Package and allowed one Ballot for voting their Claims with respect to that Class.

### D. <u>Circumstances Where No Notice or Transmittal Required</u>

35. The Debtor is not required to send Solicitation Packages, individual solicitation materials, or other notices to (a) any creditor that filed a Proof of Claim if the amount asserted in such Proof of Claim is less than or equal to the amount that has already been paid to such creditor on account of such Proof of Claim or (b) the Holder of a Claim that has been disallowed in full by order of the Court.

36. The Debtor is not required to give notice of any kind to any Person or Entity to whom the Debtor mailed notice of the Disclosure Statement Hearing and received the the notice of Disclosure Statement Hearing returned by the United States Postal Service marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or any similar reason, unless the Debtor has been informed in writing by such Person or Entity of that Person's or Entity's new address.

37. The Debtor is not required to attempt to re-deliver Solicitation Packages, Confirmation Hearing Notices, and Non-Voting Status Notices that are returned as undeliverable if the Debtor has not been timely provided with corrected address information by such parties.

## VI. Voting Deadline and Vote Tabulation Procedures

38. The last date and time by which Ballots accepting or rejecting the Plan must be received by Voting Agent in order to be counted shall be the Voting Deadline, which is **October 21, 2026 at 4:00 p.m. (prevailing Eastern Time)**; provided, however, that the Debtor may determine to extend the Voting Deadline.

39. Any timely received Ballot that contains sufficient information to permit the identification of the Holder of a Claim and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

40. If a Holder of a Claim that is entitled to vote and has more than one Claim against the Debtor based upon different transactions, such Holder is entitled to one vote for numerosity purposes in the aggregate dollar amount of all of such Claims.

41. The Debtor shall use reasonable efforts to notify: (a) a Holder of a Claim or Interest and (b) the Committee, if any, of defects or irregularities with respect to Ballots received by Voting

Agent. Neither the Debtor nor Voting Agent shall incur any liability in the event such efforts are unsuccessful. Further, in the event such efforts are unsuccessful, the Debtor may disregard, with no further notice, defective Ballots.

42. The Debtor may accept (i) the City Ballot via e-mail to tabulation@epiqglobal.com with “Central Falls City Ballot” in the subject line; (ii) Master Ballots submitted by Nominees via e-mail to tabulation@epiqglobal.com with a reference to “Central Falls Master Ballot” in the subject line; and (iii) Beneficial Ballots that have been pre-validated by Nominees in accordance with the Solicitation Procedures via postage-paid return envelope pre-addressed to the Voting Agent.

43. Under the following circumstances, Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a) any Ballot received after the Voting Deadline, unless the Debtor grants an extension to the Voting Deadline with respect to such Ballot;

(b) any Ballot that is illegible or contains insufficient information;

(c) any Ballot cast by a Person or Entity that does not hold a Claim in a Voting Class;

(d) any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan;

(e) simultaneous duplicative Ballots voted inconsistently;

(f) a creditor may not split its vote(s), and thus a Ballot that partially rejects and partially accepts that Plan shall not be counted;

(g) any attempt to cast a vote on a form other than the official form sent by the Voting Agent;

(h) any unsigned Ballot; or

(i) any Ballot not cast in accordance with the procedures approved in this Disclosure Statement Order.

44. Any duplicate Ballot shall be counted only once. If two (2) or more valid Ballots are cast that attempt to vote the same Claim prior to the Voting Deadline, the last valid Ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots; *provided, however*, that where an ambiguity exists as to which Ballot was the latest mailed, the Voting Agent reserves the right to contact the Holder of the Claim and count the vote according to such voter's stated intent, which shall be noted in the Voting Agent's voting report.

45. The Debtor and the Voting Agent are authorized, but not required, to contact parties to cure defective Ballots. Neither the Debtor nor the Voting Agent will incur any liability for failure to provide such notification.

46. The deadline for the Voting Agent to file its voting report shall be **November 2, 2026.**

**VII. <u>Approval of the Notice of Filing Plan Supplement</u>**

47. The Debtor is authorized to and will send the notice of the filing of the Plan Supplement to the 2002 List, substantially in the form attached hereto as **Exhibit 6.** Notwithstanding the foregoing, the Debtor

may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date solely in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules without further notice to parties in interest; provided, that the Debtor shall give notice to any party to an Executory Contract or Unexpired Lease that is added or removed from the List of Rejected Contracts.

**VIII. <u>Approval of Notice to Executory Contracts and Unexpired Leases</u>**

48. The procedures set forth in the Motion regarding notice to all parties of the assumption, assumption and assignment, or rejection of the Debtor's Executory Contracts and Unexpired Leases, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020, and are hereby approved. No further or additional notice is required or necessary.

**IX. Miscellaneous**

49. The service of Solicitation Packages and other notices and documents described herein in the time and manner set forth herein constitutes adequate and sufficient notice of the Confirmation Hearing, and no further notice is necessary.

50. The Debtor is authorized to take all actions necessary to implement the relief granted in this Disclosure Statement Order.

51. To the extent there is any conflict or inconsistency between the terms of this Disclosure Statement Order and the terms set forth in the Ballots, the Non-Voting Status Notice, the Confirmation Hearing Notice, and/or any other document approved by this Disclosure Statement Order, the terms of this Disclosure Statement Order shall control.

52. The Debtor shall have authority to make non-substantive and nonmaterial changes to the Disclosure Statement, the Plan, the Ballots, the Non-Voting Status Notices, and the Confirmation Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, the Ballots, the Non-Voting Status Notices, the Confirmation Hearing Notice, and any other materials in the Solicitation Package prior to mailing. If such changes are made, the Debtor shall promptly file a notice on the Court's docket reflecting all such changes in a manner that highlights each such change.

53. Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Disclosure Statement Order shall be immediately effective and enforceable upon its entry.

54. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Disclosure Statement Order.

55. Copies of the Plan, the Disclosure Statement, and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov.

56. Nothing contained in the Motion or this Disclosure Statement Order is intended to be or shall be deemed (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver or limitation of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action that may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption, or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

Dated: August 21, 2026
Providence, Rhode Island

Honorable John A. Dorsey, Jr.
United States Bankruptcy Judge

**Exhibit 1**

*Intentionally Omitted*

**Exhibit 2**

**(Form of Solicitation Procedures)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| Debtor.[4] | ) | |

## SOLICITATION PROCEDURES

**PLEASE TAKE NOTICE** that on July 10, 2026 (the "Petition Date"), Central Falls Detention Facility Corporation (d/b/a Donald W. Wyatt Detention Facility), as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), filed a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Rhode Island (the "Court").

**PLEASE TAKE FURTHER NOTICE THAT** on the Petition Date, the Debtor filed (i) the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 11] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan")[5] and (ii) the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 12] (as may be amended, modified, or supplemented from time to time the "Disclosure Statement"), providing information with respect to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** on [●], 2026, the Court entered an order [Docket No. ●] (the "Disclosure Statement Order") that, among other things: (a) approved the Disclosure Statement, including all exhibits and schedules thereto; (b) established the voting record date, voting deadline, and other related dates in connection with confirmation of the Plan; (c) approved procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (d) approved the form, manner and notice and objection procedures for the assumption and rejection of executory contracts; and (e) approved the manner and forms of notice and other related documents as they relate to the Debtor.

### A. Voting Record Date

The Court has approved **September 18, 2026,** as the record date for determining which Holders of Claims are entitled to vote on the Plan (the "Voting Record Date").

---

4 The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

5 Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or Disclosure Statement, as applicable

**B. Voting Deadline**

The Court has approved **October 21, 2026, at 4:00 p.m. prevailing Eastern Time** (the "Voting Deadline") as the deadline for voting on the Plan. The Debtor may extend the Voting Deadline, in its sole discretion, without further order of the Court. To be counted as votes to accept or reject the Plan, all ballots and master ballots (each a "Ballot" and collectively, the "Ballots") must be properly executed, completed, and actually received by no later than the Voting Deadline by the Debtor's solicitation and administrative agent, Epiq Corporate Restructuring, LLC ("Epiq" or the "Voting Agent").

**C. Ballots and Notices of Non-Voting Status**

**1. Ballots.**

The Ballots to be used for the solicitation of votes on, and confirmation of, the Plan, shall be substantially in the form(s) attached to the Disclosure Statement Order as **Exhibit 3-A, Exhibit 3-B, and Exhibit 3-C**. Ballots, along with other materials in the Solicitation Packages (as defined below), shall be distributed to all parties entitled to vote no later than **September 25, 2026, or as soon as reasonably practicable thereafter**. Ballots will be accompanied by a pre-addressed, postage-prepaid return envelope and/or instructions for submission of votes.

**2. Notices of Non-Voting Status.**

Notices of non-voting status, including the Non-Voting Status Notices in the form attached to the Disclosure Statement Order as **Exhibit 4**, shall be distributed to parties that are not entitled to vote to accept or reject the Plan. Such notices will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (with the exception of the Ballot).

**D. Content, General Transmittal of Solicitation Packages, and Notice of Confirmation Hearing**

**1. The Solicitation Package.**

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a. the Disclosure Statement with all exhibits thereto, including the Plan, and the Disclosure Statement Order excluding exhibits;

b. the Confirmation Hearing Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 5**;

c. these Solicitation Procedures;

d. the applicable Ballot customized for such holder and conforming to the Bankruptcy Rules and Form B314; and

e. any supplemental documents filed with the Court and any documents that the Court orders to be included in the Solicitation Package, including any letters in support of the Plan.

**2. Distribution of the Solicitation Package.**

As stated above, the Solicitation Package shall provide the Disclosure Statement, the Plan, the Disclosure Statement Order, and Solicitation Procedures in electronic format by posting the materials to the case website free of charge and including a link in the Confirmation Hearing Notice or on a USB Flash Drive instead of printed hard copies, and all other contents of the Solicitation Package, including the Ballot and the Confirmation Hearing Notice, shall be provided in paper format. Copies of the Plan, the Disclosure Statement, the Disclosure Statement Order, and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

The Debtor shall serve, or cause to be served, all of the materials in the Solicitation Package (except for the Ballot) on the U.S. Trustee, counsel for any appointed Committee of Unsecured Creditors (if any), counsel for the Bond Trustee, and all parties who have requested notice pursuant to Bankruptcy Rule 2002. In addition, the Debtor shall mail, or cause to be mailed, on or before **September 25, 2026**, **or as soon as reasonably practicable thereafter**, Solicitation Packages, including Ballots, to all Holders of Claims in Voting Classes, which includes Classes 3 and 4.

With respect to Holders of Existing Bonds Secured Claims (the "Bondholders"), the Voting Agent will submit the Solicitation Packages to all Bondholders in a manner customary in the securities industry so as to maximize the likelihood that the beneficial persons or entities with the ultimate economic interest in the Existing Bonds ("Beneficial Holders") receive the materials in a timely fashion. Specifically, the Voting Agent shall transmit Solicitation Packages for the Beneficial Holders to all banks, brokers, and other nominees (each, a "Nominee") that are identified on the securities position report issued by The Depository Trust Company as entities through which the Bondholders held Existing Bonds as of the Voting Record Date. Each Nominee will be instructed to distribute the Solicitation Packages to the Beneficial Holders for whom the Nominee held Existing Bonds.[6] In addition to the Solicitation Package, the Voting Agent shall

[6] Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Nominee. Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with

transmit to Nominees both: (a) beneficial holder ballots for the Beneficial Holders substantially in the form attached as **Exhibit 3-A** (the "Beneficial Holder Ballots") to the Motion and (b) a master ballot substantially in the form attached as **Exhibit 3-B** to the Motion (the "Master Ballots" and the Master Ballots collectively with the Beneficial Holder Ballots, the "Bondholder Ballots"). In addition to the foregoing measures, the Bond Trustee shall post copies of the Plan and the Disclosure statement on EMMA.

To avoid duplication and reduce expenses, the Debtor will make reasonable efforts to ensure that any Holder of a Claim that has filed duplicative Claims against the Debtor that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

**3. Publication of Confirmation Hearing Notice.**

The Debtor shall publish the notice of the Confirmation Hearing and information related thereto (the "Publication Notice"), as soon as reasonably practicable after entry of the Disclosure Statement Order, and no later than at least twenty-eight (28) days' notice of the Confirmation Hearing, in the national edition of *USA Today* (or another national newspaper of like circulation) and in the *Providence Journal*. In addition to the foregoing, the Bond Trustee shall post a copy of the Confirmation Hearing Notice on EMMA. Such publication shall constitute sufficient notice of the Confirmation Hearing to persons who do not otherwise receive notice by mail in this Chapter 11 Case.

## E. Voting and Tabulation Procedures

**1. Holders of Claims Entitled to Vote.**

Only Holders of Claims in Classes 3 and 4 may vote to accept or reject the Plan pursuant to section 1126 of the Bankruptcy Code. The vote of each Holder of an Existing Bond Secured Claim in Class 3 or a City Claim in Class 4 shall be solicited, and each Holder shall be allowed to vote in accordance with these Solicitation Procedures.

**2. Voting Options.**

The Debtor may accept the Ballot from the Holder of City Claims (the "City Ballot") via e-mail to tabulation@epiqglobal.com with "Central Falls City Ballot" in the subject line so that the City Ballot is actually received on or before the Voting Deadline. City Claims shall be voted in the amount of $1.00.

A Beneficial Holder may vote on the Plan through one of the following two methods, as selected by the Beneficial Holder's Nominee:

---

their customary practices. If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

i. Each Beneficial Holder that holds its Existing Bond Secured Claim through a particular Nominee may complete and sign a Beneficial Holder Ballot and return it to its Nominee, in the manner directed by the Nominee and according to any deadline prescribed by the Nominee to ensure that the Nominee can collect and review Beneficial Holder Ballots and return a completed Master Ballot to the Voting Agent by the Voting Deadline, via e-mail to tabulation@epiqglobal.com with "Central Falls Master Ballot" in the subject line; or

ii. Each Beneficial Holder that holds its Existing Bond Secured Claim through a particular Nominee may receive a pre-validated Beneficial Holder Ballot from its Nominee. The Nominee may "pre-validate" a Beneficial Holder Ballot by (a) signing the Beneficial Holder Ballot; (b) indicating on the Beneficial Holder Ballot the amount and the account number of the Existing Bond Secured Claims held by the Nominee for the particular Beneficial Holder; and (c) forwarding the Beneficial Holder Ballot, together with the Disclosure Statement, a postage-paid return envelope pre-addressed to the Voting Agent at the Ballot Submission Address, and other materials requested to be forwarded, to the Beneficial Holder for voting. The Beneficial Holder must then complete the information requested in the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent in the pre-addressed, postage-paid return envelope so that it is received by the Solicitation Agent on or before the Voting Deadline. A list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Voting Deadline.

Beneficial Holders will receive instructions for voting from the applicable Nominee. The Voting Agent will then tabulate each such Master Ballot or Beneficial Holder Ballot received, as applicable.

**3. Tabulation of Master Ballots.**

(a) Any Beneficial Holder holding a Claim as a record holder in its own name shall vote on the Plan by completing and signing a separate Beneficial Holder Ballot for all Existing Bonds held by such Beneficial Holder and transmit the Beneficial Holder Ballot(s) to the Nominee in sufficient time to enable the Nominee to include such vote on a timely submitted Master Ballot;

(b) any Beneficial Holder Ballot returned to a Nominee by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Voting Agent a Master Ballot that reflects the vote of such Beneficial Holders on or before the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Voting Agent. Nominees shall retain all Beneficial Holder Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Plan;

(c) if a Beneficial Holder holds Existing Bonds through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Holder Ballot and each such Beneficial Holder should execute a

separate Beneficial Holder Ballot for all Existing Bonds it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee;

(d) votes cast by Beneficial Holders through a Master Ballot submitted by a Nominee (or its agent) will be applied against the positions held by such Nominee in the securities as of the Voting Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee (or its agent) will not be counted in excess of the record amount of such securities held by such Nominee; *provided* that the Voting Agent may adjust such record amount to reflect the Claim amount;

(e) if conflicting votes or "over-votes" are submitted by a Nominee, the Debtor will use reasonable efforts to reconcile discrepancies with the Nominee;

(f) if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtor shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date;

(g) for the purposes of tabulating votes, each Beneficial Holder shall be deemed to have voted only the principal amount of its position (regardless of whether such holder includes interest in the amount counted on its Ballot); and

(h) a single Nominee may complete and deliver to the Voting Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

**4. Ballots Not Counted.**

In addition, under the following circumstances, Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(j) any Ballot received after the Voting Deadline, unless the Debtor grants an extension to the Voting Deadline with respect to such Ballot;

(k) any Ballot that is illegible or contains insufficient information;

(l) any Ballot cast by a Person or Entity that does not hold a Claim in a Voting Class;

(m) any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan;

(n) simultaneous duplicative Ballots voted inconsistently;

(o) a creditor may not split their vote(s), and thus a Ballot that partially rejects and partially accepts that Plan shall not be counted;

(p) any attempt to cast a vote on a form other than the official form sent by the Voting Agent;

(q) any unsigned Ballot; or

(r) any Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

If two (2) or more valid Ballots are cast that attempt to vote the same Claim prior to the Voting Deadline, the last dated valid Ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots; *provided, however*, that where an ambiguity exists as to which Ballot was the latest mailed or submitted via the online portal, the Voting Agent reserves the right to contact the Holder of the Claim and count the vote according to such voter's stated intent, which shall be noted in the Voting Agent's voting report.

The Debtors and the Voting Agent are authorized, but not required, to contact parties to cure defective Ballots. Neither the Debtor nor the Voting Agent will incur any liability for failure to provide such notification.

Any class that contains claims entitled to vote but no votes are returned for such class shall be deemed to have accepted the Plan.

Subject to any contrary order of the Court and except as otherwise set forth herein, the Debtor may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Voting Agent.

**5. Voting Report.**

The Voting Agent shall file its Voting Report no later than **November 2, 2026, at 4:00 p.m**. prevailing Eastern Time.

**F. <u>Amendments to the Plan and Solicitation Procedures.</u>**

The Debtor, in consultation with the Bond Trustee, reserves the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan, Ballot, Confirmation Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

Dated: September [•], 2026

**PARTRIDGE SNOW & HAHN LLP**

/s/
Daniel E. Burgoyne (#7541)
Matthew A. Lopes, Jr. (#3877)
40 Westminster Street
Suite 1100
Providence, RI 02903
T: (401) 861-8254
F: (401) 861-8210
dburgoyne@psh.com
mlopes@psh.com

– and –

**TROUTMAN PEPPER LOCKE LLP**
Jonathan W. Young (*pro hac vice*)
Hanna J. Redd (*pro hac vice*)
111 Huntington Ave., 9th Floor
Boston, MA 02199
T: (617) 239-0100
F: (617) 227-4420
jonathan.young@troutman.com
hanna.redd@troutman.com

Aaron C. Smith (*pro hac vice*)
225 W. Randolph St., Suite 2600
Chicago, IL 60606
T: (312) 443-700
F: (312) 443-0336
aaron.smith@troutman.com

*Counsel to the Debtor and Debtor in Possession*

# Exhibit 3-A

## (Form of Beneficial Holder Ballot)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| | ) | |
| Debtor.[7] | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE CHAPTER 11 PLAN OF REORGANIZATION OF CENTRAL FALLS DETENTION FACILITY CORPORATION**

**CLASS 3 – EXISTING BOND SECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE WITH THIS BALLOT ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE CLAIMS AND NOTICING AGENT BY OCTOBER 21, 2026 AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, THEN IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.**

Epiq Corporate Restructuring, LLC (the "Voting Agent") in its capacity as voting agent for and on behalf of the Central Falls Detention Facility Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), is soliciting votes to accept or reject the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 11] (together with all schedules and exhibits thereto, and as may be modified,

[7] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

amended, or supplemented from time to time, the "Plan") from the holders of certain Impaired Claims against the Debtor.

You are receiving this Beneficial Holder ballot (the "Beneficial Holder Ballot") because you are a Beneficial Holder of Series 2005 Bonds in Class 3 listed on **Exhibit A** hereto as of August 17, 2026 (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan. You can cast your vote through this Beneficial Holder Ballot and return it in accordance with the instructions of your broker, bank, common representative or other nominee, or the agent of a broker, bank, common representative or other nominee (each of the foregoing, a "Nominee"). Your Nominee will then submit a master ballot (the "Master Ballot"), if applicable, on behalf of the Beneficial Holders of the Class of Claims indicated on **Exhibit A** hereto.

The rights and treatment for each Class are described in the Disclosure Statement. Copies of the Plan, the Disclosure Statement, the Order Approving the Disclosure Statement and Solicitation Procedures (the "Disclosure Statement Order"), and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not mean that the Plan has been confirmed by the Bankruptcy Court. Rather, the Ballots will be counted and the Court will use the tabulation of the Ballots as part of its determination as to whether or not to confirm (approve) the Plan. This Beneficial Holder Ballot may not be used for any purpose other than for voting to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe that you have received this Beneficial Holder Ballot in error, please contact the Voting Agent **immediately** at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you submit this Beneficial Holder Ballot. You may wish to seek independent legal advice concerning the Disclosure Statement and the Plan and the classification and treatment of your Claim. Your Claim has been placed in the Class indicated on **Exhibit A** hereto. If you have not received a separate Ballot for each Class in which you are entitled to vote, then please contact the Voting Agent immediately at the address, telephone number, or email address set forth above.

**Depending on the instructions you receive from your Nominee, in order for your vote to count, either (a) your pre-validated Beneficial Holder Ballot must be received by the Voting Agent at or before the Voting Deadline, which is October 21, 2026, at 4:00 p.m. (prevailing Eastern Time) or (b) your Nominee must receive your Beneficial Holder Ballot in**

**sufficient time for your Nominee to be able to submit a Master Ballot reflecting your vote in time for the Voting Agent to receive it at or before the Voting Deadline, unless such time is extended in writing by the Debtor. Please follow your Nominee's instructions to allow sufficient time for your vote to be included on the Master Ballot that your Nominee will deliver to the Voting Agent. If either your pre-validated Beneficial Holder Ballot or a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.**

**IMPORTANT NOTICE FOR ALL CREDITORS**

**PLEASE TAKE NOTICE THAT IF THE PLAN IS CONFIRMED BY THE COURT, ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR (INCLUDING THOSE HOLDERS WHO ABSTAIN FROM VOTING ON OR WHO VOTE TO REJECT THE PLAN, AND THOSE HOLDERS WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE CONFIRMED PLAN AND THE TRANSACTIONS CONTEMPLATED THEREUNDER.**

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Amount of Claim.** The undersigned hereby certifies that, as of the Voting Record Date, it was the Beneficial Holder of Claims in the Class indicated on **Exhibit A** hereto in the following aggregate unpaid principal amount (insert amount in box below, unless otherwise completed by your Nominee.):

**Principal Amount**: $______________________________

**Item 2.** **Vote on the Plan.** Please vote either to accept or to reject the Plan with respect to your Claim below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth at the end of this Beneficial Holder Ballot. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the releases, injunction, and exculpation provisions.**

The Beneficial Holder of the Claim against the Debtor set forth in Item 1 votes to (please check only one):

☐ **ACCEPT** (vote FOR) the Plan ☐ **REJECT** (vote AGAINST) the Plan

**Your vote in Item 2 above will be applied as a vote in Class 3 – Existing Bond Secured Claims.**

**Item 3.** **Other Beneficial Holder Ballots Submitted.** By returning this Beneficial Holder Ballot, the holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1 owned by such holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the holder in the same Class indicate the same vote to accept or reject the Plan that the holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER CLAIMS IN THIS CLASS ON ANOTHER BENEFICIAL HOLDER BALLOT**

| Account Number of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP Ticker Symbol of Other Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

**Item 4.** **Acknowledgments and Certification.** By signing this Ballot, the undersigned Beneficial Holder of the Claim against the Debtor set forth in Item 1 acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Holder) of the Claim described in Item 1 as of the Voting Record Date, and/or it has full power and authority to vote to accept or reject the Plan on account of such claims. The undersigned is sending this Beneficial Holder Ballot to its Nominee and authorizes and instructs its Nominee to submit a Master Ballot to the Voting Agent.

Name of Claimant: ______________________________

Signature: ______________________________

Name of Signatory (if different than Claimant): ______________________________

If authorized by Agent, Title of Agent: ______________________________

Street Address: ______________________________

Street Address (continued): ______________________________

City, State, Zip Code: ______________________________

Telephone Number: ______________________________

Email Address: ______________________________

Date Completed: ______________________________

**Please return your Beneficial Holder Ballot promptly in the envelope provided or otherwise in accordance with the instructions provided by your Nominee. If the Voting Agent does not actually receive the Master Ballot reflecting the vote cast on this Beneficial Holder Ballot (or your pre-validated Beneficial Holder Ballot, if applicable) on or before October 21, 2026 at 4:00 p.m. (prevailing Eastern Time), and if the Voting Deadline is not extended, your vote will not be counted.**



**CUSIP indicated on Exhibit A hereto**

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1. The Debtor is soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions (the "**Ballot Instructions**") but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **Please read the Plan and Disclosure Statement carefully before completing this Beneficial Holder Ballot.**

2. The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. Unless otherwise instructed by your Nominee or if you have received a pre-validated Ballot, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot (or otherwise convey your vote) to your Nominee in sufficient time to allow your Nominee to process your vote and submit a Master Ballot so that the Master Ballot is actually received by the Voting Agent by the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee. The Voting Deadline for the receipt of Master Ballots and pre-validated Ballots by the Voting Agent is **October 21, 2026 at 4:00 p.m. (prevailing Eastern Time).** Please allow additional time for your vote to be submitted to the Voting Agent on or before the Voting Deadline.

4. If your Nominee has directed you to send a "pre-validated" Beneficial Holder Ballot directly to the Voting Agent, you must deliver your pre-validated Beneficial Holder Ballot to the Voting Agent at or before the Voting Deadline. If you have received a "pre-validated" Beneficial Holder Ballot from your Nominee, you must complete, sign, and date such Ballot and return it (with your original signature) via first-class mail, overnight courier, or hand delivery to the Voting Agent.

5. **The following Beneficial Holder Ballots will not be counted**:

   (a) any Beneficial Holder Ballot received after the Voting Deadline, unless the Debtor grants an extension to the Voting Deadline with respect to such Beneficial Holder Ballot;

   (b) any Beneficial Holder Ballot that is illegible or contains insufficient information;

   (c) any Beneficial Holder Ballot cast by a Person or Entity that does not hold a Claim in Class 3;

   (d) any Beneficial Holder Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan;

   (e) simultaneous duplicative Beneficial Holder Ballots voted inconsistently;

   (f) a creditor may not split their vote(s), and thus a Beneficial Holder Ballot that partially rejects and partially accepts that Plan shall not be counted;

   (g) any attempt to cast a vote on a form other than the official form sent by the Voting Agent;

(h) any unsigned Beneficial Holder Ballot; or

(i) any Beneficial Holder Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

6. If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, or if a pre-validated Beneficial Ballot is not received by the Voting Agent by the Voting Deadline, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot. No Beneficial Holder Ballot should be sent to the Debtor, the Debtor's agents (other than the Voting Agent and only with respect to a pre-validated Beneficial Holder Ballot), the Debtor's financial or legal advisors, or the Bond Trustee, and if so sent will not be counted.

7. If you deliver multiple Beneficial Holder Ballots to the Nominee with respect to the same Claim prior to the Voting Deadline, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

8. You must vote all of your Claims within the same Class either to accept or reject the Plan and may **not** split your vote. Further, if a holder has multiple Claims within the same Class, the Debtor may, in its discretion, aggregate the Claims of any particular holder with multiple Claims within the same Class for the purpose of distributing ballots and counting votes.

9. This Beneficial Holder Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

10. **Please be sure to sign and date your Beneficial Holder Ballot**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

11. If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes **only** your Claims indicated on that ballot, so please complete and return each ballot that you receive.

12. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtor nor the Voting Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**Please return your Beneficial Holder Ballot promptly.**

If you have any questions regarding this Ballot, these Ballot Instructions or the procedures for voting, please contact the Voting Agent by email to Wyattinfo@epiqglobal.com.

**Please return your Beneficial Holder Ballot promptly in the envelope provided or otherwise in accordance with the instructions provided by your Nominee. If the Voting Agent does not actually receive the Master Ballot reflecting the vote cast on this Beneficial Holder Ballot (or your pre-validated Beneficial Holder Ballot) on or before <u>October 21, 2026 at 4:00 p.m. (prevailing Eastern Time)</u>, and if the Voting Deadline is not extended, your vote transmitted by this Beneficial Holder Ballot will not be counted.**

**Exhibit A**

**Your Nominee may have checked a box below to indicate the Plan Class and CUSIP to which this Beneficial Holder Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Holder Ballot:**

| **CLASS 3 – EXISTING BOND SECURED CLAIMS** | |
|---|---|
| ☐ | CUSIP – 153457AW6 |
| ☐ | CUSIP – 153457AX4 |

**NOTICE REGARDING CERTAIN RELEASES, DISCHARGE,**
**INJUNCTION, AND EXCULPATION PROVISIONS IN PLAN**

**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth below. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**

"**Exculpated Party**" means the Debtor, the Reorganized Debtor, the Bond Trustee, the Consenting Holders, and any of their present or former officers, directors, employees, advisors, attorneys, agents, successors or assigns.

"**Released Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Releasing Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Related Parties**" means, with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

**Section 11.01. Releases and Related Matters**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Releasing Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 11.01(a)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Restated Bond Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**



**CUSIP indicated on Exhibit A hereto**

**Section 11.02. Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 11.02 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, the Series 2026 Bonds, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.03. Injunction**

**In addition to any injunction provided in the Final DIP Order, except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims that have been released, discharged, or are Disallowed or subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.02 with respect to the Exculpated Parties) or the property to be distributed under the Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such right to setoff arises under a post-petition agreement with the Debtor or (i) an executory contract or (ii) an unexpired lease that has been assumed by the Debtor as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against the Debtor, Reorganized Debtor, or the Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.01, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party or Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other**

**agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.01, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

**Exhibit 3-B**

**(Form of Master Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re:<br>CENTRAL FALLS DETENTION<br>FACILITY CORPORATION,<br>d/b/a Donald W. Wyatt Detention Facility<br><br>Debtor.[8] | Chapter 11<br><br>Case No. 26-10628 |

**MASTER BALLOT FOR VOTING TO ACCEPT OR
REJECT THE CHAPTER 11 PLAN OF REORGANIZATION OF
CENTRAL FALLS DETENTION FACILITY CORPORATION**

**CLASS 3 – EXISTING BOND SECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS
CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY EPIQ CORPORATE RESTRUCTURING, LLC ("EPIQ" OR THE "VOTING AGENT") BY 4:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 21, 2026 (THE "VOTING DEADLINE").**

Epiq Corporate Restructuring, LLC (the "Voting Agent") in its capacity as voting agent for and on behalf of Central Falls Detention Facility Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), is soliciting votes to accept or reject the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 11] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan") from the holders of certain Impaired Claims against the Debtor.

You are receiving this master ballot (the "Master Ballot") because you are a Nominee (as defined below) of Beneficial Holders of one of more of the securities indicated on **Exhibit A** hereto as of August 17, 2026 (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, common representative or other nominee, as the agent of a broker, bank, common representative or other nominee (each of the foregoing, a "Nominee"), or as the proxy holder of a Nominee for certain Beneficial Holders of the security indicated on Exhibit A hereto, to transmit to the Voting Agent the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan. This**

[8] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

**CUSIPs listed on Exhibit A hereto**

**Master Ballot may not be used for any purpose other than for submitting votes with respect to the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement. Copies of the Plan, the Disclosure Statement, the Order Approving the Disclosure Statement and Solicitation Procedures (the "Disclosure Statement Order"), and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to receive hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Voting Agent by: (a) visiting, free of charge, the Debtor's restructuring website at https://dm.epiq11.com/Wyatt, (b) calling 646-362-6336, or (c) emailing tabulation@epiqglobal.com and referencing "Central Falls Master Ballot" in the subject line.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not mean that the Plan has been confirmed by the Bankruptcy Court. Rather, the Master Ballots will be counted and the Court will use the tabulation of the Master Ballots as part of its determination as to whether or not to confirm (approve) the Plan. This Master Ballot may not be used for any purpose other than for voting to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe that you have received this Master Ballot in error, please contact the Voting Agent **immediately** at the address, telephone number, or email address set forth above.

You are authorized to collect votes to accept or reject the Plan from Beneficial Holders in accordance with your customary practices and any legal requirements, including the use of a "voting instruction form" or a meeting of the Beneficial Holders in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. You may transmit the votes of Beneficial Holders in accordance with one of the following two options:

iii. Within 5 Business Days after you receive the Solicitation Package, forward the Solicitation Packages to your Beneficial Holders along with a return envelope provided by and addressed to you. Each Beneficial Holder will then return its Beneficial Holder Ballot to you, and you will tabulate the votes of your Beneficial Holders on a Master Ballot and return the Master Ballot to the Voting Agent via e-mail to tabulation@epiqglobal.com with "Central Falls Master Ballot" in the subject line. You should advise the Beneficial Holders to return their Beneficial Holder Ballots (or otherwise transmit their votes) to you by a date calculated to allow you to prepare and return the Master Ballot to the Voting Agent so that the Master Ballot is actually received by the Voting Agent on or before the Voting Deadline; or

iv. Within 5 Business Days after you receive the Solicitation Package, “pre-validate” the individual Beneficial Holder Ballots contained in the Solicitation Package and then forward the Solicitation Packages to your Beneficial Holders with the instruction that the Beneficial Holders must return their Beneficial Holder Ballots directly to the Voting Agent in the return envelope to be provided in the Solicitation Package. You may “pre-validate” a Beneficial Holder Ballot by (i) signing the Beneficial Holder Ballot and including your DTC participant number; (ii) indicating the account number of the Beneficial Holder and the Class and principal amount of Claims held by you for such Beneficial Holder; and (iii) forwarding the pre-validated Beneficial Holder Ballot together with the rest of the Solicitation Package to the Beneficial Holder. The Beneficial Holder should then complete the remaining information requested on the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent by the Voting Deadline. You should maintain a list of the Beneficial Holders to whom you send “pre-validated” Beneficial Holder Ballots for inspection for at least one year from the Effective Date.

The Court may confirm the Plan and thereby bind all Holders of Claims. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Voting Agent **actually receives** it no later than **October 21, 2026 at 4:00 p.m. (prevailing Eastern Time)**, unless such time is extended in writing by the Debtor. If a Master Ballot recording the votes of your Beneficial Holders is not received by the Voting Deadline, and if the Voting Deadline is not extended, the votes of your Beneficial Holders will not count.

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 4, AND 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Certification of Authority to Vote.** The undersigned hereby certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ Is a broker, bank, common representative or other Nominee for the Beneficial Holders of the aggregate principal amount of Claims listed in Item 2 below, and is the record holder of such Bonds, or

☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, common representative or other Nominee that is the registered holder of the aggregate principal amount of Claims listed in Item 2 below, or

☐ Has been granted a proxy (an original of which is attached hereto) from a broker, bank, common representative or other Nominee, or a beneficial owner, that is the registered Holder of the aggregate principal amount of Claims listed in Item 2 below,

and, accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Claims described in Item 2.

**Item 2.** **Claim Votes on Plan.** The undersigned transmits the following votes of Beneficial Holders of Claims in the Class indicated on **Exhibit A** hereto and certifies that the following Beneficial Holders of such Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, ballots (the "Ballots") or other vote submissions casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Holder must vote all such Beneficial Holder's Claims to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

INDICATE CUSIP HERE: ______________________

**(USE A SEPARATE FORM FOR EACH CUSIP).**

| **Your Customer Account Number for Each Beneficial Holder of Claims** | **Principal Amount Held as of Voting Record Date** | **Indicate the vote cast from Item 2 of the Beneficial Holder Ballot by checking the appropriate box below** | | |
|---|---|---|---|---|
| | | **Accept the Plan** | **or** | **Reject the Plan** |
| 1. | $ | ☐ | | ☐ |
| 2. | $ | ☐ | | ☐ |
| 3. | $ | ☐ | | ☐ |
| 4. | $ | ☐ | | ☐ |
| 5. | $ | ☐ | | ☐ |
| 6. | $ | | | |
| **TOTAL** | | | | |

**Item 3.** **Important Information Regarding Releases, Injunction, and Exculpation Provisions.**

**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth at the end of this Master Ballot. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**

**Item 4.** **Other Ballots Submitted by Beneficial Holders in the same Class.** The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 3 of the Beneficial Holder Ballot:

| **YOUR customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot** | **Transcribe from Item 3 of the Beneficial Holder Ballot** | | | |
|---|---|---|---|---|
| | **Account Number of Other Claims Voted** | **Name of Record Holder or Nominee** | **Principal Amount of Other Claims Voted** | **CUSIP of Other Claims Voted** |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**<u>Item 5.</u>** **Certifications.** Upon execution of this Master Ballot, the undersigned certifies the following:

(a) it (i) has received a copy of or information regarding where to obtain the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims listed in <u>Item 2</u> above; (ii) has received a completed and signed Beneficial Holder Ballot (or vote submission in accordance with its customary procedures, including without limitation a meeting of Beneficial Holders) from each Beneficial Holder listed in <u>Item 2</u> of this Master Ballot; (iii) is the registered Holder of all Claims listed in <u>Item 2</u> above being voted; and (iv) has been authorized by each Beneficial Holder of the Claims listed in Item 2 above to vote on the Plan;

(b) no other Master Ballots with respect to the same Claims identified in <u>Item 2</u> have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier received Master Ballots are hereby revoked;

(c) it has properly disclosed: (i) the number of Beneficial Holders of Claims who completed the Beneficial Holder Ballots or otherwise conveyed its or their vote or votes; (ii) the respective principal amounts of the Claims owned, as the case may be, by each Beneficial Holder of the Claims who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of the Claims' respective vote concerning the Plan; (iv) each such Beneficial Holder of Claims' certification as to other Claims voted in the same Class; and (v) the customer account or other identification number for each such Beneficial Holder of Claims; and

(d) it will maintain the Beneficial Holder Ballots and/or evidence of separate transactions returned by each Beneficial Holder of Claims (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Debtor or the Court, if so requested or ordered.

Name of Nominee and/or DTC Participant: ______________________________

Participant Number (if applicable): ______________________________

Name of Proxy Holder or Agent for Nominee and/or DTC Participant (if applicable): ______________________________

Signature: ______________________________

Name of Signatory: ______________________________

Title: ______________________________

Street Address: ______________________________

City, State, Zip Code: ______________________________

Telephone Number: ______________________________

Email Address: ______________________________

Date Completed: ______________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT *PROMPTLY* TO THE VOTING AGENT AT THE EMAIL ADDRESS LISTED BELOW:**

**Via Email to: tabulation@epiqglobal.com with a reference to "Central Falls Detention Facility Corporation - Master Ballot" in the subject line.**

**If the Voting Agent does not actually receive this Master Ballot on or before <u>October 21, 2026 at 4:00 p.m. (prevailing Eastern Time)</u>, and if the Voting Deadline is not extended, the votes will not be counted.**



**CUSIPs listed on Exhibit A hereto**

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1. The Debtor is soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot.

2. The Plan can be confirmed by the Court and thereby made binding upon the Beneficial Holders if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. You should immediately distribute the Solicitation Package and the Beneficial Holder Ballots (or other customary material used to collect votes in lieu of the Beneficial Holder Ballot) to all Beneficial Holders of Claims listed on **Exhibit A** hereto and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including without limitation the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot or a meeting of the Beneficial Holders, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, other electronic means or at a meeting of the Beneficial Holders. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver to the Voting Agent a Master Ballot that reflects the vote of such Beneficial Holders by **October 21, 2026 at 4:00 p.m. (prevailing Eastern Time)** or otherwise validate the Master Ballot in a manner acceptable to the Voting Agent.

4. With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Voting Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, if utilized, or other evidence of the vote whether in hard copy or by electronic direction, in your files for a period of one (1) year after the Effective Date of the Plan. You may be requested or ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) by the Debtor or the Court.

5. The Master Ballot **must** be returned to the Voting Agent so as to be **actually received** by the Voting Agent on or before the Voting Deadline. The Voting Deadline is **October 21, 2026 at 4:00 p.m. (prevailing Eastern Time).**

6. If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it will not be counted. Additionally, **the following votes will not be counted**:

   (a) any Master Ballot sent to the Debtor, the Debtor's agents (other than the Voting Agent), any indenture trustee, or the Debtor's financial or legal advisors;
   (b) any Master Ballot to the extent it is illegible or contains insufficient information to permit the identification of the holder of the Claim;
   (c) any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;
   (d) any Master Ballot sent by facsimile or any electronic means other than electronic mail;

(e) any Master Ballot that does not contain an original signature provided however, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;
(f) any unsigned Master Ballot; and/or
(g) any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

7. The method of delivery of Master Ballots to the Voting Agent is at the election and risk of each Nominee. Except as otherwise provided herein, such delivery will be considered made only when the Voting Agent **actually receives** the executed Master Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

8. If multiple Master Ballots are received from the same Nominee with respect to the same Claims voted on a Beneficial Holder Ballot prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

9. The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

10. **Please be sure to sign and date the Master Ballot**. You should indicate that you are signing the Master Ballot in your capacity as a trustee, common representative, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Voting Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.

11. If you are both the Nominee and the Beneficial Holder of any of the CUSIPs indicated on **Exhibit A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may return a Beneficial Holder Ballot or Master Ballot for such Claims and you must vote your entire Claims in the same Class to either to accept or reject the Plan and may not split your vote. Accordingly, a Beneficial Holder Ballot, other than a Master Ballot with the votes of multiple Beneficial Holders that partially rejects and partially accepts the Plan, will not be counted.

12. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtor and the Voting Agent shall use reasonable efforts to aggregate separate Claims held by a single creditor in a particular Class and treat such creditor as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan.

13. The following additional rules shall apply to Master Ballots:

(a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Nominee as of the Voting Record Date, as evidenced by the record and depository listings;
(b) Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record principal amount of the Claims held by such Nominee;
(c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Voting Agent will attempt to reconcile discrepancies with the Nominee;
(d) To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan

submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Claims; and

(e) For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that particular account, although the Voting Agent may be asked to adjust such principal amount to reflect the claim amount.

**Please return your Master Ballot promptly.**

If you have any questions regarding this Master Ballot, these Master Ballot Instructions or the procedures for voting, please contact the Voting Agent at (+1) 646-362-6336 or by email to tabulation@epiqglobal.com and referencing "Central Falls Master Ballot" in the subject line

| |
|---|
| **If the Voting Agent does not actually receive this Master Ballot on or before October 21, 2026 at 4:00 p.m. (prevailing Eastern Time), and if the Voting Deadline is not extended, your vote transmitted by this Master Ballot will not be counted.** |

**Exhibit A**

**Please check one CUSIP to which this Master Ballot pertains, (or clearly indicate such information directly on the Master Ballot or on a schedule thereto):**

| CLASS 3 – SERIES 2005 EXISTING BOND SECURED CLAIMS | |
|---|---|
| ☐ | CUSIP – 153457AW6 |
| ☐ | CUSIP – 153457AX4 |

**NOTICE REGARDING CERTAIN RELEASES, DISCHARGE, INJUNCTION, AND EXCULPATION PROVISIONS IN PLAN**

**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth below. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**

"**Exculpated Party**" means the Debtor, the Reorganized Debtor, the Bond Trustee, the Consenting Holders, and any of their present or former officers, directors, employees, advisors, attorneys, agents, successors or assigns.

"**Released Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Releasing Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Related Parties**" means, with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

**Section 11.01. Releases and Related Matters**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Releasing Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the**

**Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 11.01(a)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Restated Bond Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.02. Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan**

**Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 11.02 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, the Series 2026 Bonds, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.03. Injunction**

**In addition to any injunction provided in the Final DIP Order, except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims that have been released, discharged, or are Disallowed or subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.02 with respect to the Exculpated Parties) or the property to be distributed under the Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such right to setoff arises under a post-petition agreement with the Debtor or (i) an executory**

**contract or (ii) an unexpired lease that has been assumed by the Debtor as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against the Debtor, Reorganized Debtor, or the Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.01, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party or Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.01, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

# Exhibit 3-C

## (Form of Class 4 City Claims Ballot)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | Case No. 26-10628 |
| Debtor.[9] | |

**CITY CLAIMS BALLOT FOR VOTING TO ACCEPT OR REJECT THE CHAPTER 11 PLAN OF REORGANIZATION OF CENTRAL FALLS DETENTION FACILITY CORPORATION**

**CLASS 4 – CITY CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY EPIQ CORPORATE RESTRUCTURING, LLC ("EPIQ" OR THE "VOTING AGENT") BY OCTOBER 21, 2026 AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

Epiq Corporate Restructuring, LLC (the "Voting Agent") in its capacity as voting agent for and on behalf of Central Falls Detention Facility Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), is soliciting votes to accept or reject the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 11] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan") from the holders of certain Impaired Claims against the Debtor.

You are receiving this ballot (the "Ballot") because you are a Holder of a Claim against the Debtor as of September 18, 2026 (the "Voting Record Date"). Your Claim is classified under the Plan in Class 4 (City Claims) and, therefore, you have a right to vote to accept or reject the Plan. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 City Claims.

The rights and treatment for each Class are described in the Disclosure Statement. Copies of the Plan, the Disclosure Statement, the Order Approving the Disclosure Statement and Solicitation Procedures (the "Disclosure Statement Order"), and all pleadings and orders of the

---

[9] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) visiting, free of charge, the Debtor's restructuring website at https://dm.epiq11.com/Wyatt, or (b) calling the Debtor's restructuring hotline at (877) 549-0777 (toll-free U.S.) or +1 (503) 468-4667 (International).

Pursuant to the Disclosure Statement Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not mean that the Plan has been confirmed by the Bankruptcy Court. Rather, the Ballots will be counted and the Court will use the tabulation of the Ballots as part of its determination as to whether or not to confirm (approve) the Plan. This Ballot may not be used for any purpose other than for voting to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe that you have received this Ballot in error, please contact the Voting Agent **immediately** at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you submit this Ballot. You may wish to seek independent legal advice concerning the Disclosure Statement and the Plan and the classification and treatment of your Claim. If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**In order for your vote to be counted, this Ballot (as defined below) must be properly completed, signed and returned to the Voting Agent so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on October 21, 2026 at 4:00 p.m. unless such time is extended in writing by the Debtor.**

**IMPORTANT NOTICE FOR ALL CREDITORS**

**PLEASE TAKE NOTICE THAT IF THE PLAN IS CONFIRMED BY THE COURT, ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR (INCLUDING THOSE HOLDERS WHO ABSTAIN FROM VOTING ON OR WHO VOTE TO REJECT THE PLAN, AND THOSE HOLDERS WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE CONFIRMED PLAN AND THE TRANSACTIONS CONTEMPLATED THEREUNDER.**

**PLEASE READ THE ATTACHED VOTING INFORMATION**

**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

| |
|---|
| **PLEASE COMPLETE ITEMS 1, 2, and 3. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.** |

**Item 1.** **Amount of Claim.** The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder of a City Claim(s) in the aggregate unpaid amount set forth below:

| |
|---|
| **Amount**: $______________________________ |

**Item 2.** **Vote on the Plan.** Please vote either to accept or to reject the Plan with respect to your Claim below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan**.**

| |
|---|
| **Prior to voting on the Plan, please note the following:**<br><br>**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth at the end of this Ballot. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**<br><br>**The Disclosure Statement and the Plan must be referenced for a complete description of the releases, injunction, and exculpation provisions.** |

The undersigned Holder of the Class 4 City Claim set forth in Item 1 votes to (please check only one):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

**Your vote in Item 2 above will be applied as a vote in Class 4 – City Claims.**

**Item 3.** **Acknowledgments and Certification.** By signing this Ballot, the undersigned Holder of the Claim against the Debtor set forth in Item 1 acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Claim described in Item 1 as of the Voting Record Date.

| | |
|---|---|
| Name of Claimant: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (if different than Claimant): | ______________________________ |
| If authorized by Agent, Title of Agent: | ______________________________ |
| Street Address: | ______________________________ |
| Street Address (continued): | ______________________________ |
| City, State, Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| Email Address: | ______________________________ |
| Date Completed: | ______________________________ |

**If the Voting Agent does not actually receive this Ballot on or before October 21, 2026 at 4:00 p.m. (prevailing Eastern Time), and if the Voting Deadline is not extended, your vote will not be counted. For your vote to be counted, this Ballot must be properly completed, signed and returned so that it is actually received by the Voting Agent, by the Voting Deadline.**

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THIS BALLOT

13. The Debtor is soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **Please read the Plan and Disclosure Statement carefully before completing this Ballot.**

14. The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

15. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. If neither the "**accept**" nor "**reject**" box is checked in Item 2, or both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

16. You must vote all of your Claims within a Class either to accept or reject the Plan and may **not** split your vote. Further, if a holder has multiple Claims within a Class, the Debtor may, in its discretion, aggregate the Claims of any particular holder with multiple Claims within such Class for the purpose of distributing ballots and counting votes.

17. If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots.

18. This Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

19. To ensure that your Ballot is counted, you **must** complete and submit this Ballot by e-mail pursuant to the instructions set forth herein. Your Ballot must be returned to the Voting Agent so as to be actually received by the Voting Agent on or before the Voting Deadline. The Voting Deadline is October 21, 2026, at 4:00 p.m. (prevailing Eastern Time). **Ballots will not be accepted by facsimile or any other electronic means (other than via e-mail pursuant to the instructions set forth herein).**

20. The method of delivery of Ballot to the Voting Agent is at the election and risk of each holder of a Claim. Except as otherwise provided herein, such delivery will be considered made only when the Voting Agent actually receives the executed Ballot. In all cases, holders should allow sufficient time to assure timely delivery.

| **SUBMISSION OF BALLOT:** |
| --- |
| To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign (with an original signature) and return your Ballot via e-mail to tabulation@epiqglobal.com with "Central Falls City Ballot" in the subject line so that the City Ballot is actually received on or before the Voting Deadline. |

21. **Please be sure to sign and date your Ballot.**

22. If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it will not be counted. Additionally, **the following Ballots will not be counted**:

    (a) any Ballot received after the Voting Deadline, unless the Debtor grants an extension to the Voting Deadline with respect to such Ballot;

    (b) any Ballot that is illegible or contains insufficient information;

    (c) any Ballot cast by a Person or Entity that does not hold a Claim in Class 4;

    (d) any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan;

    (e) simultaneous duplicative Ballots voted inconsistently;

    (f) a creditor may not split their vote(s), and thus a Ballot that partially rejects and partially accepts that Plan shall not be counted;

    (g) any attempt to cast a vote on a form other than the official form sent by the Voting Agent;

    (h) any unsigned Ballot; or

    (i) any Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

**Please return your Ballot promptly.**

**If you have any questions regarding this Ballot, these Ballot Instructions or the procedures for voting, please contact the Voting Agent by email to Wyattinfo@epiqglobal.com.**

**THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**If the Voting Agent does not actually receive this Ballot on or before the Voting Deadline, which is October 21, 2026 at 4:00 p.m. (prevailing Eastern Time), and if the Voting Deadline is not extended, the vote transmitted by this Ballot will not be counted.**

## NOTICE REGARDING CERTAIN RELEASES, DISCHARGE, INJUNCTION, AND EXCULPATION PROVISIONS IN PLAN

**Article XI of the Plan contains releases, injunction and exculpation provisions, which are set forth below. If the Plan becomes effective, the releases, injunction, and exculpation provisions contained in Article XI of the Plan will become effective and binding on all creditors of the Debtor.**

"**Exculpated Party**" means the Debtor, the Reorganized Debtor, the Bond Trustee, the Consenting Holders, and any of their present or former officers, directors, employees, advisors, attorneys, agents, successors or assigns.

"**Released Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Releasing Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Related Parties**" means, with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

**Section 11.01. Releases and Related Matters**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Releasing Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the**

**Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 11.01(a)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Restated Bond Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.02. Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents,**

**the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 11.02 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, the Series 2026 Bonds, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.03. Injunction**

**In addition to any injunction provided in the Final DIP Order, except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims that have been released, discharged, or are Disallowed or subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.02 with respect to the Exculpated Parties) or the property to be distributed under the Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such right to setoff arises under a post-petition agreement with the Debtor or (i) an executory contract or (ii) an unexpired lease that has been assumed by the Debtor as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of**

**any kind on account of or in connection with or with respect to any such Claims released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against the Debtor, Reorganized Debtor, or the Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.01, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party or Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.01, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

# Exhibit 4

## (Form of Non-Voting Status Notice)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| | ) | |
| Debtor.[10] | ) | |

**NOTICE OF (I) NON-VOTING STATUS,**
**(II) HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN OF CENTRAL FALLS DETENTION FACILITY CORPORATION, AND (III) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE THAT:**

On July 10, 2026 (the "Petition Date"), Central Falls Detention Facility Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "CFDFC"), filed a voluntary petition for chapter 11 relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"). Additional information regarding the Debtor's business operations, financial structure, and the reasons for and objectives of this chapter 11 case is set forth in the *Declaration of Daniel S. Polsky in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 2] (the "First Day Declaration"), which is incorporated herein by reference.

**THE PLAN AND DISCLOSURE STATEMENT**

On the Petition Date, the Debtor filed the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 11] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan")[11] and the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation*, dated July 10, 2026 [Docket No. 12] (as may be amended, modified, or supplemented from time to time the "Disclosure Statement"), providing information with respect to the Plan.

**APPROVAL OF DISCLOSURE STATEMENT**

On [●], 2026, the Bankruptcy Court entered an order (a) approving the adequacy of the Disclosure Statement, (b) establishing procedures for solicitation and tabulation of votes to accept

---

10 The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

11 Capitalized terms used but not defined herein have the meaning given to such term in the Plan or Disclosure Statement.

or reject the Plan, and (c) fixing the date, time, and place for a confirmation hearing on the Plan (the "Disclosure Statement Order") [Docket No. [●]].

## PLAN CONFIRMATION HEARING

On **November 10, 2026, at 10:00 a.m., prevailing Eastern Time**, a hearing will be held before the Honorable John A. Dorsey, Jr., in the United States Bankruptcy Court for the District of Rhode Island, located at 380 Westminster Street, Sixth Floor, Providence, Rhode Island 02903, at which the Bankruptcy Court will consider confirmation of the Plan (the "Confirmation Hearing")

The Confirmation Hearing may be adjourned from time to time, without further notice. The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan, and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

## NON-VOTING STATUS

You are receiving this notice (this "Non-Voting Status Notice") because, under the terms of the Plan, you are a holder of Claim(s) in a Class that (a) is unimpaired by the Plan, (b) has been conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and (c) is not entitled to vote on the Plan (Class 1 - Other Priority Claims, Class 2 – Other Secured Claims, Class 5 – Unsecured Litigation Claims, Class 6 – Data Security Incident Class Action Claims and Class 7 – General Unsecured Claims). Accordingly, this Non-Voting Status Notice is being mailed to you for your information only.

If, notwithstanding this Non-Voting Status Notice, you believe that you may have a Claim or Interest against the Debtor that entitles you to vote on the Plan, you should immediately request the appropriate Ballot by contacting Epiq Corporate Restructuring, LLC ("Epiq" or the "Voting Agent") as provided below.

## COPIES OF THE PLAN AND DISCLOSURE STATEMENT

The Debtor will **not** provide you with copies of the Plan and Disclosure Statement. Copies of the Plan, the Disclosure Statement, the Disclosure Statement Order, and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

**PROPOSED TREATMENT OF CLAIMS AND INTERESTS**

The Plan presently provides for seven (7) different Classes of Claims. Under the Plan, Claims in Class 3 – Existing Bond Secured Claims and Class 4 – City Claims (the "Impaired Classes") are Impaired by, and entitled to receive a Distribution under, the Plan, and are the only holders of Claims and Interests entitled to vote to accept or reject the Plan. Claims in Class 1 - Other Priority Claims, Class 2 – Other Secured Claims, Class 5 – Unsecured Litigation Claims, Class 6 – Data Security Incident Class Action Claims and Class 7 – General Unsecured Claims (together, the "Unimpaired Classes") are unimpaired by the Plan, and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are, therefore, not entitled to vote.

**OBJECTIONS TO CONFIRMATION OF THE PLAN**

The deadline for filing objections to the Plan is **October 26, 2026, at 4:00 p.m. prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to confirmation of the Plan, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Court; (c) state the name and address of the objecting party and the amount and nature of the claim asserted by the objector against the Debtor; (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are **actually received** by the following parties on or before the Plan Objection Deadline:

vi. counsel to the Debtor, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th floor, Boston, MA 02199, Attn.: Jonathan W. Young (jonathan.young@troutman.com) and Hanna J. Redd (hanna.redd@troutman.com) and Troutman Pepper Locke LLP, 225 W. Randolph St., Suite 2600, Chicago IL 60606, Attn: Aaron C. Smith (aaron.smith@troutman.com);

vii. co-counsel for the Debtor, Partridge Snow & Hahn LLP, 40 Westminster Street, Suite 1100, Providence, RI 02903, Attn.: Daniel E. Burgoyne (dburgoyne@psh.com) and Matthew A. Lopes, Jr. (mlopes@psh.com);

viii. counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Ian A. Hammel (iahammel@mintz.com) and 919 Third Avenue, New York, NY 10022, Attn: Megan M. Preusker (mpreusker@mintz.com) and Kaitlin R. Walsh (KRWalsh@mintz.com) and Duffy & Sweeney, a Division of Stevens and Lee, 321 S. Main St., Suite 400, Providence, RI 02903, Attn: Robert M. Duffy (Robert.duffy@stevenslee.com);

ix. the Office of the United States Trustee, 5 Post Office Square, Suite 1000 Boston, Massachusetts 02109, Attn: Sandra Nicholls (Sandra.Nicholls@usdoj.gov); and

x. counsel to any appointed Official Committee of Unsecured Creditors.

## NOTICE OF ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED PROCEDURES

The Plan provides that all Executory Contracts and Unexpired Leases of the Debtor that are not (i) rejected by the Debtor prior to the Effective Date, (ii) subject to a motion seeking such rejection on or before the Effective Date, (iii) the subject of a pending objection Filed by the Debtor to a Proof of Claim filed by the counterparty to such Executory Contract and/or Unexpired Lease on account of Cure amounts alleged to be due thereunder, or (iv) identified in the List of Rejected Contracts, shall be deemed to have been assumed by the Debtor on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Bankruptcy Court. Any Cure amount due under any assumed Executory Contract or Unexpired Lease shall be payable by the Debtor or the Reorganized Debtor, as applicable, on and after the Effective Date in accordance with the Plan and Confirmation Order. In the event of any dispute pertaining to the assumption of an Executory Contract or Unexpired Lease, such dispute will be addressed pursuant to Section 6.01(d) of the Plan, which provides that the Bankruptcy Court will make a determination on the dispute before the assumption is effective, or the Debtor or Reorganized Debtor, as applicable, may settle any dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

## RELEASES, EXCULPATION, AND INJUNCTION

Article XI of the Plan contains releases, exculpation, and injunction provisions, which are set forth below:[12]

"**Exculpated Party**" means the Debtor, the Reorganized Debtor, the Bond Trustee, the Consenting Holders, and any of their present or former officers, directors, employees, advisors, attorneys, agents, successors or assigns.

"**Released Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Related Parties**" means, with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Releasing Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

[12] Any description, summary, or statement made in this notice concerning the Plan or the terms thereof is qualified in all respects by reference to the Plan. In the event of any inconsistency between this notice and the Plan, the provisions of the Plan shall govern and control.

**Section 11.01. Releases and Related Matters**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Releasing Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 11.01(a)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Restated Bond Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.02. Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 11.02 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, the Series 2026 Bonds, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.03. Injunction**

**In addition to any injunction provided in the Final DIP Order, except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims that have been released, discharged, or are Disallowed or subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.02 with respect to the Exculpated Parties) or the property to be distributed under the Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such right to setoff arises under a post-petition agreement with the Debtor or (i) an executory contract or (ii) an unexpired lease that has been assumed by the Debtor as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against the Debtor, Reorganized Debtor, or the Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.01, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party or Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first**

**determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.01, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

# Exhibit 5

## (Form of Confirmation Hearing Notice)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| Debtor.[13] | ) | |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN OF CENTRAL FALLS DETENTION FACILITY CORPORATION AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [●], 2026, the United States Bankruptcy Court for the District of Rhode Island (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (a) approving the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation*, including all exhibits and schedules thereto (as may be modified, amended or supplemented from time to time, the "Disclosure Statement") and the manner and form of notice of the hearing to consider the proposed Disclosure Statement; (b) establishing the voting record date, voting deadline, and other related dates in connection with confirmation of the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, (as may be modified, amended or supplemented from time to time, the "Plan")[14]; (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan; and (d) approving the manner and forms of notice and other related documents as they relate to the Debtor.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 10, 2026, at 10:00 a.m. (prevailing Eastern Time)**, before the Honorable John A. Dorsey, Jr., in the United States Bankruptcy Court for the District of Rhode Island, located at 380 Westminster Street, Sixth Floor, Providence, Rhode Island 02903.

**PLEASE BE ADVISED**: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTOR **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

[13] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

[14] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or Disclosure Statement, as applicable.

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**. The voting record date is **September 18, 2026** (the "Voting Record Date"), which is the date for determining which Holders of Claims are entitled to vote on the Plan.

**Voting Deadline**. The deadline for voting on the Plan is **October 21, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"). If you received a Solicitation Package including a Ballot and intend to vote on the Plan, you **must:** (a) follow the instructions carefully; (b) complete all of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtor's administrative agent, Epiq Corporate Restructuring LLC (the "Voting Agent") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote.**

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**ARTICLE XI OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE VOTING AGENT.**

**Plan Objection Deadline.** The deadline for filing objections to the Plan is **October 26, 2026, at 4:00 p.m. prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to confirmation of the Plan, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Court; (c) state the name and address of the objecting party and the amount and nature of the claim asserted by the objector against the Debtor; (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are **actually received** by the following parties on or before the Plan Objection Deadline:

xi. counsel to the Debtor, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th floor, Boston, MA 02199, Attn.: Jonathan W. Young (jonathan.young@troutman.com) and Hanna J. Redd (hanna.redd@troutman.com) and Troutman Pepper Locke LLP, 225 W. Randolph St., Suite 2600, Chicago IL 60606, Attn: Aaron C. Smith (aaron.smith@troutman.com);

xii. co-counsel to the Debtor, Partridge Snow & Hahn LLP, 40 Westminster Street, Suite 1100, Providence, RI 02903, Attn.: Daniel E. Burgoyne (dburgoyne@psh.com) and Matthew A. Lopes, Jr. (mlopes@psh.com);

xiii. counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Ian A. Hammel (iahammel@mintz.com) and 919 Third Avenue, New York, NY 10022, Attn: Megan M. Preusker (mpreusker@mintz.com) and Kaitlin R. Walsh (KRWalsh@mintz.com) and Duffy & Sweeney, a Division of Stevens and Lee**,** 321 S. Main St., Suite 400, Providence, RI 02903, Attn: Robert M. Duffy (Robert.duffy@stevenslee.com);

xiv. the Office of the United States Trustee, 5 Post Office Square, Suite 1000 Boston, Massachusetts 02109, Attn: Sandra Nicholls, Sandra.Nicholls@usdoj.gov); and

xv. counsel to any appointed Official Committee of Unsecured Creditors.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## NOTICE OF ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED PROCEDURES

The Plan provides that all Executory Contracts and Unexpired Leases of the Debtor that are not (i) rejected by the Debtor prior to the Effective Date, (ii) subject to a motion seeking such rejection on or before the Effective Date, (iii) the subject of a pending objection Filed by the Debtor to a Proof of Claim filed by the counterparty to such Executory Contract and/or Unexpired Lease on account of Cure amounts alleged to be due thereunder, or (iv) identified in the List of Rejected Contracts, shall be deemed to have been assumed by the Debtor on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Bankruptcy Court. Any Cure amount due under any assumed Executory Contract or Unexpired Lease shall be payable by the Debtor or the Reorganized Debtor, as applicable, on and after the Effective Date in accordance with the Plan and Confirmation Order. In the event of any dispute pertaining to the assumption of an Executory Contract or Unexpired Lease, such dispute will be addressed pursuant to Section 6.01(d) of the Plan, which provides that the Bankruptcy Court will make a determination on the dispute before the assumption is effective, or the Debtor or Reorganized Debtor, as applicable, may settle any dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. Copies of the Plan, the Disclosure Statement, the Order Approving the Disclosure Statement and Solicitation Procedures (the "Disclosure Statement Order"), and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen

Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

**The Plan Supplement**. The Debtor will file the Plan Supplement (as defined in the Plan) on or before **October 14, 2026**, and will serve notice on all parties that have filed requests for notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002, which will: (a) inform parties that the Debtor filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement. The Debtor is authorized to amend the Plan Supplement through the Effective Date in accordance with the terms of the Plan.

**BINDING NATURE OF THE PLAN:**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE, FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR VOTED TO REJECT THE PLAN.**

**RELEASES, EXCULPATION, AND INJUNCTION**

Article XI of the Plan contains releases, exculpation, and injunction provisions, which are set forth below:[15]

"**Exculpated Party**" means the Debtor, the Reorganized Debtor, the Bond Trustee, the Consenting Holders, and any of their present or former officers, directors, employees, advisors, attorneys, agents, successors or assigns.

"**Released Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

"**Releasing Parties**" means (i) the Debtor and its Estate; (ii) the Reorganized Debtor; (iii) the Consenting Holders; (iv) the Bond Trustee; (v) the City; and (vi) with respect to each of the foregoing Persons in clauses (i) through (vi), all Related Parties.

[15] Any description, summary, or statement made in this notice concerning the Plan or the terms thereof is qualified in all respects by reference to the Plan. In the event of any inconsistency between this notice and the Plan, the provisions of the Plan shall govern and control.

"**Related Parties**" means, with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

**Section 11.01. Releases and Related Matters**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Releasing Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 11.01(a)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud**

**(provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Restated Bond Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.02. Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 11.02 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws**

**governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, the Series 2026 Bonds, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 11.03. Injunction**

**In addition to any injunction provided in the Final DIP Order, except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims that have been released, discharged, or are Disallowed or subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.02 with respect to the Exculpated Parties) or the property to be distributed under the Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such right to setoff arises under a post-petition agreement with the Debtor or (i) an executory contract or (ii) an unexpired lease that has been assumed by the Debtor as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against the Debtor, Reorganized Debtor, or the Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.01, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Case, the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the Restructuring Support Agreement, the Definitive Documents, the Existing Bond Documents, the Existing Bonds, the Cash Collateral Orders, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party or Exculpated Party on the**

**Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Series 2026 Bonds, the Restated Bond Documents, the Chapter 11 Case, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.01, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

Dated: September [•], 2026

*/s/*________________________
Daniel E. Burgoyne (#7541)
Matthew A. Lopes, Jr. (#3877)
40 Westminster Street
Suite 1100
Providence, RI 02903
T: (401) 861-8254
F: (401) 861-8210
dburgoyne@psh.com
mlopes@psh.com

– and –

**TROUTMAN PEPPER LOCKE LLP**
Jonathan W. Young (*pro hac vice*)
Hanna J. Redd (*pro hac vice*)
111 Huntington Ave., 9th Floor
Boston, MA 02199
T: (617) 239-0100
F: (617) 227-4420
jonathan.young@troutman.com
hanna.redd@troutman.com

Aaron C. Smith (*pro hac vice*)
225 W. Randolph St., Suite 2600
Chicago, IL 60606
T: (312) 443-700
F: (312) 443-0336
aaron.smith@troutman.com

*Counsel to the Debtor and Debtor in Possession*

**Exhibit 6**

**(Form of Plan Supplement Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, | ) | Case No. 26-10628 |
| d/b/a Donald W. Wyatt Detention Facility | ) | |
| Debtor.[16] | ) | |

**NOTICE OF FILING PLAN SUPPLEMENT**

**PLEASE TAKE NOTICE THAT** on [●], 2026, the United States Bankruptcy Court for the District of Rhode Island (the "Court") entered an order [Docket No. ●] (the "Disclosure Statement Order"): (a) approving the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation*, including all exhibits and schedules thereto (as may be modified, amended or supplemented from time to time, the "Disclosure Statement") and the manner and form of notice of the hearing to consider the proposed Disclosure Statement; (b) establishing the voting record date, voting deadline, and other related dates in connection with confirmation of the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, (as may be modified, amended or supplemented from time to time, the "Plan")[17]; (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan; (d) approving notice and objection procedures for the assumption or rejection of executory contracts and unexpired leases; (e) approving the manner and forms of notice and other related documents as they relate to the Debtor; and (f) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT**, as contemplated by the Plan and the Disclosure Statement Order, the Debtor filed the Plan Supplement with the Court on September 15, 2026, [Docket No. ●]. The Plan Supplement contains the following documents (each as defined in the Plan): [____________]. The Debtor, with the consent of the Bond Trustee, is authorized to amend the Plan Supplement Documents through the Effective Date without further notice to parties in interest; *provided*, that the Debtor shall give notice to any party to an Executory Contract or Unexpired Lease that is added or removed from the List of Rejected Contracts.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 6, 2026, at 1:30 p.m. (prevailing Eastern Time)**, before the Honorable John A. Dorsey, Jr., in the

---

[16] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.

[17] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or Disclosure Statement, as applicable.

United States Bankruptcy Court for the District of Rhode Island, located at 380 Westminster Street, Sixth Floor, Providence, Rhode Island 02903.

**PLEASE BE ADVISED**: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTOR **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

ARTICLE XI OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE VOTING AGENT.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **September 22, 2026, at 4:00 p.m. prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to confirmation of the Plan, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party and the nature and amount of Claims held or asserted by such party against the Debtor's estate or property; (d) provide the basis for objection and specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtor, would obviate such objection; and (e) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are **actually received** by the following parties on or before the Plan Objection Deadline:

xvi. counsel to the Debtor, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th floor, Boston, MA 02199, Attn.: Jonathan W. Young (jonathan.young@troutman.com) and Hanna J. Redd (hanna.redd@troutman.com) and Troutman Pepper Locke LLP, 225 W. Randolph St., Suite 2600, Chicago IL 60606, Attn: Aaron C. Smith (aaron.smith@troutman.com);

xvii. co-counsel for the Debtor, Partridge Snow & Hahn LLP, 40 Westminster Street, Suite 1100, Providence, RI 02903, Attn.: Daniel E. Burgoyne (dburgoyne@psh.com) and Matthew A. Lopes, Jr. (mlopes@psh.com);

xviii. counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Ian A. Hammel (iahammel@mintz.com) and 919 Third Avenue, New York, NY 10022, Attn: Megan M. Preusker (mpreusker@mintz.com) and Kaitlin R. Walsh (KRWalsh@mintz.com) and Duffy & Sweeney, a Division of Stevens and Lee, 321 S. Main St., Suite 400, Providence, RI 02903, Attn: Robert M. Duffy (Robert.duffy@stevenslee.com);

xix. the Office of the United States Trustee, 5 Post Office Square, Suite 1000 Boston, Massachusetts 02109, Attn: Sandra Nicholls (Sandra.Nicholls@usdoj.gov); and

xx. counsel to any appointed Official Committee of Unsecured Creditors.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. Copies of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Plan Supplement, and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Debtor's solicitation and administrative agent ("Epiq" or the "Voting Agent") by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

**BINDING NATURE OF THE PLAN:**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE, FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR VOTED TO REJECT THE PLAN.**

Dated: September [•], 2026

**PARTRIDGE SNOW & HAHN LLP**

*/s/* ________________________________
Daniel E. Burgoyne (#7541)
Matthew A. Lopes, Jr. (#3877)
40 Westminster Street
Suite 1100
Providence, RI 02903
T: (401) 861-8254
F: (401) 861-8210
dburgoyne@psh.com
mlopes@psh.com

– and –

**TROUTMAN PEPPER LOCKE LLP**
Jonathan W. Young (*pro hac vice*)
Hanna J. Redd (*pro hac vice*)
111 Huntington Ave., 9th Floor
Boston, MA 02199
T: (617) 239-0100
F: (617) 227-4420
jonathan.young@troutman.com
hanna.redd@troutman.com

Aaron C. Smith (*pro hac vice*)
225 W. Randolph St., Suite 2600
Chicago, IL 60606
T: (312) 443-700
F: (312) 443-0336
aaron.smith@troutman.com

*Counsel to the Debtor and Debtor in Possession*

**Exhibit 7**

**Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CENTRAL FALLS DETENTION FACILITY CORPORATION, d/b/a Donald W. Wyatt Detention Facility | ) | Case No. 26-10628 |
| Debtor.[18] | ) | |

**NOTICE OF (I) SOLICITATION AND VOTING PROCEDURES, (II) THE OBJECTION DEADLINE, AND (III) THE CONFIRMATION HEARING WITH RESPECT TO THE CHAPTER 11 PLAN OF CENTRAL FALLS DETENTION FACILITY CORPORATION**

**TO ALL HOLDERS OF CLAIMS:**

1. **Bankruptcy Court Approval of the Disclosure Statement and Solicitation Procedures.** On [●], 2026, the United States Bankruptcy Court for the District of Rhode Island (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order")[19] that among other things, (a) approved the *Disclosure Statement for Chapter 11 Plan of Central Falls Detention Facility Corporation*, including all exhibits and schedules thereto (as may be modified, amended or supplemented from time to time, the "Disclosure Statement") filed in support of the *Chapter 11 Plan of Central Falls Detention Facility Corporation*, (as may be modified, amended or supplemented from time to time, the "Plan"), as containing adequate information, as required under section 1125(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and (b) authorized the Central Falls Detention Facility Corporation (the "Debtor") to solicit votes with regard to acceptance or rejection of the Plan, approving procedures for soliciting, receiving, and tabulating votes on the Plan; and (c) approved the manner and forms of notice and other related documents as they relate to the Debtor.

2. **Voting Record Date**. The voting record date for determining which Holders of Claims are entitled to vote on the Plan date is **September 18, 2026.**

3. **Voting Deadline**. If you hold a claim against the Debtor as of the Voting Record Date and are entitled to vote to accept or reject the Plan, you have received a Ballot or a Master Ballot and ballot instructions appropriate for your Claim(s). For your vote to accept or reject the Plan to be counted, you must follow the appropriate ballot instructions, complete all required information on the Ballot or Master Ballot, execute and return the completed Ballot or Master

[18] The last four digits of the Debtor's federal employer identification number are 5439. The address of the Debtor is 950 High Street, Central Falls, RI 02863.
[19] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement Order or Disclosure Statement, as applicable.

Ballot so that it is **actually received in accordance with the ballot instructions on the ballot or Master Ballot by 4:00 p.m. (prevailing Eastern Time) on October 21, 2026, at 4:00 p.m. prevailing Eastern Time (the "Voting Deadline")**. Any failure to follow the ballot instructions included with the Ballot or Master Ballot may disqualify your Ballot or Master Ballot and your vote.

4. **Objections to the Plan.** The Bankruptcy Court has established **October 26, 2026, at 4:00 p.m. prevailing Eastern Time** as the last date and time for filing and serving objections to the Plan (the "Plan Objection Deadline"). Any objections to confirmation of the Plan, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name of the objecting party and the nature and amount of the Claim held by such party; (d) state with particularity the basis and nature of any objection, and if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, together with proof of service, with the Bankruptcy Court, and served so that they are actually received by the parties set forth in paragraph 11 of the Disclosure Statement Order (collectively, the "Notice Parties") no later than the Plan Objection Deadline.

5. **Replies to Objections to the Plan.** The Bankruptcy Court has established **November 2, 2026, at 4:00 p.m. prevailing Eastern Time** as the last date and time for the Debtor, or any party supposing the Plan, to file and serve on the Notice Parties a response (each a "Reply") to any objection to confirmation of the Plan.

6. **Confirmation Hearing.** A hearing to consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 10, 2026, at10:00 a.m. (prevailing Eastern Time)**, before the Honorable John A. Dorsey, Jr., in the United States Bankruptcy Court for the District of Rhode Island, located at 380 Westminster Street, Sixth Floor, Providence, Rhode Island 02903. The Confirmation Hearing may be adjourned from time to time, without further notice other than an adjournment announced in open court at the Confirmation Hearing, or any subsequent Confirmation Hearing.

7. **Inquiries.** For holders of Claims, Epiq Corporate Restructuring, LLC (the "Voting Agent") will answer questions regarding the procedures and requirements for voting to accept or reject the Plan, provide additional copies of all materials, and oversee the voting tabulation. Copies of the Plan, the Disclosure Statement, the Order Approving the Disclosure Statement and Solicitation Procedures (the "Disclosure Statement Order"), and all pleadings and orders of the Court may be obtained (i) free of charge by: (a) visiting the Debtor's restructuring website maintained by the Voting Agent at https://dm.epiq11.com/Wyatt, (b) writing to Central Falls Detention Facility Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, and (c) emailing Wyattinfo@epiqglobal.com; or (ii) for a fee via through PACER (Public Access to Court Electronic Records) at https://www.rib.uscourts.gov. If you should have any questions or would like to obtain hard copies of any documents, please feel free to contact Epiq Corporate Restructuring, LLC, the Voting Agent by: (a) calling the Voting Agent at (877) 549-0777 or +1 (503) 468-4667; (b) visiting, free of charge, the Debtor's restructuring website at: https://dm.epiq11.com/Wyatt; or (c) emailing Wyattinfo@epiqglobal.com.

8. **Release, Exculpation and Injunction Language in the Plan**. Please be advised that Article XI of the Plan contains releases, exculpation, and injunction provisions. You are advised to carefully review and consider the Plan, including the release, exculpation, and injunction provisions, as your rights may be affected.