# EXHIBIT A – SETTLEMENT AGREEMENT

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement") is between **Jacob Hellested** ("Representative Plaintiff"), individually and on behalf of the Settlement Class (as defined below), and the **Central Falls Detention Facility Corporation** ("CFDFC") (together with Representative Plaintiff, the "Settling Parties"; each a "Settling Party"). This Settlement Agreement is subject to Bankruptcy Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, settle, and discharge the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## 1. RECITALS

1.1. The CFDFC is a public corporation authorized by the State of Rhode Island under the Act Creating Municipal Detention Facility Corporations. It owns and operates a maximum security detention facility in Central Falls, Rhode Island ("Facility"). In the course of its operations, CFDFC held certain personally identifiable information ("PII" or "Private Information") of certain detainees, staff (current, former, and prospective), and vendors.

1.2. This Settlement Agreement relates to a cyber incident at the CFDFC on or about November 2, 2023 (the "Data Incident"). Based upon its investigation, CFDFC determined that certain PII was exfiltrated by the threat actor responsible for the Data Incident and posted on the dark web. CFDFC provided various notifications and credit monitoring offers to individuals CFDFC identified as having been impacted. Potentially impacted information varied, but may have included some combination of the following: name, address, medical information, Social Security number, date of birth, and/or other identifying information (collectively, "Private Information").

1.3. At the time of the Data Incident, the CFDFC did not have a cyberinsurance policy.

1.4. On July 19, 2024, Representative Plaintiff filed with the U.S. District Court for the District of Rhode Island (the "District Court") a putative class action complaint (the "Complaint") commencing the civil litigation styled *Hellested, et al. v. Central Falls Detention Facility Corporation*, to which case number 1:24-CV-00284-MRD has been assigned (the "Litigation"). The Settling Parties engaged in initial discovery, and then turned their focus toward a potential early resolution of the Litigation.

1.5. On July 10, 2026 (the "Petition Date"), the CFDFC, as debtor and debtor-in-possession, filed with the U.S. Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") a voluntary petition seeking relief pursuant to chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code"), which has been assigned case number 26-10628 (generally, the "Bankruptcy Case").

1.6. Pursuant to the terms agreed to and set out below, this Settlement Agreement resolves all actions, proceedings, and claims asserted, or that could be or have been asserted, against CFDFC arising out of or related to the Data Incident, as set forth in the release contained herein, by or on behalf of members of the Settlement Class defined herein, but excluding the rights of class members who opt out from the Settlement Class pursuant to the terms and conditions herein.

1.7. Representative Plaintiff believes that his claims asserted in the Litigation, as set forth in his Complaint filed in the Litigation, have merit. Representative Plaintiff and Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against the CFDFC through additional motion practice, trial, and potential appeals, as well as delays that may arise from the pending Bankruptcy Case. They have also considered the uncertain outcome and risk of further litigation, particularly

in an area of law that remains in a state of development, and thus brings with it a level of uncertainty, as well as the difficulties and delays inherent in such litigation. Settlement Class Counsel are highly experienced in class action litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. Settlement Class Counsel have thoroughly examined the law and facts relating to the matters at issue, the claims of Representative Plaintiff and the Settlement Class, and CFDFC's potential defenses (as well as the CFDFC's current financial condition), including conducting independent investigation on discovery-related matters, as well as an assessment of the merits of expected arguments in a motion for class certification, motions for summary judgment, and, perhaps ultimately, a trial on the merits. Based on this analysis and investigation, Representative Plaintiff and Settlement Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Settlement Class is afforded important and certain benefits as expediently as possible. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of Representative Plaintiff and the Settlement Class.

1.8. CFDFC denies each and all of the claims and contentions alleged against it in the Litigation as CFDFC maintains that it was a victim of a criminal cyberattack. CFDFC denies all wrongdoing or liability associated with the Data Incident alleged, or which could be or have been alleged, in the Litigation. Nonetheless, CFDFC has concluded that succeeding in the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement, subject to Bankruptcy Court approval as necessary and appropriate.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among Representative Plaintiff, individually and on behalf of the Settlement Class, and CFDFC

that, subject to the approval of the Bankruptcy Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice and without costs except as to those Settlement Class Members who timely opt out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

## 2. DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

2.1 "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement Agreement to the Settlement Class, Settlement Claims Administration, and otherwise administering and carrying out the terms of this Settlement Agreement.

2.2 "Agreement" or "Settlement Agreement" or "Settlement" means this Class Action Settlement Agreement and Release.

2.3 "Approved Settlement Claims" means valid Settlement Claims approved by the Settlement Claims Administrator or found to be valid, as set forth below.

2.4 "Attorneys' Fees and Expenses Award" means such funds as may be awarded by the Bankruptcy Court to Settlement Class Counsel for their fees, costs, and expenses in connection with the Litigation.

2.5 "Award" means the amount remitted by the Settlement Claims Administrator out of the Settlement Fund to each Settlement Class Member for Approved Settlement Claims, as provided in Paragraph 4.2 of this Settlement Agreement.

2.6 "Settlement Claims Administration" means the processing and payment of claims received from members of the Settlement Class by the Settlement Claims Administrator.

2.7 "Settlement Claims Administrator" means Epiq, a company experienced in administering class action claims generally and specifically those of the type provided for in this Litigation.

2.8 "Settlement Claims Deadline" means the deadline by which Settlement Class Members must submit any valid Settlement Claims, which, subject to Bankruptcy Court approval, the Settling Parties propose be no less than 90 days after the Notice Deadline. Settlement Claims submitted by mail must be postmarked by the Settlement Claims Deadline and, if filed electronically, must be submitted by the Settlement Claims Deadline. Settlement Claims submitted after the Settlement Claims Deadline will not be timely and will not qualify for approval and will be rejected.

2.9 "Settlement Claim Form" means the claim form to be used by members of the Settlement Class to submit a Settlement Claim, substantially in the form attached as **Exhibit** C to the preliminary approval filing.

2.10 "Claims Period" means the time for Settlement Class Members to submit Settlement Claims, running from the Notice Deadline through the Settlement Claims Deadline, which the Settling Parties propose be no less than 90 days, to be set by the Preliminary Approval Order.

2.11 "Settlement Class Notice" means the notice of settlement that is contemplated by this Settlement Agreement, and which may include, without limitation, a long notice, summary notice, publication notice, and informational release substantially similar to that attached hereto as **Exhibits B-1 to B-4** to the preliminary approval filing as approved by the Bankruptcy Court.

2.12 "Documented Time" means time spent by a Settlement Class Member remedying issues related to the Data Incident with submission of a claim and supporting documentation.

Documented Time may include: (i) changing passwords on potentially impacted accounts; (ii) monitoring for or investigating suspicious activity on potentially impacted financial or other accounts; (iii) contacting a financial institution or other entity to discuss suspicious activity; (iv) signing up for identity theft or fraud monitoring; or (v) researching information about the Data Incident, its impact, or how to protect themselves from harm due to the Data Incident.

2.13 "Effective Date" means the first business day after which all of the events and conditions specified in Paragraph 2.14 below for the Final Approval Order to become Final have occurred or have been met; provided, however, that no Party has exercised its right of termination as provided for in this Agreement.

2.14 "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Bankruptcy Court; (ii) the Bankruptcy Court has entered a Final Approval Order and Judgment (as those terms are defined herein); (iii) the time to appeal or seek permission to appeal from the Final Approval Order and Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Final Approval Order and Judgment have been affirmed in their entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review; and (iv) the Bankruptcy Court has entered an Order that approves and confirms CFDFC's proposed chapter 11 plan of reorganization and such plan of reorganization is consummated and effective, such that a "Notice of Plan Effective Date" or comparable notice has been filed in the Bankruptcy Case. Notwithstanding the above, any order modifying or reversing any Attorneys' Fees and Expenses Award or Service Award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

2.15 "Final Approval Hearing" means the final hearing to be conducted by the

Bankruptcy Court in connection with the determination of the fairness, adequacy and reasonableness of this Settlement Agreement and the proposed settlement of the Litigation.

2.16 "Final Approval Order and Judgment," "Final Approval Order," or "Judgment" means the Bankruptcy Court's Final Approval Order and Judgment, which, among other things, approves on a final basis this Settlement Agreement and the Settlement as fair, adequate, and reasonable, enters the Judgment, authorizes and requires dismissal of the Litigation with prejudice, and confirms the final certification of the Settlement Class.

2.17 "Funding Date" means the date, which is no later than thirty (30) days after entry of the Final Approval Order and Judgment in which CFDFC will cause a cash payment to be made in the amount of $100,000 into a Qualified Settlement Fund to be used to fund all costs of Approved Settlement Claims for Documented Losses and Lost Time, and the Service Award.

2.18 "Notice Deadline" means the date by which the Notice Program shall commence, which the Settling Parties propose be thirty (30) days after the entry of the Preliminary Approval Order.

2.19 "Notice Program" means the notice program described in Section 6.

2.20 "Objection Deadline" means the date by which Settlement Class Members must submit any objection to the Settlement Agreement. The Objection Deadline, i.e., the date by which the objection must be postmarked if mailed and/or filed with the Court, shall be twenty-one (21) days prior to the Final Approval Hearing, subject to Bankruptcy Court approval and as may be extended or modified by the Settling Parties.

2.21 "Opt-Out" means a Settlement Class Member: (i) who timely submits a properly completed and executed Request for Exclusion; (ii) who does not rescind that Request for Exclusion before the Opt-Out Deadline; and (iii) as to which there is not a successful challenge

to the Request for Exclusion.

2.22 "Opt-Out Deadline" means the date by which Settlement Class Members must postmark their Request for Exclusion in order for it to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Deadline shall be twenty-one (21) days prior to the Final Approval Hearing, subject to Bankruptcy Court approval and as may be extended or modified by the Settling Parties.

2.23 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective counsel, spouses, heirs, affiliates, attorneys, predecessors, successors, representatives, or assignees.

2.24 "Preliminary Approval Order" means the Bankruptcy Court's Order granting, among other things, conditional certification of the Settlement Class, preliminary approval of this Settlement Agreement and the settlement, and approval of the form and method of Class Notice.

2.25 "Released Claims" means any and all claims, defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, remedies, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including but not limited to monetary sanctions or damages for contempt, injunctive or declaratory relief, mandamus, rescission, general, direct, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, statutory damages, penalties, interest, attorneys' fees, costs, or expenses, whether known or unknown (including Unknown Claims), suspected or unsuspected, existing or potential, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured,

that in any way concern, arise out of, or relate to the Data Incident, any legal, factual, or other allegations in the Litigation or the Bankruptcy Case, or any theories of recovery that were, or could have been, raised at any point in the Litigation or the Bankruptcy Case. For the avoidance of doubt, Released Claims are to be construed broadly and include, without limitation, any claims that a Settlement Class Member may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.* and any similar statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, mandamus, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. "Released Claims" does not include claims relating to the enforcement of the Settlement and shall not include any claims of Settlement Class Members who have timely excluded themselves from the Settlement Class pursuant to Section 7. "Released

Claims" is not intended to, does not, and shall not be deemed to release any claims that do not concern, arise out of, or relate to the Data Incident, any legal, factual, or other allegations in the Litigation or the Bankruptcy Case, or any theories of recovery that were, or could have been, raised at any point in the Litigation or the Bankruptcy Case.

2.26 "Released Parties" means CFDFC, its predecessors, successors, assigns, parents, subsidiaries, divisions, related or affiliated entities, and the current and former directors, trustees, officers, managers, shareholders, bondholders, principals, board members, employees, contractors, attorneys, insurers, reinsurers, subrogees, and assigns of each of the foregoing entities, including, as applicable, CFDFC as a debtor, debtor-in-possession, and reorganized debtor. Each of the Released Parties may be referred to individually as a "Released Party." The Settling Parties expressly acknowledge that all Released Parties are intended beneficiaries of this Settlement Agreement.

2.27 "Request for Exclusion" means a fully completed and properly executed written request that is timely delivered to the Settlement Claims Administrator by a Settlement Class Member under Section 7 of this Settlement Agreement and: (a) if mailed, is postmarked on or before the Opt-Out Deadline; or (b) if it is submitted through the Settlement Website, it is submitted on or before the Opt-Out Deadline. For a Request for Exclusion to be properly completed and executed, subject to approval by the Bankruptcy Court, it must: (a) state the Settlement Class Member's full name, address, and telephone number; (b) state the name and number of the Litigation and the Bankruptcy Case; (c) contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation or the Bankruptcy Case, such as a trustee, guardian or person acting under a power of

attorney; and (d) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one unique request is required for every Settlement Class Member seeking exclusion.

2.28 "Service Award" means such funds as may be awarded by the Bankruptcy Court to the Representative Plaintiff for his service as Representative Plaintiff. CFDFC agrees not to oppose any Service Award in the amount of $2,000 or less. Any such Service Award shall be paid from the Settlement Fund.

2.29 "Settlement Class Counsel" means: Law Offices of Peter N. Wasylyk (Peter N. Wasylyk) and Mason & Perry LLP (Gary E. Mason).

2.30 "Settlement Class Member(s)" means all persons meeting the definition of the Settlement Class set forth in Paragraph 3.1 who did not timely opt out of the Settlement pursuant to Section 7.

2.31 "Settlement Fund" means the $100,000 that CFDFC shall cause to be paid pursuant to Section 4 of this Agreement.

2.32 "Settling Parties" means, collectively, CFDFC and Representative Plaintiff, individually and on behalf of the Settlement Class.

2.33 "Settlement Website" means a website, the URL for which to be mutually selected by the Settling Parties, which will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, as well as provide the Settlement Class Members with the ability to submit a Settlement Claim online.

2.34 "Unknown Claims" means any and all Released Claims that any Representative Plaintiff or Settlement Class Member does not know or suspect to exist in his or her favor as of

the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiff and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Representative Plaintiff and Settlement Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

2.35 All time periods described in terms of "days" shall be in calendar days unless otherwise expressly stated.

## 3 SETTLEMENT CLASS

3.1 For settlement purposes only, the Settling Parties agree that the Bankruptcy Court should certify the following Settlement Class defined as:

> **All individuals in the United States whose private information was maintained on Central Falls Detention Facility Corporation's ("CFDFC") computer systems and who were identified by the CFDFC as having certain of that private information taken from the CFDFC during the CFDFC's November 2023 Data Incident.**

3.2 Excluded from the Settlement Class are the District Court and Bankruptcy Court and all respective members of the District Court's and Bankruptcy Court's staff, and persons who timely and validly request exclusion from the Settlement Class.

3.3 For settlement purposes only, Representative Plaintiff shall also seek, and CFDFC will not oppose, the appointment of Settlement Class Counsel as counsel for the Settlement Class and appointment of Representative Plaintiff.

**4 <u>SETTLEMENT CONSIDERATION AND BENEFITS</u>**

4.1 *CFDFC's Obligations.* In consideration for the releases contained in this Settlement Agreement, and as a direct result of the Litigation, and without admitting liability for any of the alleged acts or omissions alleged in the Litigation, and in the interests of minimizing the costs inherent in any litigation, CFDFC will perform the following:

4.2 CFDFC shall cause to be funded a Qualified Settlement Fund ("<u>Settlement Fund</u>") in the total amount of $100,000. The Settlement Claims Administrator shall pay all Approved Settlement Claims and the Service Award from the Settlement Fund. If the Bankruptcy Court does not grant final approval of the Settlement Agreement or the Settlement does not become Final pursuant to Paragraph 2.14, any remaining portion of the Settlement Fund shall promptly be returned to CFDFC. The Settlement Fund represents the total extent of the Released Parties' monetary obligations under this Settlement Agreement, notwithstanding those obligations under Paragraphs 4.3(d), 6.1, and 11.1. The Settlement Claims Administrator shall be responsible for all tax filings with respect to the Settlement Fund. The timing of payment by CFDFC into the Settlement Fund is also contingent upon the receipt of the necessary documentation from the Settlement Claims Administrator by the date that the Preliminary Approval Order or Final

Approval Order is issued. If CFDFC does not receive this documentation, the Settlement Fund payment shall be made within 30 days after CFDFC receives this documentation.

4.3 ***Monetary Settlement Benefits***. Settlement Class Members may make a Settlement Claim for reimbursement of documented ordinary losses, lost time, and/or reimbursement for extraordinary losses from the Settlement Fund, as follows:

a. ***Documented Out-of-Pocket Losses***. Compensation for unreimbursed losses fairly traceable[1] to the Data Incident, up to a total of $5,000 per claimant, upon submission of a claim form and supporting third-party documentation, such as the out-of-pocket expenses incurred as a result of the Data Incident, including but not limited to: (x) bank fees, credit and debit card cancellation or replacement fees, declined payment fees, overdraft fees, returned check fees, costs to replace a driver's license, state identification card or Social Security number, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel; and/or (y) actual, documented, and unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of the Settlement Class Member's personal information ("Documented Out-of-Pocket Losses"). Such Documented Out-of-Pocket Losses must have occurred between November 2, 2023, and the Bankruptcy Court's entry of the Preliminary Approval Order. The Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, any such loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

Settlement Class Members who elect to submit a claim for reimbursement of Documented Out-of-Pocket Losses must provide to the Settlement Claims Administrator supporting information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) third-party documentation supporting their claim; and (3) a brief description of the documentation describing the nature of the Documented Out-of-Pocket Loss, if the nature of the loss is not apparent from the documentation alone.

---

[1] **"Fairly traceable"** shall mean that the claimed loss, expense, or injury bears a direct and logical connection to the Data Incident, such that it is more likely than not that the Data Incident was a substantial factor in causing the claimed harm. A loss will not be considered "fairly traceable" if it is remote, speculative, or attributable primarily to other causes unrelated to the Data Incident. Claimants need not prove with absolute certainty that the Data Incident was the sole cause of their loss, but they must demonstrate a reasonable basis, supported by documentation or other reliable evidence, to show that the Data Incident contributed materially to the claimed loss, expense, or injury.

The Settlement Claims Administrator shall have reasonable discretion to determine whether any claimed loss is fairly traceable to the Data Incident. Settlement Class Members with Documented Out-of-Pocket Losses must submit documentation supporting their claims. This can include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

b. ***Attested Time Spent***. A Settlement Class Member who spent time remedying issues related to the Data Incident can receive reimbursement for up to four (4) hours of lost time on an hourly basis of $20 per hour for time spent responding to the Data Incident. Reimbursement requires attestation that time was spent by Settlement Class Members as a result of the Data Incident and a brief written description of how the time was spent related to the Data Incident. Each Settlement Class Member who submits an attestation form will be presumed to have lost at least one hour of time spent as a result of the Data Incident, but may submit an attestation seeking up to the maximum four (4) hours. Time spent may include: (i) changing passwords on potentially impacted accounts; (ii) monitoring for or investigating suspicious activity on potentially impacted medical, financial, or other accounts; (iii) contacting a financial institution or other provider to discuss suspicious activity; (iv) signing up for identity theft or fraud monitoring; or (v) researching information about the Data Incident, its impact, or how to protect themselves from harm due to the Data Incident.

c. If, after the Effective Date, the total dollar value of Approved Claims for Documented Out-of-Pocket Losses and Attested Time Spent exceeds the amount remaining in the Settlement Fund necessary to cover Approved Claims and the Service Award, the payment amount for Approved Claims (but not the Service Award) shall be reduced *pro rata* among all Settlement Class Members who submitted Approved Settlement Claims. Alternatively, if there is a portion of the Settlement Fund remaining after payment of Approved Settlement Claims and the Service Award, this "Net Settlement Amount" will be promptly returned to CFDFC.

d. ***Credit Monitoring***. CFDFC will provide a code for five (5) years of 1-bureau credit monitoring to those Settlement Class Members who enroll in credit monitoring services during the claims period through the process established by the Settlement Claims Administrator, to be paid for by CFDFC outside of the Settlement Fund.

## 5. PRELIMINARY SETTLEMENT APPROVAL AND FINAL APPROVAL

5.1 No later than August ●, 2026, CFDFC shall file with the Bankruptcy Court a

motion seeking entry of a Preliminary Approval Order ("Motion for Preliminary Approval"). A proposed Preliminary Approval Order shall be submitted with the Motion for Preliminary Approval and shall be in a form reasonably acceptable to the Settling Parties, in their reasonable discretion. The Motion for Preliminary Approval shall request that the Bankruptcy Court, *inter alia*:

a) To the extent that the District Court Litigation is not stayed by operation of 11 U.S.C. § 362, stay or continue to stay all proceedings in the Litigation other than those related to approval of the Settlement Agreement;

b) Preliminarily certify the Settlement Class for settlement purposes only;

c) Preliminarily approve the terms of the Settlement Agreement as fair, adequate, and reasonable;

d) Appoint Representative Plaintiff as the Settlement Class representative for settlement purposes only;

e) Appoint Settlement Class Counsel as counsel for the Settlement Class for settlement purposes only;

f) Approve the Notice Program, as set forth in Section 6 herein and set the date for the Settlement Claims Deadline;

g) Approve the form and contents of a long form notice ("Long Notice") to be posted on the Settlement Website substantially similar to those used in connection with the settlement of similar class actions, and a Summary Notice to be sent via First Class Mail to Settlement Class Members ("Summary Notice"), substantially similar to those used in connection with the settlement of similar class actions, which together shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or submit a Request for Exclusion from the settlement, the process and instructions for filing a Settlement Claim Form, and the date, time and place of the Final Approval Hearing;

h) Approve a Settlement Claim Form substantially similar to those used in connection with the settlement of similar class actions;

i) Appoint Epiq as the Settlement Claims Administrator;

j) Set deadlines for Objections, Requests for Exclusion, a motion for attorneys' fees, and briefing in support of final approval; and

k) Schedule the Final Approval Hearing on a date at least 120 days from the date of entry of the Preliminary Approval Order.

5.2 Settlement Class Counsel and CFDFC shall request that the Court hold a Final Approval Hearing after Class Notice is completed and at least 30 days after the Opt-Out Deadline and Objection Deadline, and at least 120 days after the date of entry of the Preliminary Approval Order.

5.3 The Settling Parties shall move for final approval on or before the deadline set by the Bankruptcy Court.

5.4 The proposed Final Approval Order and Judgment shall be negotiated in good faith by the Settling Parties and filed with the motion for final approval, and shall, among other things, request the following relief:

a) Determine the Settlement Agreement is fair, adequate, and reasonable;

b) Finally certify the Settlement Class for settlement purposes only;

c) Determine that the Notice Program satisfies applicable procedural and legal standards, including Federal Rule of Civil Procedure 23, Federal Rule of Bankruptcy Procedure 9019, the Bankruptcy Code, and due process requirements;

d) Dismiss all claims in the Litigation with prejudice and without costs;

e) Bar and enjoin any Settlement Class Members who did not timely opt out in accordance with the requirements of this Settlement Agreement from asserting any of the Released Claims;

f) Release and forever discharge CFDFC and the Released Parties from the Released Claims, as provided for in this Settlement Agreement; and

g) Reserve the Bankruptcy Court's continuing and exclusive jurisdiction over CFDFC and all Settlement Class Members (including any objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

5.5 Counsel for the Settling Parties shall share among them drafts of any memoranda in support of preliminary approval, final approval, and attorneys' fees at least three (3) days before filing the same and shall consider any proposed edits by any other Settling Party in good faith.

**6. NOTICE PROGRAM**

6.1 Within twenty-five (25) days of the entry of the Preliminary Approval Order, CFDFC will provide the Settlement Claims Administrator with a list of Settlement Class Members which will include, to the extent available, the name and physical mailing address of each Settlement Class Member. The Settlement Claims Administrator shall cause notice to be disseminated to the Settlement Class Members pursuant to the Preliminary Approval Order and the Notice Program as described below, and in compliance with all applicable laws and procedural requirements, including, but not limited to, the Due Process clauses of the United States Constitution, Federal Rule of Civil Procedure 23, Federal Rule of Bankruptcy Procedure 9019, the Bankruptcy Code, and be effectuated pursuant to the provisions set forth below, the costs of which shall be paid by CFDFC outside of the Settlement Fund. Subject to the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any Orders entered in the Bankruptcy Case, the Settlement Claims Administrator must securely maintain the list of Settlement Class Members in strict confidence and may not share the list with anyone other than CFDFC and the Office of the U.S. Trustee.

6.2 Class Notice shall be provided to the Settlement Class as follows:

6.2.1 On or before the Notice Deadline, the Settlement Claims Administrator shall send the Summary Notice on a postcard via First Class U.S. Mail, postage pre-paid, to Settlement Class Members. Within twenty (20) days after sending such mail, the Settlement Claims Administrator shall undertake reasonable efforts to confirm the address, and to resend notice, for

any Settlement Class Members for which the Settlement Claims Administrator receives returned mail from the U.S. Postal Service indicating that the initial mailing was not delivered. The Settlement Claims Administrator shall also undertake a publication notice program substantially in accordance with its estimate and program provided to CFDFC.

6.2.2 On or before the Notice Deadline, the Settlement Claims Administrator shall establish the Settlement Website that includes this Settlement Agreement, the Long Notice, the Claim Form approved by the Court, and other relevant case-related documents as agreed by the Settling Parties. The Settlement Claims Administrator shall maintain and update the Settlement Website throughout the Claims Period as needed. The Settlement Claims Administrator will also post on the Settlement Website copies of the motion for final approval of the Settlement Agreement, and the motion for an Attorneys' Fees and Expenses Award and a Service Award. A toll-free number with interactive voice response and FAQs shall also be made available to address Settlement Class Members' inquiries. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days following the Effective Date.

6.3 The Notice Program shall be subject to approval by the Bankruptcy Court as meeting the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, as made applicable by the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code.

6.4 The Long Notice, Summary Notice, and Settlement Claim Form approved by the Bankruptcy Court may be adjusted by the Settlement Claims Administrator in consultation and agreement with the Settling Parties as may be reasonable and necessary, so long as it is not inconsistent with such approval and does not materially alter the language approved by the Bankruptcy Court.

6.5 Prior to the Final Approval Hearing, the Settling Parties shall cause to be filed with

the Bankruptcy Court an appropriate declaration from the Settlement Claims Administrator demonstrating compliance with the Bankruptcy Court-approved Notice Program.

**7. OPT-OUT PROCEDURES**

7.1 Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely submit a written Request for Exclusion to the address designated by the Settlement Claims Administrator or online through the Settlement Website.

7.2 To be effective, a Request for Exclusion must be postmarked no later than 60 days after the Notice Deadline or such other date set by the Bankruptcy Court in the Preliminary Approval Order. The Request for Exclusion must state:

7.2.1 the Settlement Class Member's name, address, and telephone number;

7.2.2 the case name, caption, and number of the Bankruptcy Case, and/or of the Litigation;

7.2.3 contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and

7.2.4 state unequivocally the Settlement Class Member's intent to be excluded from the settlement.

7.3 Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Claims Administrator.

7.4 Within ten (10) days after the Opt-Out Deadline, the Settlement Claims Administrator shall provide the Settling Parties with a complete and final list of all Opt-Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of all completed Requests for Exclusion.

7.5 All persons who opt out of the Settlement Class shall not receive any benefits of

or be bound by the terms of this Settlement Agreement. All persons falling within the definition of the Settlement Class who do not opt out shall be bound by the terms of this Settlement Agreement and the Final Approval Order and Judgment entered thereon. CFDFC shall have the right to terminate this Settlement Agreement if 100 or more Settlement Class Members submit valid and timely requests to exclude themselves from the Settlement.

**8. OBJECTION PROCEDURES**

8.1 Each Settlement Class Member who does not file a valid and timely Request for Exclusion may file with the Bankruptcy Court a notice of intent to object to the Settlement Agreement. The Long Notice shall instruct Settlement Class Members who wish to object to the Agreement to send their written objections to the Bankruptcy Court and concurrently upon:

For ***Settlement Class Counsel***:

Peter N. Wasylyk, Esq.
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908

-and-

Gary E. Mason, Esq.
Mason & Perry LLP
5335 Wisconsin Ave NW, Suite 640
Washington, DC 20015
202 429 2290 t
gmason@masonllp.com

For ***CFDFC***:

Daniel E. Burgoyne, Esq.
Partridge Snow Hahn, LLP
40 Westminster Street, Suite 1100
Providence, RI 02903

8.2 The Long Notice shall make clear that the Bankruptcy Court can only approve or deny the Settlement Agreement and cannot change the terms; *provided that* procedural aspects and

deadlines that do not affect substantive terms or Settlement benefits may be modified by an Order of the Bankruptcy Court. The Long Notice shall advise Settlement Class Members of the deadline for submission of any objections.

8.3 All notices of an intent to object to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) the case name, caption, and number of the Bankruptcy Case; (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a statement as to whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire class; (v) a clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (vi) the identity of any counsel representing or advising the objector; (vii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (viii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections and any documents to be presented or considered; and (ix) the objector's personal and original signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any).

8.4 To be timely, written notice of an objection in the appropriate form must be filed or postmarked no later than the Objection Deadline.

8.5 Except upon a showing of good cause, any Settlement Class Member who fails to substantially comply with the requirements in this Section 8 for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all

proceedings, orders and judgments in the Bankruptcy Case, or, as applicable, the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section 8.

**9. SETTLEMENT CLAIMS ADMINISTRATION**

9.1 The Settlement Claims Administrator shall administer and calculate the Settlement Claims submitted by Settlement Class Members. All Settlement Claims must be submitted on or before the Settlement Claims Deadline to be deemed timely. The determination by the Settlement Claims Administrator of the validity or invalidity of all Settlement Claims shall be binding. The Settlement Claims Administrator shall periodically provide Settlement Class Counsel and CFDFC's counsel with reports as to both Settlement Claims and distribution, and they shall have the right to obtain and review supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.

9.2 For each Settlement Claim submitted and received, the Settlement Claims Administrator, in its sole discretion (to be reasonably exercised), will determine whether: (1) the claimant is a Settlement Class Member; and (2) that the claimant has provided all information required to complete the Settlement Claim Form by the Settlement Claims Deadline, including but not limited to information required under Section 4 to establish an Approved Settlement Claim. The Settlement Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Settlement Claims Administrator may reasonably require in order to adequately evaluate the Settlement Claim. All information provided to the Claims Administrator will be deemed confidential by the Settlement Claims Administrator.

9.3 The Settlement Claims Administrator shall determine whether a claimant's Settlement Claim Form, along with supporting materials, are sufficient to support a claim. If the

Settlement Claims Administrator should receive an incomplete Settlement Claim Form or a Settlement Claim Form with insufficient documentation to determine whether the claimant is a Settlement Class Member, the Settlement Claims Administrator may request additional information and give the claimant twenty-one (21) days to cure any defect(s) before rejecting, or reducing, a Settlement Claim. The Settlement Claims Administrator shall make any requests for additional information within twenty-one (21) days after the Settlement Claims Filing Deadline. If a Settlement Class Member fails to correct all deficiencies within twenty-one (21) days from receiving a request for additional information, the Settlement Claims Administrator shall deny the claimant's Settlement Claim, and the claimant will not be entitled to an Award.

9.4 After receiving additional information, the Settlement Claims Administrator shall have thirty (30) days to accept or reject each Settlement Claim. If, after review of the Settlement Claim and all documentation submitted by the claimant, the Settlement Claims Administrator determines that such a settlement claim is valid, then the Settlement Claim shall be paid within the time period provided in this Section. If the Settlement Claim remains invalid because the claimant does not provide the requested information needed to complete the Settlement Claim Form and evaluate the Settlement Claim, then the Settlement Claims Administrator may reject, or reduce, the Settlement Claim without any further action apart from providing a notice of rejection of the Settlement Claim.

9.5 No Person shall have any claim against the Settlement Claims Administrator, CFDFC, the Released Parties, their counsel, Settlement Class Counsel, and/or the Representative Plaintiff based on the review, reconciliation, and adjudication of claims by the Settlement Claims Administrator or the distribution of claims benefits to Settlement Class Members.

9.6 The Settlement Claims Administrator shall agree to hold the Settlement Fund in

an interest-bearing Qualified Settlement Fund account, and administer the Settlement Fund, subject to the continuing jurisdiction of the court and from the earliest possible date, as a qualified settlement fund as defined by Treasury Regulation § 1.46B-1, *et seq*., and agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest date possible. The Settlement Claims Administrator shall prepare any required tax returns and pay any taxes owed by the Settlement Fund out of the Settlement Fund.

9.7 The Settlement Claims Administrator will send funds for Approved Claims within the later of sixty (60) days after the Effective Date or thirty (30) days after all disputed claims have been resolved. No distributions will be made without prior written authorization from the Settling Parties. Award checks shall be valid for a period of 180 days from issuance, and shall state, in words or substance, that the check must be cashed within 180 days, after which time it will become void. In the event a settlement check becomes void, the Settlement Class Member to whom that settlement check was made payable will forfeit the right to payment and will not be entitled to have the check reissued or to any further distribution from the Settlement Fund or to any further recourse against the Released Parties, and the Agreement and Release will in all other respects be fully enforceable against the Settlement Class Member. No later than 190 days from the issuance of the Award checks, the Settlement Claims Administrator shall take all steps necessary to stop payment on any Award checks that remain uncashed.

9.8 All Settlement Class Members who fail to timely submit a valid Settlement Claim hereunder within the time frames set forth herein, or such other period as may be ordered by the Court or otherwise allowed, shall be forever barred from receiving an Award pursuant to this Agreement, but will in all other respects be subject to, and bound by, the provisions of this Agreement, the Releases contained herein and the Final Approval Order and Judgment.

9.9 If there is any balance remaining in the Settlement Fund ninety (90) days after the Settlement Claims Administrator completes the process for stopping payment on any award checks that remain uncashed, any remaining funds will promptly be returned to CFDFC. The remainder funds distributed pursuant to this paragraph shall not be considered unclaimed property under the laws of Rhode Island or any other state.

**10. RELEASES**

10.1 Upon the Effective Date, each Settlement Class Member, including the Representative Plaintiff, will be deemed by operation of this Settlement Agreement and by operation of the Final Approval Order and Judgment to have forever fully, finally, completely, and unconditionally released, discharged, and acquitted CFDFC and the Released Parties from any and all of the Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than the participation in the Settlement Agreement as provided herein) in which any of the Released Claims are asserted.

10.2 Upon entry of the Final Approval Order and Judgment, each Settlement Class Member, including Representative Plaintiff, shall be barred from initiating, asserting, or prosecuting against CFDFC and any Released Parties any claims that are released by operation of the Settlement Agreement and the Final Approval Order and Judgment.

10.3 The Settling Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement,

including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein. Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

## 11. SETTLEMENT CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES AWARD; REPRESENTATIVE PLAINTIFF'S SERVICE AWARD

11.1 Settlement Class Counsel may file a motion seeking reasonable attorneys' fees and their reasonable costs and expenses not to exceed $90,000, to be paid outside of the Settlement Fund. CFDFC will not object to Settlement Class Counsel's request for Attorneys' Fees and Expenses Award, unless Settlement Class Counsel's request exceeds the terms outlined in this Settlement Agreement.

11.2 Settlement Class Counsel will also request from the Bankruptcy Court a Service Award for the Representative Plaintiff not to exceed $2,000, to be paid solely from the Settlement Fund. CFDFC will not object to Representative Plaintiff's request for a Service Award payment, unless Representative Plaintiff's request exceeds the terms outlined in this Settlement Agreement.

11.3 Within thirty (30) days after the Effective Date, the Settlement Claims Administrator shall pay any Service Award from the Settlement Fund to an account designated by Settlement Class Counsel.

11.4 Within thirty (30) days after the Effective Date and receipt of all payment instructions, including receipt of W-9s, CFDFC shall cause to be paid any Attorneys' Fees and

Expenses Award to one account designated by Settlement Class Counsel. Settlement Class Counsel shall have sole discretion in allocating such attorneys' fees and costs, and distributing to each participating firm an allocated share of such attorneys' fees and costs to that firm. CFDFC shall have no responsibility or liability for distribution of attorneys' fees or costs among participating firms.

11.5 No order of the Bankruptcy Court or modification or reversal or appeal of any order of the Bankruptcy Court concerning the amounts of the Attorneys' Fees and Expenses Award or the Service Award hereunder shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

11.6 Except for the Attorneys' Fees and Expenses Award, CFDFC shall not be liable for any attorneys' fees and expenses of any Representative Plaintiff's counsel in the Litigation or in the Bankruptcy Case.

## 12. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

12.1 The Settling Parties' willingness to settle the Litigation on a class action basis and to agree to the accompanying certification of the Settlement Class for settlement purposes is dependent on achieving finality in the Litigation and in the Bankruptcy Case and the desire to avoid the expense of this and other litigation. Consequently, the Settling Parties have the right to terminate this Settlement Agreement, declare it null and void, with no further obligations under this Settlement Agreement, unless each of the following conditions occur:

a) The Bankruptcy Court has entered a Preliminary Approval Order without material change to the Settling Parties' to-be proposed Preliminary Approval Order**;** and

b) The Bankruptcy Court enters a Final Approval Order and Judgment without material change to the Parties' to-be proposed Final Approval Order and Judgment; and

c) The Effective Date has occurred;

d) CFDFC has not exercised its right to terminate this Agreement should the threshold number of Opt-Outs exceed that contemplated in Paragraph 7.5; and

e) The Bankruptcy Court has entered an order confirming CFDFC's proposed chapter 11 plan of reorganization, such confirmation is final and non-appealable, and the effective date of the confirmed chapter 11 plan of reorganization has occurred.

12.2 If all of the conditions in Paragraph 12.1 are not fully satisfied and the Effective Date does not occur, this Settlement Agreement may be terminated by any Settling Party by serving on counsel for the other Settling Parties and filing with the Bankruptcy Court a written notice of termination within fourteen (14) calendar days' notice before becoming effective.

12.3 In the event that the Settlement Agreement is not approved, whether preliminarily or finally, by the Bankruptcy Court, the Settlement Agreement is terminated in accordance with the terms of Paragraph 12.2, or the Effective Date is otherwise not reached: (a) the Settling Parties shall be restored to their respective positions in the Litigation that existed prior to November 1, 2024, and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Bankruptcy Court and the District Court so as to avoid prejudice to any Settling Party or litigant, which extension shall be subject to the decision of the Bankruptcy Court or District Court, as applicable; and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation, the Bankruptcy Case, or in any other proceeding for any purpose, and any judgment or order entered by the Bankruptcy Court, or the District Court, in accordance with the terms of the Settlement Agreement, including certification of the Settlement Class for settlement purposes only, shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Bankruptcy Court, District Court, or modification or reversal on

appeal of any order reducing the amount of any requested Attorneys' Fees and Expenses Award to Settlement Class Counsel shall constitute grounds for cancellation or termination of the Settlement Agreement.

**13. CLASS ACTION FAIRNESS ACT (CAFA) NOTICE PURSUANT TO 28 USC § 1715**

13.1 The Settlement Claims Administrator shall provide the notices and information as and when required by CAFA. However, the Settlement Claims Administrator's failure to do so shall not impact or otherwise affect this Settlement Agreement and the Settling Parties' respective obligations herein.

**14. MISCELLANEOUS PROVISIONS**

14.1 The Settling Parties and their counsel acknowledge that it is their intent to consummate this Settlement Agreement and agree to undertake their best efforts to effectuate and implement all terms and conditions of this Settlement Agreement, including taking all steps and efforts contemplated by this Settlement Agreement, and any other steps and efforts which may become necessary by order of the Bankruptcy Court or otherwise.

14.2 The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Litigation and the Bankruptcy Case and with regard to the Released Parties. The Settlement Agreement compromises claims that are contested and denied and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the Settlement was negotiated and mediated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent and experienced legal counsel. The Settling Parties reserve their right to rebut, in a manner that such Settling Party determines to be appropriate, any contention made in any public forum that the Litigation, including matters before both the District Court and

the Bankruptcy Court, was brought or defended in bad faith or without a reasonable basis.

14.3 The Settlement Agreement, whether or not consummated, and any proceeding taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and CFDFC and the Released Parties deny any and all wrongdoing. CFDFC and the Released Parties deny all liability to the Representative Plaintiff and Settlement Class Members, deny all of the claims made in the Litigation and that may be asserted in the Bankruptcy Case, deny all allegations of wrongdoing made in any of the complaints in this Litigation or that may be asserted in the Bankruptcy Case, and deny that the Representative Plaintiff and Settlement Class Members suffered any losses. This Settlement Agreement, and the discussions between the Settling Parties preceding it, shall in no event be construed as, or may be deemed to be evidence of, (a) the validity or lack thereof of any Released Claim or of any wrongdoing or liability of any of the Released Parties; or (b) any fault or omission of any of the Released Parties, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, including, without limitation, before the District Court and the Bankruptcy Court. Any of the Released Parties may file the Settlement Agreement in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.4 The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest. Amendments and modifications may be made without additional notice to the Settlement Class Members unless such notice is required by the Bankruptcy Court.

14.5 The Settlement Agreement contains the entire agreement between the Settling Parties and supersedes all prior agreements or understandings between them. The terms of the Settlement Agreement shall be binding upon each of the Settling Parties to this Settlement Agreement, their agents, attorneys, employees, successors and assigns, and upon all other Persons or entities claiming any interest in the subject matter hereof, including any Settlement Class Member.

14.6 The Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Rhode Island, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Rhode Island without giving effect to Rhode Island's choice of law principles, subject to the superseding provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, as applicable.

14.7 The Bankruptcy Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement that cannot be resolved by negotiation and agreement among the Settling Parties or by counsel for the Settling Parties. The Bankruptcy Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Settlement Agreement. The Bankruptcy Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Claims Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Claims Administrator shall consent to the jurisdiction of the Bankruptcy Court for this purpose.

14.8 The individual signing this Settlement Agreement on behalf of CFDFC represents

that he is fully authorized by CFDFC to enter into, and to execute, this Settlement Agreement on its behalf. Settlement Class Counsel represent that they are fully authorized to conduct settlement negotiations with counsel for CFDFC on behalf of Representative Plaintiff, and to enter into, and to execute, this Settlement Agreement on behalf of the Settlement Class, subject to Bankruptcy Court approval.

14.9 The terms of the Settlement Agreement shall be construed as if drafted jointly by all Settling Parties to this Settlement Agreement. None of the Settling Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

14.10 The Settling Parties agree that this Settlement Agreement, the Preliminary Approval Order, and the Final Order following from the Settlement Agreement, will not prejudice in any way the Settling Parties' right to raise any of the arguments that the Settling Parties made in this case in any future litigation.

14.11 In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Settlement Agreement shall continue in full force and effect without said provision to the extent the Settling Parties do not exercise their right to terminate under Section 12.

14.12 All notices or formal communications under this Settlement Agreement shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Settling Party to whom notice is directed at the following addresses, and also send a copy by electronic mail:

***For the Representative Plaintiff and the Settlement Class:***

Peter N. Wasylyk, Esq.
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908

-and-

Gary E. Mason, Esq.
Mason & Perry LLP
5355 Wisconsin Ave NW, Suite 640
Washington, DC 20015

***For CFDFC:***

Daniel E. Burgoyne, Esq.
Partridge Snow Hahn, LLP
40 Westminster Street, Suite 1100
Providence, RI 02903

Counsel may designate a change of the person to receive written notice or a change of address, from time to time, by giving written notice to all Settling Parties in the manner described in this Paragraph.

14.12.1 The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

**15. BANKRUPTCY MATTERS**

15.1 The Settling Parties agree and acknowledge that nothing in this Agreement shall require, or be construed to require, that CFDFC, including its respective officers and agents, take any action, or to refrain from taking any action, to the extent inconsistent with fiduciary obligations or applicable law, and nothing in this Agreement shall require, or be construed to

require, that CFDFC, including its respective officers and agents, give testimony or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or fiduciary duty to the Bankruptcy Court or to its stakeholders.

15.2 No individual Settlement Class Member, including Representative Plaintiff and any Opt-Out, shall be required to file a bankruptcy proof of claim in the Bankruptcy Case with the Bankruptcy Court in connection with any losses or liabilities arising from, or related to, the Data Incident. The Settling Parties agree that CFDFC may object, oppose, or seek to disallow any bankruptcy proof of claim filed by an individual Settlement Class Member for amounts arising from, or related to, the Data Incident. Nothing in this Agreement is intended to constrain or limit the rights or claims, if any, of a Settlement Class Member who may hold claims against CFDFC that do not arise from, or relate to, the Data Incident. Nothing in this Agreement is intended to constrain or limit Settlement Class Counsel from filing in the Bankruptcy Case with the Bankruptcy Court a class proof of claim on behalf of the proposed Settlement Class.

15.3 Provided that any proposed plan of reorganization filed by, or on behalf of, CFDFC in the Bankruptcy Case does not contravene or alter the terms of this Agreement, or otherwise impair the rights of any Settlement Class Member concerning the Data Incident and the distributions for Approved Settlement Claims—unless such term or modification is agreed to in writing by the Settling Parties—then Representative Plaintiff and Settlement Class Counsel agree to support, not to object to, and not to oppose, any such proposed plan of reorganization filed by the CFDFC.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Agreement to be executed on their behalf by their duly authorized officers or counsel of record, all as of the day set forth below:

**JACOB HELLESTED AND THE SETTLEMENT CLASS**

By their Attorneys,

________________________________

Peter N. Wasylyk, Esq.
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908

Gary E. Mason, Esq.
Mason & Perry LLP
5335 Wisconsin Ave NW, Suite 640
Washington, DC 20015

**CENTRAL FALLS DETENTION FACILITY CORPORATION**

By,

________________________________