**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| *In re*: | ) | Chapter 11 |
| Central Falls Detention Facility Corp., | ) | |
| *Debtor*. | ) | Case No. 26-10628 |

**DECLARATION OF CAMERON R. AZARI, ESQ.**
**REGARDING NOTICE PLAN**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President of Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Managing Director of Epiq Legal Noticing (aka Hilsoft Notifications), a business unit of Epiq that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans ("Epiq Legal Noticing").

4. Epiq is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters. Epiq Legal Noticing has handled some of the most complex and significant notice programs in recent history, examples of which are discussed below. With experience in more than 700 cases, including more than 75 multidistrict litigation settlements, Epiq Legal Noticing has prepared notices that have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world. Courts have recognized and approved numerous notice plans developed by Epiq Legal Noticing, and those decisions have invariably withstood appellate review.

5. I am submitting this Declaration in support of the *Debtor's Motion For Entry Of An Order Granting (I) Preliminary Approval Of Data Security Incident Settlement; (II) Class*

*Certification For Settlement Purposes Only; (III) Appointment Of Settlement Class Counsel; (IV) Authorization For Settlement Class Counsel To File A Class Proof Of Claim; (V) Approval Of The Form And Manner Of Notice To Class Members Regarding Class Certification And Settlement Terms; (VI) Establishment Of The Date And Time For A Fairness Hearing To Consider Final Approval Of The Class Settlement; And (VII) Related Relief* (the "Preliminary Approval Motion"[1]), filed concurrently with the Court.

**RELEVANT EXPERIENCE**

6. I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many significant cases, including:

a) *Rodriguez, et al. v. Google LLC*, 20-cv-04688, (N.D. Cal.), is a landmark privacy lawsuit for which Epiq implemented an extensive notice program with one of the largest, if not the largest email campaign ever for a class action lawsuit, sending more than 369 million email notices. The email notices were successfully delivered to approximately 93.1% of the class who were sent an email notice. The reach of the individual notice effort was enhanced by a media plan that included digital and social media notice that generated over 178 million impressions, sponsored search listings, and a case website. Overall, the class notice plan reached well in excess of 85% of the Class.

b) *In re Juul Labs, Inc. Marketing, Sales Practices, and Products Liability Litig.*, 19-md-02913 (N.D. Cal.), involved two settlements totaling $300 million for JUUL Labs, Inc. and Altria, which alleged consumers were misled about JUUL products' addictiveness and safety, causing them to pay more, and that JUUL products were unlawfully marketed to minors. Two companion notice programs were implemented with more than 10.7 million email notices and nearly 500,000 postcard notices sent to potential class members and comprehensive media efforts (over 936 million impressions delivered). The notice programs each reached approximately 80% of the class nationwide.

[1] Unless stated otherwise, capitalized terms not defined in this Declaration shall have the meaning provided for in the Preliminary Approval Motion.

c) *In re Zoom Video Commc'ns, Inc. Privacy Litig.*, 3:20-cv-02155 (N.D. Cal.), involved an extensive notice plan for a $85 million privacy settlement involving Zoom, the most popular videoconferencing platform. Notice was sent to more than 158 million class members by email or mail, and millions of reminder notices were sent to stimulate claim filings. The individual notice efforts reached approximately 91% of the class. A supplemental media campaign provided notice via regional newspaper notice, nationally distributed digital and social media notice (delivering more than 280 million impressions), sponsored search, an informational release, and a settlement website.

d) *In re Takata Airbag Products Liability Litig.*, MDL No. 2599, 1:15-md-02599 (S.D. Fla.), involved $1.91 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, Ford, and Volkswagen regarding Takata airbags. The notice programs included individual mailed notice to more than 61.8 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio, digital notices, mobile digital notices, and behaviorally targeted digital media. Combined, the notice programs reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

e) *In re Capital One Consumer Data Sec'y Breach Litig.*, MDL No. 2915, 1:19-md-02915 (E.D. Va.), involved an extensive notice program for a $190 million data breach settlement. Notice was sent to more than 93.6 million settlement class members by email or mail. The individual notice efforts reached approximately 96% of the identified settlement class members and were enhanced by a supplemental media plan that included digital and social media notices (delivering more than 123.4 million impressions), sponsored search, and a settlement website.

f) *In re Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626 (M.D. Fla.), involved several notice programs to notify retail purchasers of disposable contact lenses for four separate settlements totaling $88 million. For each notice program more than 1.98 million email or postcard notices were sent to potential class members, and a comprehensive media plan was implemented, with a well-read nationwide consumer publication, internet digital notices (delivering more than

312.9 million – 461.4 million impressions per campaign), sponsored search listings, and a case website.

g) *In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.* MDL No. 2664, 15-cv-01394 (D.D.C.), involved a $63 million settlement for compromised personal information of then-current and former federal government employees and contractors, and certain applicants for federal employment. An extensive nationwide media notice campaign was implemented using magazines, digital and social media notices (delivering more than 758 million impressions), traditional and satellite radio, and other forms of media. The media notice reached at least 85% of the class. In addition, more than 3.5 million email notices and/or postcard notices were sent to identified class members. The notice program was supplemented with outreach to unions and associations, sponsored search listings, an informational release, and a settlement website.

h) *In re fairlife Milk Products Marketing and Sales Practices Litig.*, 1:19-cv-03924 (N.D. Ill.), involved a $21 million settlement against The Coca-Cola Company, fairlife, LLC, and other defendants alleging false labeling and marketing of fairlife milk products. A comprehensive media plan was implemented with a consumer print publication notice, targeted digital and social media notices (delivering more than 620.1 million impressions in English and Spanish nationwide). Combined with individual notice to a small percentage of the class, the notice plan reached approximately 80.2% of the class. The reach was further enhanced by sponsored search, an informational release, and a website.

i) *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.). Second Circuit affirmed. *See Fikes Wholesale, Inc. v. Visa U.S.A., Inc.* 62 F.4th 704 (2d Cir. 2023). The case involved a $5.5 billion settlement reached by Visa and MasterCard. An intensive initial notice program included more than 19.8 million direct mail notices sent to potential class members, together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, with notices in multiple languages, and a digital notice campaign (delivering more than 770 million adult impressions). Sponsored search listings and a settlement website in eight languages expanded the

notice program. For the subsequent settlement reached by Visa and MasterCard, an extensive notice program was implemented, which included over 16.3 million direct mail notices to class members together with more than 354 print publication insertions and digital notices (delivering more than 689 million adult impressions).

j) *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill. Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

7. I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in numerous data breach and privacy settlements, including:

| Data Breach & Privacy Cases | Case No. & Court |
|---|---|
| *In re Zoom Video Commc'ns, Inc. Privacy Litig.* | 3:20-cv-02155 (N.D. Cal.) |
| *In re Capital One Consumer Data Security Breach Litig.* | MDL No. 2915 (E.D. Va.) |
| *In r: Morgan Stanley Data Security Litig.* | 1:20-cv-05914 (S.D.N.Y.) |
| *In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.* | MDL No. 2664, (D.D.C.) |
| *In re Department of Veteran Affairs (VA) Data Theft Litig.* | MDL No. 1796 (D.D.C.) |
| *In re Premera Blue Cross Customer Data Sec'y Breach Litig.* | MDL No. 2633 (D. Or.) |
| *McCullough v. True Health New Mexico, Inc.* | D-202-CV-2021-06816 (2nd Dist. Ct., N.M.) |
| *Chapman v. Insight Global Inc.* | 1:21-cv-00824 (M.D. Penn.) |
| *Thomsen et al. v. Morley Cos., Inc.* | 1:22-cv-10271 (E.D. Mich.) |
| *In re Scripps Health Data Incident Litig.* | 37-2021-00024103 (Sup. Ct. Cal. Cnty. of San Diego) |
| *Service et al. v. Volkswagen Group of America, et al.* | C22-01841 (Sup. Ct. Cal. Cnty. of Contra Costa) |
| *Wenston Desue et al. v. 20/20 Eye Care Network, Inc. et al.* | 21-cv-61275 (S.D. Fla.) |
| *Kostka et al. v. Dickey's Barbecue Restaurants, Inc. et al.* | 3:20-cv-03424 (N.D. Tex.) |
| *Cochran, et al. v. The Kroger Co. et al.* | 5:21-cv-01887 (N.D. Cal.) |

| Data Breach & Privacy Cases | Case No. & Court |
|---|---|
| *Ford, et al. v. [24]7.ai, Inc.* (Best Buy Data Incident) | MDL No. 2863 (N.D. Cal.) |
| *Snyder, et al. v. The Urology Center of Colorado, P.C.* | 2021CV33707 (2nd Dist. Ct. Cnty. of Denver Col.) |
| *Dearing v. Magellan Health Inc,. et al.* | CV2020-013648 (Sup. Ct. Cnty. of Maricopa, Ariz.) |
| *Torretto, et al. v. Donnelley Financial Sols., Inc. and Mediant Commc'ns Inc.* | 1:20-cv-02667 (S.D.N.Y.) |
| *Stoll, et al. v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute* | 8:20-cv-01798 (M.D. Fla.) |
| *Hameed-Bolden, et al. v. Forever 21 Retail, Inc., et al.* | 2:18-cv-03019 (C.D. Cal.) |
| *In re Community Health Systems, Inc. Customer Data Sec'y Breach Litig.* | MDL No. 2595 (N.D. Ala.) |
| *Lozano v. CodeMetro Inc.* | 37-2020-00022701 (Sup. Ct. Cal. Cnty. of San Diego) |
| *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* | 3:18-cv-00327 (W.D. Wis.) |
| *Armon, et al. v. Washington State Univ.* | 17-2-23244-1 consolidated with 17-2-25052-0 (Sup. Ct. Wash.) |
| *Kuss v. Am. HomePatient, Inc., et al.* | 8:18-cv-02348 (M.D. Fla.) |
| *Nelson v. Roadrunner Transportation Sys., Inc.* | 1:18-cv-07400 (N.D. Ill.) |
| *Adlouni v. UCLA Health Sys. Auxiliary, et al.* | BC589243 (Cal. Sup. Ct., L.A. Cnty.) |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC* | 3:16-cv-05387 (N.D. Cal.) |
| *In re Valley Anesthesiology Consultants, Inc. Data Breach Litig.* | CV2016-013446 (Ariz. Super. Ct., Maricopa Cnty.) |
| *McGann, et al., v. Schnuck Markets, Inc.* | 1322-CC00800 (Mo. Cir. Ct.) |
| *Greater Chautauqua Federal Credit Union et al. v. Kmart Corp., et al.* | 1:15-cv-02228 (N.D. Ill.) |
| *In re Heartland Payment Systems, Inc. Data Security Breach Litigation* | MDL No. 2046 (S.D. Tex.) |
| *In re: Countrywide Financial Corp. Customer Data Security Breach Litig.* | MDL No. 1998, (W.D. Ky.) |
| *Bandy v. TOC Enterprises, Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A.* | 3:23-cv-00598, (M.D. Tenn) |
| *Medina, et al. v. PracticeMax, Inc.* | CV-22-01261, (D. Ariz.) |
| *In re Waste Mgmt. Data Breach Litig.* | 1:21-cv-06199, (S.D.N.Y) |
| *Sherwood, et al. v. Horizon Actuarial Servs., LLC* | 1:22-cv-01495, (N.D. Ga.) |
| *Briscoe, et al. v. First Financial Credit Union* | D-202-CV-2022-02974, (2nd. Jud. Dist. Cnty. of Bernalillo, N.M.) |

| Data Breach & Privacy Cases | Case No. & Court |
| --- | --- |
| *Patterson, et al. v. DPP II LLC, et al.* | DC-23-01733, (Dist. Ct of Dallas Cnty., Tex.) |
| *In re Canon U.S.A. Data Breach Litig.* | 1:20-cv-06239, (E.D.N.Y.) |

8. Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. Numerous court opinions and comments regarding my testimony, and the adequacy of our notice efforts, are included in the Epiq Legal Noticing *curriculum vitae* included as **Attachment 1**.

9. In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Epiq since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Overall, I have more than 25 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

10. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq and Epiq Legal Noticing (collectively and hereinafter "Epiq").

## OVERVIEW

11. This declaration describes the proposed Notice Plan detailed in the Debtor's Preliminary Approval Motion, including the (collectively, "Notice" or the "Notices"). Epiq designed this Notice Plan based on our extensive prior experience and research into the notice issues particular to this Settlement. We designed a Notice Plan that is the best notice practicable under the circumstances to provide notice to the DSI Settlement Class.

**DATA PRIVACY AND SECURITY**

12. Epiq has procedures in place to protect the security of class data. As with all cases, Epiq maintains extensive data security and privacy safeguards in its official capacity as the Settlement Administrator for this action. Epiq maintains adequate insurance in case of errors.

13. With respect to the data it receives, collects, and otherwise hosts, Epiq serves as a data processor and acts only at the direction of counsel to the parties or of the Court, as described in applicable contracts, statements of work, and/or Court documents and Orders. Epiq does not utilize or perform other procedures on personal data provided or obtained as part of its services as Settlement Administrator. Epiq will not use any information provided by DSI Settlement Class members for any other purpose than the administration of this Settlement and action. Specifically, DSI Settlement Class member information is not used, disseminated, or disclosed by or to any other person for any other purpose unrelated to the administration of this action and the Settlement.

14. The security and privacy of clients' and class members' information and data are paramount to Epiq. That is why Epiq has invested in a layered and robust set of trusted security personnel, controls, and technology to protect the data we handle. To promote a secure environment for client and class member data, industry leading firewalls and intrusion prevention systems protect and monitor Epiq's network perimeter with regular vulnerability scans and penetration tests. Epiq deploys best-in-class endpoint detection, response, and anti-virus solutions on our endpoints and servers. Strong authentication mechanisms and multi-factor authentication are required for access to Epiq's systems and the data we protect. In addition, Epiq has employed the use of behavior and signature-based analytics as well as monitoring tools across our entire network, which are managed 24 hours per day, 7 days per week, by a team of experienced professionals.

15. Epiq's world class data centers are defended by multi-layered, physical access security, including formal ID and prior approval before access is granted, closed-circuit television ("CCTV"), alarms, biometric devices, and security guards, 24 hours per day, 7 days per week. Epiq manages minimum Tier 3+ data centers in 18 locations worldwide. Our centers have

robust environmental controls including uninterruptable power supply ("UPS"), fire detection and suppression controls, flood protection, and cooling systems.

16. Beyond Epiq's technology, our people play a vital role in protecting class members' and our clients' information. Epiq has a dedicated information security team comprised of highly trained, experienced, and qualified security professionals. Our teams stay on top of important security issues and retain important industry standard certifications, like SysAdmin, Audit, Network, and Security ("SANS"), Certified Information Systems Security Professional ("CISSP"), and Certified Information Systems Auditor ("CISA"). Epiq is continually improving security infrastructure and processes based on an ever-changing digital landscape. Epiq also partners with best-in-class security service providers. Our robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties.

17. Epiq holds several industry certifications including: Trusted Information Security Assessment Exchange ("TISAX"), Cyber Essentials, Privacy Shield, and ISO 27001. In addition to retaining these certifications, we are aligned to Health Insurance Portability and Accountability Act ("HIPAA"), National Institute of Standards and Technology ("NIST"), and Federal Information Security Management Act ("FISMA") frameworks. Epiq follows local, national, and international privacy regulations. To support our business and staff, Epiq has a dedicated team to facilitate and monitor compliance with privacy policies. Epiq is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity trainings to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

18. Upon completion of a project, Epiq continues to host all data until otherwise instructed in writing by a customer to delete, archive or return such data. When a customer requests that Epiq delete or destroy all data, Epiq agrees to delete or destroy all such data; provided, however, that Epiq may retain data as required by applicable law, rule or regulation, and to the extent such copies are electronically stored in accordance with Epiq's record retention or back-up

policies or procedures (including those regarding electronic communications) then in effect. Epiq keeps data in line with client retention requirements. If no retention period is specified, Epiq returns the data to the client or securely deletes it as appropriate.

**NOTICE PROGRAM SUMMARY**

19. Epiq adheres to the guidance of Rule 23 of the Federal Rules of Civil Procedure, incorporated herein through Rule 7023 of the Federal Rules of Bankruptcy Procedure, that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[2] The Notice Plan will satisfy these requirements, as detailed in the Preliminary Approval Motion.

20. The Notice Plan is designed to reach the greatest practicable number of DSI Settlement Class members. Given our experience with similar notice efforts, we expect the Notice Plan will reach at least 75% of the DSI Settlement Class with direct notice and a digital/internet notice program (digital notice and social media). "Reach" refers to the estimated percentage of the unduplicated audience exposed to the Notice. Notice exposure is defined as the opportunity to see a notice. The reach will be further enhanced by publication notice, internet sponsored search listings, an informational release, and a Settlement Website, which are not included in the estimated reach calculation. In my experience, the Notice Plan is consistent with other court-approved notice programs, is the best notice practicable under the circumstances of this Bankruptcy Case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[3]

21. Data sources and tools commonly employed by experts in the advertising industry were used to analyze and develop the media component of the Notice Plan. These resources

---

[2] Fed. R. Civ. P. 23(c)(2)(B).

[3] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

include MRI-Simmons,[4] which provides statistically significant readership and product usage data, and Comscore,[5] which provides similar usage data specific to online media, and Alliance for Audited Media ("AAM")[6] statements, which certify how many readers buy or obtain copies of publications. These tools, as applicable, along with demographic breakdowns indicating how many people use each media vehicle, as well as computer software that take the underlying data and factor out the duplication among audiences of various media vehicles, allow the net (unduplicated) reach of a particular media schedule to be determined. The combined results of this analysis are used to help determine the sufficiency and effectiveness of a notice program.

22. ***Tools and data trusted by the communications industry and courts.*** Virtually all the nation's largest advertising agency media departments utilize, scrutinize, and rely upon such independent, time-tested data and tools, including net reach and de-duplication analysis methodologies, to guide the billions of dollars of advertising placements seen today, providing assurance that these figures are not overstated. These analyses and similar planning tools have become standard analytical tools for evaluating legal notice programs and have been regularly accepted by courts.

---

[4] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry. MRI-Simmons is a joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research. MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States. MRI-Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the United States.

[5] Comscore is a global internet information provider for planning, transacting, and evaluating media across platforms. With a data footprint that combines digital, linear TV, OTT and theatrical viewership intelligence with advanced audience insights, Comscore allows media buyers and sellers to quantify their multiscreen behavior. A leader in measuring digital and TV audiences and advertising at scale, Comscore is the industry's emerging, third-party source for reliable and comprehensive cross-platform measurement.

[6] Established in 1914 as the Audit Bureau of Circulations ("ABC") and rebranded as Alliance for Audited Media ("AAM") in 2012, AAM is a non-profit cooperative formed by media, advertisers, and advertising agencies to audit the paid circulation statements of magazines and newspapers. AAM is the leading third-party auditing organization in the U.S. It is the industry's leading, neutral source for documentation on the actual distribution of newspapers, magazines, and other publications. Widely accepted throughout the industry, it certifies thousands of printed publications as well as emerging digital editions read via tablet subscriptions. Its publication audits are conducted in accordance with rules established by its Board of Directors. These rules govern not only how audits are conducted, but also how publishers report their circulation figures. AAM's Board of Directors is comprised of representatives from the publishing and advertising communities.

23. In fact, advertising and media planning firms around the world have long relied on audience data and techniques: AAM data has been relied on since 1914;[7] 90 to 100% of media directors use reach and frequency planning;[8] MRI-Simmons reports that 300+ agencies, including the majority of the top 100 and all major holding companies use their research. MRI-Simmons data is accredited by the Media Rating Council (MRC), a United States–based nonprofit organization that manages accreditation for media research and rating purposes. Comscore is used by the largest television networks, digital media properties, brands, agencies, and film studios in the world for digital media buying and planning.

24. *Demographics.* In selecting media to target the DSI Settlement Class, the demographics of likely members of the DSI Settlement Class were analyzed. While we cannot measure demographics of adults who are incarcerated, we can measure the demographics of adults in Rhode Island with MRI-Simmons syndicated media research. Adults 18+ in Rhode Island have the following demographics:

- 98% are online;
- 84% on social media;
- 52% are women;
- 48% are men;
- 14% are Spanish/Hispanic;
- 15% speak Spanish most often;
- 26% are age 18-34;
- 31% are age 35-54;
- 43% are age 55+;
- 47% are now married; and
- 71% own their own home.

## **NOTICE PROGRAM DETAIL**

25. The Notice Plan is designed to provide notice to the following "Settlement Class," defined in the Settlement Agreement as:

> All individuals in the United States whose private information was maintained on Central Falls Detention Facility Corporation's ("CFDFC") computer systems and who were identified by the

---

[7] https://auditedmedia.com/about/who-we-are.

[8] *See generally* Peter B. Turk, *Effective Frequency Report: Its Use And Evaluation By Major Agency Media Department Executives*, 28 J. ADVERTISING RES. 56 (1988); Peggy J. Kreshel et al., *How Leading Advertising Agencies Perceive Effective Reach and Frequency*, 14 J. ADVERTISING 32 (1985).

CFDFC as having certain of that private information taken from the CFDFC during the CFDFC's November 2023 Data Incident.

The Settlement Class specifically excludes the Court and all members of the Court's staff, and persons who timely and validly request exclusion from the Settlement Class.

## NOTICE PLAN

### *Individual Notice*

26. It is my understanding from counsel for the parties that Epiq will be provided with data for identified DSI Settlement Class members, which will include, to the extent available, full names and current or last known mailing addresses ("Class List"). A double Postcard Notice with detachable Claim Form ("Postcard Notice"), in the form of **Exhibit B-2** attached to the Preliminary Approval Motion, will be sent via United States Postal Service ("USPS") first class mail to all identified DSI Settlement Class members with an associated physical address available. The Postcard Notice will clearly describe the Settlement and the legal rights of the DSI Settlement Class members. The Postcard Notice will direct recipients to a Settlement Website, as well as provide a toll-free telephone number and a mailing address where they can obtain additional information.

### *Individual Notice – Direct Mail*

27. Epiq will send a Postcard Notice to identified class members with an associated physical address. The Postcard Notice will be sent via USPS first class mail. The Postcard Notice will clearly and concisely summarize the case and the legal rights of the class members. In addition, the Postcard Notice will direct recipients to a Settlement Website, as well as provide a toll-free telephone number and a mailing address where they can obtain additional information.

28. Prior to mailing the Postcard Notices, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS.[9] In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the

[9] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

29. The return address on the Postcard Notices will be a post office box that Epiq will maintain for this case. The USPS will automatically forward Postcard Notices with an available forwarding address order that has not expired ("Postal Forwards"). Postcard Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, or to better addresses that may be found using a third-party lookup service. This process is also commonly referred to as "skip-tracing." Upon successfully locating better addresses, Postcard Notices will be promptly re-mailed.

## ***Media Plan***

### ***Internet Digital Notice Campaign***

30. Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case. According to MRI-Simmons data, 97% of all adults are online and 84% of all adults use social media.[10]

31. The Notice Plan includes targeted digital advertising on the selected advertising network *Google Display Network,* which combined, represents thousands of digital properties across all major content categories (generally, "Digital Notices"). Digital Notices will be targeted to selected target audiences and are designed to encourage participation by DSI Settlement Class members—by linking directly to the Settlement Website, allowing visitors easy access to relevant information and documents.

32. Geofence display advertising will target those adults 18+ who have visited the Donald W. Wyatt Detention Facility in the past 12 months. Geofence targeting allows us to target adults who have visited the facility in the past 12 months with location services turned on.

[10] MRI-Simmons 2024 Survey of the American Consumer®.

Advertising would be delivered to that person in their preferred language (English or Spanish) when they are browsing online at another time.

33. Additional Digital Notices will run on the news websites ProvidenceJournal.com and NewportRI.com.

34. Digital Notices will also be placed on the leading social media platforms in the United States, including *Facebook* and *Instagram* (in English and Spanish). The social media campaign will use an interest-based approach which focuses on the interests that users exhibit while on the social media platforms, capitalizing on the target audience's propensity to engage in social media.

35. *Facebook* is one of the leading social networking sites in the United States with 196 million users, *Instagram* has 171 million active users in the United States.[11]

36. The Digital Notices will be distributed to a variety of target audiences, including those relevant to individuals' demonstrated interests and/or likes. All Digital Notices will appear on desktop, mobile, and tablet devices. Digital Notices will be displayed in Rhode Island and surrounding states including Connecticut, Massachusetts, New Hampshire, Maine, and Vermont. Digital Notices will also be targeted (remarketed) to people who click on a Digital Notice.

37. More details regarding the target audiences, specific ad sizes of the Digital Notices, and the number of planned impressions are included in the following table:

| ***Network/Property*** | ***Target*** | ***Distribution*** | ***Language*** | ***Ad Size*** | ***Planned Impressions*** |
|---|---|---|---|---|---|
| *Google Display Network* | Adults 18+ | Rhode Island | English | 728x90, 300x250, 300x600 & 970x250 | 315,000 |

[11] Statista Digital 2025: Global Overview Report. Statista, founded in 2007, is a leading provider of worldwide market and consumer data and is trusted by thousands of companies around the world for data. Statista.com consolidates statistical data on over 80,000 topics from more than 22,500 sources and makes it available in German, English, French and Spanish.

| *Network/Property* | *Target* | *Distribution* | *Language* | *Ad Size* | *Planned Impressions* |
|---|---|---|---|---|---|
| *Google Display Network* | Adults 18+ and intent targeting[12] for Donald W. Wyatt Detention Facility | Rhode Island | English | 728x90, 300x250, 300x600 & 970x250 | 215,000 |
| *GeoFence Display Advertising* | Adults 18+ and visited Donald W. Wyatt Detention Facility in past 12 months | Rhode Island & Surrounding States | English | 728x90, 300x250, 300x600 & 970x250 | 100,000 |
| *Google Display Network* | Adults 18+ and intent targeting for Donald W. Wyatt Detention Facility | Surrounding States | English | 728x90, 300x250, 300x600 & 970x250 | 1,000,000 |
| *Providence Journal.com* | Adults 18+ | Rhode Island | English | 728x90, 300x250, 300x600 & 970x250 | 300,000 |
| *NewportRI.com* | Adults 18+ | Rhode Island | English | 728x90, 300x250, 300x600 & 970x250 | 200,000 |
| *Facebook* | Adults 18+ | Rhode Island | English | Newsfeed & Right Hand Column | 200,000 |
| *Facebook* | A18+ and contextual targeting[13] for interests in post-prison support services | Rhode Island | English | Newsfeed & Right Hand Column | 150,000 |
| *Facebook* | A18+ and Multicultural Affinity: Hispanic | Rhode Island | Spanish | Newsfeed & Right Hand Column | 25,000 |
| *Facebook* | A18+ and Multicultural Affinity: African American | Rhode Island | English | Newsfeed & Right Hand Column | 25,000 |
| *Facebook* | A18+ and contextual targeting for interests in post-prison support services | Surrounding States | English | Newsfeed & Right Hand Column | 1,000,000 |

[12] "Intent Targeting" allows Epiq to target individuals who are searching (or have searched) for information on this specific targeted content on the internet.

[13] "Contextual Targeting" focuses on people who have liked, followed, or interacted with relevant pages, accounts, videos, posts and/or tags. Such pages and accounts include After Prison Facebook Page, Futures for Felons Facebook Page, Bail Bonds Facebook page, Welfare assistance program pages, Felons helping Felons Facebook group, Substance Abuse Resources Facebook group and/or Addiction & Mental Health Treatment Facebook group. Posts and hashtags include #formerfelon, #felonrights, and/0r #postingbail, among others.

| *Network/Property* | *Target* | *Distribution* | *Language* | *Ad Size* | *Planned Impressions* |
|---|---|---|---|---|---|
| *Instagram* | Adults 18+ | Rhode Island | English | Instagram Newsfeed | 40,000 |
| *Instagram* | A18+ and contextual targeting for interests in post-prison support services | Rhode Island | English | Instagram Newsfeed | 30,000 |
| *Instagram* | A18+ and Multicultural Affinity: Hispanic | Rhode Island | Spanish | Instagram Newsfeed | 12,500 |
| *Instagram* | A18+ and Multicultural Affinity: African American | Rhode Island | English | Instagram Newsfeed | 12,500 |
| *Instagram* | A18+ and contextual targeting for interests in post-prison support services | Surrounding States | English | Instagram Newsfeed | 500,000 |
| **TOTAL** | | | | | **4,125,000** |

38. Combined, approximately 4.125 million targeted impressions will be generated by the Digital Notices, which will be targeted in Rhode Island and surrounding states including Connecticut, Massachusetts, New Hampshire, Maine, and Vermont. The Digital Notices will run for approximately six weeks.[14] Clicking on the Digital Notices will link the readers to the Settlement Website, where they can easily obtain detailed information about the Settlement.

***Publication Notice***

39. The Notice Plan will include (A) one insertion in a *Prison Legal News*, a national monthly publication; and (B) one insertion in the *Providence Journal*. *Prison Legal News* is a project of the non-profit Human Rights Defense Center, and reports on criminal justice issues and prison and jail-related civil litigation, with an emphasis on prisoners' rights. An estimated 70% of the magazine's readers are state and federal prisoners. This insertion will be an approximate 1/2

[14] The third-party ad management platform, ClickCease will be used to audit the Digital Notice ad placements. This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent, or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

page Publication Notice in black and white, in the form of **Exhibit B-3**, attached to the Preliminary Approval Motion.

***Sponsored Search Listings***

40. To facilitate locating the Settlement Website, sponsored search listings will be acquired on the three most highly visited internet search engines: *Google*, *Yahoo!*, and *Bing*. When visitors to these search engines search for selected keyword combinations related to the Settlement, the sponsored search listing advertisement created for this Settlement will be displayed. Generally, the sponsored search listing advertisement will appear at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen. The sponsored search listings will be displayed in Rhode Island and surrounding states including Connecticut, Massachusetts, New Hampshire, Maine, and Vermont. All sponsored search listings will link directly to the Settlement Website.

***Informational Release***

41. To build additional reach and extend exposures, a party-neutral informational release will be issued regionally over *PR Newswire's Rhode Island Newsline* to general media (print, broadcast and online) outlets (the "Informational Release"), in the form of **Exhibit B-4**, attached to the Preliminary Approval Motion.

42. The Informational Release will include the Settlement Website address and the toll-free telephone number. Although there is no guarantee that any news stories will result, the Informational Release will serve a valuable role by providing additional notice exposures beyond that which was provided by the paid media.

***Settlement Website***

43. Epiq will create a dedicated website for the Settlement with an easy to remember domain name (the "Settlement Website"). Relevant documents will be posted on the Settlement Website, including the Settlement Agreement, Claim Form, Long Form Class Notice, in the form of **Exhibit B-1**, attached to the Preliminary Approval Motion, and other Settlement related documents and filings, including the Preliminary Approval Motion, and subsequent motions, notices, and orders

relevant to the Settlement approval process. In addition, the Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how DSI Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Administrator and Settlement Class Counsel, and how to obtain other Settlement related information. DSI Settlement Class Members will also be able to file a Claim Form on the Settlement Website. The Settlement Website address will be prominently displayed in all Notice documents.

***Toll-Free Telephone Number & Contact Information***

44. A toll-free number, available in both English and Spanish languages, will be established for the Settlement. Callers will be able to hear an introductory message and will have the option to learn more about the Settlement in the form of recorded FAQs, and to request that a Long Form Class Notice and Claim Form be mailed to them. Callers will also have the option to speak to a live agent during regular business hours. The automated telephone system will be available 24 hours per day, 7 days per week. The toll-free telephone number will be prominently displayed in all Notice documents.

45. A postal P.O. Box mailing address will be established for the Settlement, allowing Settlement Class Members the opportunity to request additional information or ask questions.

***Claim Submission & Distribution***

46. The Notices will provide a detailed summary of relevant information about the Settlement, including the Settlement Website address, and how DSI Settlement Class members can submit a Claim Form online or by mail. With any method of filing a Claim Form, DSI Settlement Class Members will have the option to receive payment by traditional paper check. Epiq will work with Counsel for the parties to select an appropriate menu of payment options. With selecting a digital payment option, the type of digital payment selected does not impact Epiq's compensation for its work as the Settlement Administrator, and no digital option is discouraged relative to other options.

## PLAIN LANGUAGE NOTICE

47. I and my team have reviewed the proposed Notices and provided suggested edits and other input. Overall, the Notices are designed to be "noticed" and reviewed by DSI Settlement Class members and are written in plain language so the Notices will be understood by DSI Settlement Class Members. The design of the Notices follows the principles embodied in the Federal Judicial Center's ("FJC") illustrative "model" notices posted at www.fjc.gov. The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about DSI Settlement Class Members' rights and options.

48. The Notices are designed to increase noticeability and comprehension. Once people "notice" the Notices, it is critical that they can understand them. As such, the Notices, as written, are clearly worded with an emphasis on simple, plain language to encourage readership and comprehension.

49. The proposed Long Form Class Notice provides substantial information to DSI Settlement Class members. It begins with a summary page, which provided a concise overview of the important information and a table which highlights key options available to DSI Settlement Class members. The Long Form Class Notice is categorized into logical sections, which helps to organize the information, while a question-and-answer format makes it easy to find answers to common questions by breaking the information into simple headings.

## CONCLUSION

50. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements will be met in this case.

51. The Notice Plan will reach at least 75% of the class with direct notice and a digital/internet notice program (digital and social media notice). The reach will be further enhanced by publication notice, internet sponsored search listings, an informational release, and a Settlement Website, which are not included in the estimated reach calculation. In 2010, the Federal Judicial Center ("FJC") issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (the "FJC Guide"), which is relied upon for federal cases and is illustrative for state courts. This FJC Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."[15] Here, we have developed a Notice Plan that will readily achieve a reach within that standard.

52. The Notice Plan follows the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: a) to endeavor to actually inform the DSI Settlement Class, and b) to ensure that notice is reasonably calculated to do so:

a) "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

b) "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

53. The Notice Plan as designed will provide the best notice practicable under the circumstances, conform to all aspects of Federal Rules of Civil Procedure Rule 23, made applicable pursuant to Rule 7023 of the Federal Rules of Bankruptcy Procedure, regarding notice, comport with the guidance for effective notice stated in the Manual for Complex Litigation, Fourth

[15] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

Ed. and applicable FJC materials, and satisfy the requirements of due process, including the "desire to actually inform" requirement.

54. The Notice Plan schedule will afford enough time to provide full and proper notice to the DSI Settlement Class members before the Opt-Out Deadline and Objection Deadline.

55. I declare under penalty of perjury that the foregoing is true and correct. Executed August 14, 2026.

____________________________________
Cameron R. Azari, Esq.

# Attachment 1

epiq legal noticing℠



## Legal Noticing Experts

Epiq Legal Noticing is a leading global provider of legal noticing services. Our team of recognized noticing experts provide superior notice programs that satisfy due-process requirements and withstand judicial scrutiny. For over 30 years, our notice programs and notices have been approved and upheld by courts.

We have handled over 700 cases, including over 75 MDL case settlements. Our notices have appeared in over 53 languages and in almost every country, territory, and dependency in the world.

Epiq Legal Noticing (a/k/a Hilsoft Notifications) is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq"). www.EpiqLegalNoticing.com.



# Case Expertise

***In re Juul Labs, Inc. Marketing, Sales Practices, and Products Liability Litigation*** 19-md-02913 (N.D. Cal.)

For two settlements totaling $300 million involving JUUL Labs, Inc. and Altria, Epiq designed and implemented cutting-edge, companion notice programs. The settlements alleged consumers were misled about JUUL products' addictiveness and safety, causing them to pay more, and that JUUL products were unlawfully marketed to minors. For the notice programs, over 10.7 million email notices and nearly 500,000 postcard notices were sent to potential class members, and a comprehensive media plan was implemented (over 936 million impressions delivered). The notice programs each reached approximately 80% of the class nationwide with combined individual notice and media notice.

**10.7M**
email notices

**836M**
digital impressions

**80%**
of class reached

**$190M**
settlement

**93.6M**
email or mail notices

**96%**
of class reached

***In re Capital One Consumer Data Security Breach Litigation*** MDL No. 2915, 1:19-md-02915 (E.D. Va.)

For a $190 million data breach settlement involving Capital One, Epiq implemented an extensive notice program. Notice was sent to over 93.6 million settlement class members by email or mail. The individual notice efforts reached approximately 96% of the identified settlement class members. In addition, a supplemental media campaign was implemented and enhanced the notice program with digital and social media notices (over 123.4 million impressions delivered), sponsored search listings, and a settlement website.

***In re Zoom Video Communications, Inc. Privacy Litigation*** 3:20-cv-02155 (N.D. Cal.)

Epiq designed and implemented an extensive notice program for a $85 million privacy settlement involving Zoom, the most popular video-conferencing platform. Notice was sent to over 158 million class members by email or mail, and millions of reminder notices were sent to stimulate claim filings. The individual notice efforts reached approximately 91% of the class. A supplemental media campaign provided notice via regional newspaper and nationally distributed digital and social media notices (over 280 million impressions delivered), along with sponsored search listings, an informational release, and a settlement website.

**$85M**
settlement

**158M**
email or mail notices

**91%**
of class reached



epiq legal noticing[SM]

## Case Expertise

**$5.5B**
settlement

**36.1M**
mail notices

**1.45B**
digital impressions

***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*** MDL No. 1720, 1:05-md-01720, (E.D.N.Y.). Second Circuit affirmed. *See Fikes Wholesale, Inc. v. Visa U.S.A., Inc.* 62 F.4th 704 (2d Cir. 2023)

For a landmark $5.5 billion settlement reached by Visa and MasterCard, Epiq implemented an extensive initial notice program with over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, and trade and specialty publications, with notices in multiple languages, and a digital notice campaign that generated over 770 million impressions. Sponsored search listings and a website in eight languages expanded the notice efforts. Subsequently, Epiq implemented a notice program with over 16.3 million direct mail notices, over 354 print publication insertions, and digital notices that generated over 689 million impressions.

***In re fairlife Milk Products Marketing and Sales Practices Litigation*** 1:19-cv-03924 (N.D. Ill.)

For a $21 million settlement that involved The Coca-Cola Company, fairlife, LLC, and other defendants regarding allegations of false labeling and marketing of fairlife milk products, Epiq designed and implemented a media based notice program. The program included a consumer print publication notice, targeted digital and social media notices (over 620.1 million impressions delivered in English and Spanish nationwide). Combined with individual notice to a small percentage of the class, the notice program reached approximately 80.2% of the class. The reach was further enhanced by sponsored search listings, an informational release, and a settlement website.

**$21M**
settlement

**620.1M**
digital impressions

**80.2%**
of class reached

**$1.91B**
settlements

**61.8M**
mail notices

**95%**
reach of notice program

***In re Takata Airbag Products Liability Litigation*** MDL No. 2599 (S.D. Fla.)

Epiq designed and implemented numerous monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, Ford, and Volkswagen vehicles as part of $1.91 billion in settlements regarding Takata airbags. The notice programs included mailed notice to over 61.8 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, digital notices, mobile notices, and behaviorally targeted digital media. Combined, the notice programs reached over 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, 4.0 times each.

# Case Expertise

***In re Morgan Stanley Data Security Litigation*** 1:20-cv-05914 (S.D.N.Y.)

For a $60 million settlement for Morgan Stanley Smith Barney's account holders in response to "Data Security Incidents," Epiq designed and implemented an individual notice program. Over 13.8 million email or mailed notices were delivered, reaching approximately 90% of the identified potential settlement class members. The individual notice efforts were supplemented with nationwide newspaper notice and a settlement website.

**$60M**
settlement

**13.8M**
email or mail notices

**$88M**
settlements

**7.92M**
email or mail notices

***In re Disposable Contact Lens Antitrust Litigation*** 3:15-md-02626 (M.D. Fla.)

Epiq implemented notice programs for retail purchasers of disposable contact lenses in four settlements totaling $88 million. For each notice program, over 1.98 million email or postcard notices were sent to potential class members and a comprehensive media plan was implemented, with a robust, nationwide consumer publication, digital notices (over 312.9 million – 461.4 million impressions delivered per campaign), sponsored search listings, and a settlement website.

***Yamagata et al. v. Reckitt Benckiser LLC*** 3:17-cv-03529 (N.D. Cal.)

For a $50 million settlement on behalf of certain purchasers of Schiff Move Free® Advanced glucosamine supplements, nearly 4 million email notices and 1.1 million postcard notices were sent. The individual notice efforts sent by Epiq were delivered to approximately 98.5% of the identified class sent notice. A media campaign with digital notices and sponsored search listings combined with the individual notice efforts reached at least 80% of the class.

**$50M**
settlement

**5.1M**
email or mail notices

**$63M**
settlement

**758M**
digital impressions

**85%**
of class reached

***In re U.S. Office of Personnel Management Data Security Breach Litigation*** MDL No. 2664, 15-cv-01394 (D.D.C.)

For a $63 million settlement, Epiq designed and implemented an extensive, nationwide media notice campaign using magazines, digital and social media notices (over 758 million impressions delivered), traditional and satellite radio, and other forms of media. The media notice reached at least 85% of the class. In addition, over 3.5 million email notices and/or postcard notices were sent to identified class members. The individual notice and media notice were supplemented with outreach to unions and associations, sponsored search listings, an informational release, and a settlement website.



epiq legal noticing℠

# Case Expertise

### *In re Toll Roads Litigation* 8:16-cv-00262 (C.D. Cal.)

Epiq implemented a notice program for several settlements alleging improper collection and sharing of PII of drivers on certain toll roads in the state of California. The settlements provided benefits of over $175 million, including penalty forgiveness. Combined, over 13.8 million email or postcard notices were sent, reaching approximately 93% - 95% of class members across all settlements. Individual notice was supplemented with digital notices and notices in newspapers, geo-targeted within California. Sponsored search listings and a settlement website further extended the reach of the notice program.

**$175M**
settlement benefits

**13.8M**
email or mail notices

**93% – 95%**
of class reached

**geo-targeted**
media noticing

**95%**
of class reached

### *In re Flint Water Cases* 5:16-cv-10444, (E.D. Mich.)

In response to largescale municipal water contamination in Flint, Michigan, Epiq's expertise was relied upon to design and implement a comprehensive notice program that reached over 95% of the class. The program included direct mail notice and reminder email notice sent to identified class members, and a media plan with local newspaper publications, online video and audio ads, local television and radio ads, sponsored search listings, an informational release, a website, and digital and social media notices geo-targeted to Flint, Michigan and the state of Michigan.

### *Zanca et al. v. Epic Games, Inc.* 21-CVS-534 (Sup. Ct. Wake Cnty., N.C.)

For a $26.5 million settlement, Epiq designed and implemented a notice program to reach individuals 13+ in the U.S. who exchanged or purchased in-game virtual currency in *Fortnite* or *Rocket League*. Over 29 million email notices and 27 million reminder notices were sent to class members. In addition, a targeted media campaign was implemented with digital and social media notices, *Reddit* feed ads, and *YouTube* pre-roll ads, generating over 350.4 million impressions. Combined, the notice efforts reached approximately 93.7% of the class.

**$26.5M**
settlement

**29M**
email notices

**93.7%**
of class reached

**1.8M**
mail or email notice to vehicle owners

### *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)* MDL No. 2672 (N.D. Cal.)

Epiq executed a comprehensive notice program within the *Volkswagen Emissions Litigation* with individual notice to over 946,000 vehicle owners via first class mail and to over 855,000 vehicle owners via email. A targeted digital notice campaign further enhanced the notice efforts.



epiq legal noticing℠

## Case Expertise

***Hale v. State Farm Mutual Automobile Insurance Company et al.*** 3:12-cv-00660 (S.D. Ill.)

For a $250 million settlement with 4.7 million class members, Epiq designed and implemented a notice program with postcard or email notice to over 1.43 million class members and a robust publication program that reached 78.8% of all U.S. adults aged 35+, approximately 2.4 times each.

**$250M**
settlement

**4.7M**
class members

one of the **largest, most complex** cases in **Canadian** history

***In re Residential Schools Class Action Litigation*** 00-cv-192059 (Ont. Super. Ct.)

One of the largest and most complex class actions cases in Canadian history. Epiq handled groundbreaking notice to disparate, remote Indigenous people to provide notice of a multi-billion-dollar settlement.

***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** MDL No. 2179 (E.D. La.)

For BP's $7.8 billion settlement for the Deepwater Horizon oil spill, possibly the most complex class action case in U.S. history, Epiq opined on all forms of notice, and designed and implemented a dual notice program for "Economic and Property Damages" and "Medical Benefits." The notice program reached at least 95% of Gulf Coast region adults with over 7,900 TV spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications and trade journals, digital media, and individual notice. Epiq also implemented one of the largest claim deadline notice campaigns, with paid print, television, radio, and digital notice, reaching over 90% of adults aged 18+ in 26 identified Designated Market Areas ("DMAs") covering the Gulf Coast Areas, an average of 5.5 times each.

**$7.8B**
settlement

**7,900**
tv spots

**5,200**
radio spots

**5,400**
print insertions

**6.9M**
email or mail notices

**90.%**
of class reached

***Vergara et al., v. Uber Technologies, Inc.*** 1:15-cv-06972 (N.D. Ill.)

For a $20 million Telephone Consumer Protection Act settlement, Epiq sent mail or email notice to over 6.9 million class members and provided media notice via newspaper and digital notices and reached over 90% of the class.

***In re Kaiser Gypsum Company, Inc. et al.*** 16-cv-31602 (Bankr. W.D. N.C.)

Epiq implemented an extensive notice effort for asbestos personal injury claims with nationwide consumer print, trade and union labor publications, digital notices, an informational release, and a website.

**asbestos, personal injury claims**
notice program



epiq legal noticing℠

## Legal Noticing Experts

***Cameron Azari, Esq., Senior Vice President Epiq, Managing Director Epiq Legal Noticing***



Cameron Azari, Esq. is a recognized international notice expert. He has over 24 years of experience in providing expert notice opinions regarding notice adequacy in compliance with Fed R. Civ. P. 23, state class action statutes, or international legal requirements in over 700 class action cases, including over 75 MDLs. He has testified in numerous cases and no notice program has been overturned. Cam is a trusted expert and consults directly with clients to share his extensive knowledge regarding all aspects of class action noticing.

He is an active author and speaker. Cam holds a J.D. from Northwestern School of Law at Lewis and Clark College and a B.S. from Willamette University. He is an active member of the Oregon State Bar. Cam can be reached at caza@epiqglobal.com.

***Stephanie Fiereck, Esq., Senior Director Epiq Legal Noticing & Notice Expert Services***



Stephanie Fiereck, Esq. leads our Notice Expert Services team. As a notice expert with over 24 years of legal experience, she consults with clients about all aspects of class action noticing. She has written over 1,000 expert notice adequacy declarations, and written or reviewed hundreds of notices, all approved by federal or state courts. Stephanie has a keen understanding of what judges are looking for, how to withstand judicial scrutiny, satisfy due process, and provide plain language notice to class members.

Prior to joining Epiq, she was a Vice President at Wells Fargo Bank for five years where she led the class action services business unit. She is an active author regarding class action notice. Stephanie holds a J.D. from the University of Oregon School of Law and a B.A. from St. Cloud State University. She is an active member of the Oregon State Bar. Stephanie can be reached at sfie@epiqglobal.com.

***Kyle Bingham, Senior Director Epiq Legal Noticing & Media Noticing***



Kyle Bingham leads the Media Noticing team, an in-house legal noticing advertising agency, and has over 15 years of experience in the advertising industry. He is a pivotal resource for researching, planning, and executing legal notice programs for class action, bankruptcy, and similar legal cases. Kyle's continued success with clients is a direct result of achieving media goals and ensuring that advertising is as efficient and impactful as possible. Kyle has also worked on over 500 CAFA notice mailings.

Prior to Epiq, Kyle worked at Wieden+Kennedy advertising agency for seven years, where he planned and purchased print, digital and broadcast media, managed multiple paid search accounts, and presented strategy and media campaigns to clients for multi-million-dollar branding campaigns. He received his B.A. from Willamette University. Kyle can be reached at kbingham@epiqglobal.com.



epiq legal noticing℠

# Experts' Articles and Presentations

- **Cameron Azari** Speaker, "Legal Noticing." Hausfeld, Washington, D.C., Sept. 2024.
- **Cameron Azari** Speaker, "Increase in Fraudulent Claims in Class Action and Mass Tort." Harris Martin MDL Conference, Portland, Maine, July 24, 2024.
- **Cameron Azari** Speaker, " Settlements." Class Action Litigation Forum – Plaintiffs' Bar, Dana Point, CA, May 9, 2024.
- **Cameron Azari** Speaker, "Consumer Class Action Notice/Fraud." Mass and Class Conference, Fort Lauderdale, FL, Mar. 6, 2024.
- **Cameron Azari** Speaker, "Rising Number of Privacy-Data-Breach Class Actions, including Those Centralized in MDLs, Temporary or Here to Stay? Consideration of Special Case-Management Procedures." Rabiej Litigation Law Center Class Action Conference, Virtual, July 20, 2023.
- **Cameron Azari** Chair, "Panel Discussion: Class Actions Case Management." Global Class Actions Symposium 2022, Amsterdam, The Netherlands, Nov. 17, 2022.
- **Cameron Azari** Speaker, "Driving Claims in Consumer Settlements: Notice/Claim Filing and Payments in the Digital Age." Mass Torts Made Perfect Bi-Annual Conference, Las Vegas, NV, Oct. 12, 2022.
- **Cameron Azari** Chair, "Panel Discussion: Class Actions Case Management." Global Class Actions Symposium 2021, London, UK, Nov. 16, 2021.
- **Cameron Azari** Speaker, "Mass Torts Made Perfect Bi-Annual Conference." Class Actions Abroad, Las Vegas, NV, Oct. 13, 2021.
- **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." Nov. 18, 2020.
- **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, Oct. 29, 2019.
- **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference, American Conference Institute, Chicago, IL, July 18, 2019.
- **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, Nov. 6, 2018.
- **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.
- **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

## Experts' Articles and Presentations

- **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts, Clyde & Co LLP, San Francisco, CA, June 22, 2018.

- **Cameron Azari** and **Stephanie Fiereck** Co-Authors, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice*. E-book, published, May 2017.

- **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates." DC Consumer Class Action Lawyers Luncheon, Washington, DC, Dec. 6, 2016.

- **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

- **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, Apr. 25, 2016.

- **Stephanie Fiereck** Author, "Tips for Responding to a Mega-Sized Data Breach." *Law360,* May 2016.

- **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, Feb. 10, 2015.

- **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

- **Cameron Azari** and **Stephanie Fiereck** Co-Authors, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

- **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, Apr. 7-8, 2014.

- **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, Chicago, IL, Apr. 28-29, 2014.

- **Stephanie Fiereck** Author, "Planning For The Next Mega-Sized Class Action Settlement." *Law360,* Feb. 2014.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 29-30, 2014.

- **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, Oct. 25, 2013.

## Experts' Articles and Presentations

- **Cameron Azari** and **Stephanie Fiereck** Co-Authors, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, Apr. 2013.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 31-Feb. 1, 2013.

- **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

- **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 26-27, 2012.

- **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 2011.

- **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

- **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

- **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

- **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

- **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements." Class Action Bar Gathering, Vancouver, British Columbia, 2007.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

- **Stephanie Fiereck** Author, "Consultant Service Companies Assisting Counsel in Class-Action Suits." *New Jersey Lawyer*, Vol. 14, No. 44, Oct. 2005.

- **Stephanie Fiereck** Author, "Expand Your Internet Research Toolbox." The American Bar Association, *The Young Lawyer*, Vol. 9, No. 10, July/Aug. 2005.



epiq legal noticing℠

## Experts' Articles and Presentations

- **Stephanie Fiereck** Author, "Class Action Reform: Be Prepared to Address New Notification Requirements." BNA, Inc. The Bureau of National Affairs, Inc. *Class Action Litigation Report*, Vol. 6, No. 9, May 2005.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Stoel Rives Litigation Group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

- **Stephanie Fiereck** Author, "Bankruptcy Strategies Can Avert Class Action Crisis." TMA - *The Journal of Corporate* Renewal, Sept. 2004.

- **Cameron Azari** Author, "FRCP 23 Amendments: Twice the Notice or No Settlement." Current Developments – Issue II, Aug. 2003.

- **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication." Weil Gotshal Litigation Group, New York, NY, 2003.